**U.S. DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

|  |  |  |  |
|---|---|---|---|
| | | * | |
| Valerie Kline | | * | |
| | Kline | * | |
| | v. | * | Case No. 1:07-cv-451 (JR) |
| | | * | |
| Linda M. Springer, Director | | * | |
| | Defendant | * | |
| | | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
FOR STAY OF FURTHER DISCOVERY PENDING A RULING ON
DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT
AND REQUEST FOR LEAVE TO FILE SURREPLY TO DEFENDANT'S
RESPONSE TO PLAINTIFF'S  MOTION FOR LEAVE TO FILE SURREPLY**

In response to Defendant's Response to Plaintiff's Motion for Leave to File

Surreply and Amended Opposition to Defendant's Statement Of Material Facts And

Defendant's Motion For Stay Of Further Discovery Pending A Ruling On Defendant's

Motion To Dismiss Or For Summary Judgment (the "Motion"), Kline opposes the

Motion and hereby requests leave to file surreply to Springer additional arguments and

new facts introduced in the record.  See United States ex rel. Pogue v. Diabetes

Treatment Ctrs. of America, 238 F.Supp.2d 270, 276-77 (D.D.C. 2002) and Alexander v.

FBI, 186 F.R.D. 71, 74 (D.D.C. 1998).

**I.      Rule 56(f) is not applicable to the present discovery.**

In the Motion, Springer objects to Kline taking depositions and contends that

Kline is not entitled to take depositions without filing a Rule 56(f) request to do so.  Kline

is at a loss as to why Springer believes that Kline is not entitled to pursue discovery other than via a Rule 56(f) request to take depositions.

On February 27, 2007, Springer requested an "emergency" hearing in an attempt to put a stay on discovery. As reflected in the transcript of the March 12, 2008 "emergency" hearing (Attachment 1), the Court did <u>not</u> continue the stay on discovery. In fact, the Court clearly stated that it did not "particularly like the fact that [Springer's counsel] wanted to slow down all [her] discovery until [the Court] ruled on this motion". *Id.* at 11. The Court ordered Springer to respond to Kline's discovery requests and <u>did not stay discovery</u>. *Id*. p. 12.

Kline did ask the Court what she should do <u>if Springer still failed to respond to her request for documents</u>. The Court informed Kline she should "look at Rule 56(f) and see if it applies in your case". *Id* at 14. Rule 56(f) enables a party opposing a motion to file a request that the Court deny the motion, which Kline did on April 15, 2008[1]. <u>See</u> Docket Entry (DE) 39. The Court was not instructing Kline on <u>how to proceed with discovery</u> but how to proceed <u>should Springer fail to respond to discovery</u>[2]. The Court also stated, "[t]hen you've [Kline] got to respond to the motion for summary judgment." Attachment 1 at p. 14. Accordingly, Kline responded to the motion on April 18, 2008 (DE 40).

Springer claims on p. 5 that Kline wants to take depositions in order to show that she is similarly situated to the individuals but then admits on p. 8 that she doesn't know why Kline wants to take additional depositions. Rather than ask Kline why she wants to

---

[1] Kline does not believe that Rule 56(f)(2) applies because the stay on discovery was lifted.
[2] Kline also believes that Rule 37 Request for Sanctions was appropriate since the Court already ordered Springer to comply with the Rule 26(a) request for documents or alternatively, to "file objections". Attachment 1 at p. 12. Springer did not "file" any objections to Kline's discovery requests with the Court. Therefore, Kline requested Rule 37 sanctions (DE 39).

proceed with discovery, Springer now requests yet another stay on discovery because she contends Kline's "requested depositions would serve no legitimate purpose, would be unduly burdensome and harassing."

Because the Court did <u>not</u> put a stay on discovery at the March 12, 2008 hearing, Kline believes that she is expected to proceed with discovery in the event the Court sets a hearing date following its disposition of the dispositive motion since there is currently no stay on discovery. Indeed, Springer realizes there is no current stay on discovery. Otherwise, she would be not now be requesting a stay on discovery.

On p. 5 of her Motion, Springer claims that Kline could have taken depositions <u>without restriction prior to the filing of the dispositive motion</u>. Springer neglects to point out that a stay on discovery was imposed by the Court at the November 15, 2007 status hearing per Springer's request pending disposition of the dispositive motion (except for limited discovery pursuant to Rule 26(a)). <u>See</u> DE 26. Only after the stay was lifted because Springer failed to file a timely dispositive motion did Kline have an opportunity to take depositions. Springer vehemently objected to the depositions and requested an "emergency" hearing. At the "emergency" hearing, the Court did <u>not</u> impose another stay on discovery, as discussed *infra*. Attachment1.

Springer also incorrectly claims Kline did not a file a Rule 56(f) affidavit after Springer's motion was filed. DE 49, p. 5. Contrary to Springer's claim, Kline filed a Rule 56(f) Affidavit on April 15, 2008, (DE 39-4) requesting that the Court deny the dispositive motion, which was <u>after</u> the February 1, 2008 motion to dismiss was filed (DE 22-2).

Because Springer refused to provide addresses of individuals Kline wanted to depose, Kline requested that the agency make these individuals available for Kline to depose. In response, Springer is now making another attempt to stay discovery and apparently does not intend to make the individuals available for deposing.

The request to depose additional employees is not for the purpose of establishing that Kline is similarly situated as Springer contends because Kline believes that she has already made the requisite showing that she is similarly situated to the compared-to individuals. Kline wants to continue discovery so in order to obtain evidence for supporting her own motion for summary judgment and/or for preparing for trial in the event the Court sets this case for trial. Therefore, Kline requests that she be allowed to continue with discovery.

## II.    <u>Springer raises new arguments and evidence.</u>

In refuting Kline's contention that she is similarly situated to Jacquline Carter, Springer claims it is undisputed that Carter performed supervisory review of Kline's regulatory work. Kline disagrees. Kline has never stated that Carter reviews her work and maintains that Kline performed regulatory work independently as reflected in her position description:

> "Supervisory Controls
>
> "The incumbent is responsible for developing, in an <u>independent</u> manner, specific program assignments based upon broad, general objectives which are the result of management discussions, professional conferences or general written directives." DE 40-4, p. 20 [Emphasis added.]

Moreover, Kline's Position Description does not state that Ms. Carter reviews her work. Consistent with this fact, Carter's Position Description (DE 40-4, p. 6) does not state that she supervises any employees. On occasion, both Kline and Carter performed a review of the same regulations and compared their results. It was not uncommon for Kline to find issues with the regulation that Carter failed to find and vice versa. The evidence shows Kline challenged some of Carter's interpretations of the way the amendatory language should be written and that the Federal Register Office often agreed with Kline's view over Carter's (DE 40-3, ¶ 110). The evidence will also show that Kline submitted numerous documents to the *Federal Register* for publication under her signature and authority. Accordingly, Kline disputes that Carter performed a supervisory review of her work.

Kline's Position Description ( DE 40-4, p. 19) also doesn't state that she assists Robert Coco as Springer claims (DE 49, p. 6) but it specifically states that she assists in performing basically the <u>same duties</u> that are itemized in Coco's Position Description (DE 49-9). Mr. Coco is not Kline's supervisor and Carter was not Kline's supervisor. <u>Kline worked independently</u> as reflected in her position description and is therefore similarly situated to Carter and Coco who also work or worked independently.

Kline further submits that she performed all the duties Issac Evans performed because she was charged with performing video/visual information system duties. She also performed all the duties Lara Rivera Lopez performed, a management analyst detailed to PMG for approximately one year.

Kline submits she was similarly situated to Carter, Coco, Evans and Rivera-Lopez because <u>she performed the same duties they performed</u>, they all had the same supervisors,

they were all subject to the same standards and were similarly situated in all *relevant* aspects to Kline. Thus, *a reasonable jury could conclude that plaintiff was similarly situated with these employees.* See *Ahmad Nurriddin v. Goldin*, 382 F. Supp. 2d 79 (D.D.C. 2005); *Mbulu v. Bureau of Nat'l Affairs, Inc*., Civil Action No. 04-1540 (JDB), 2006 U.S. Dist. LEXIS 7364 (D.D.C. 2006); *Shelborne v. Runyon*, Civil Action No. 95-0641 (RMU)*,* 1997 U.S. Dist. LEXIS 13583 (D.D.C. 1997), *Phillips v. Holladay Property Services, Inc.*, 937 F. Supp. 32, (D.D.C. 1996)*,* affirmed *Phillips v. Holladay Corp. and Holladay Property Services, Inc.,* 1997 U.S. App. LEXIS 19033 (D.C. Cir. 1997).

Springer also raises a new argument and evidence that "the incident related by Ms. Carter [concerning a regulatory document erroneously sent to Federal Register] occurred on or about December 21, 2005. Id. Att. 2 at p. 5." That reference shows,

> "Tab 10 – Federal Register: December 21, 2005, 70 FR 75745 showing a regulatory package sent in error." DE 48, Att. 2, p. 5.

If Springer had reviewed the EEO Report of Investigation 2006034 where Tab 10 was referenced, she would have seen that the document referenced at Tab 10 was a document that Carter erroneously sent to the *Federal Register*:

> "Ms. Carter also approved and sent a regulatory package to the FR that was incorrect and had to be reprinted at a cost to PMG. *See* 70 FR 75745. (Tab 10)" Attachment 2, pp. 5, 10.

In other words, Kline did not erroneously send this document to the *Federal Register* but Carter erroneously sent this document contrary to Springer's claim. This is another example of how Springer distorts the facts. Carter's deposition does not indicate

which documents she was referring to but Kline submits that it was not the December 21, 2005 one that Springer indicates.  Rather, Kline submits Carter was referring to the incidents occurring after June 20, 2006, which are issues pending before the Equal Employment Opportunity Commission.

Accordingly, Kline submits that that the December 21, 2005 error does <u>not</u> "lend[] additional credence to the correctness of defendant's fully successful rating of plaintiff" but supports Kline's position that her rating was incorrect and discriminatory. Contrary to Springer's claim, the rating period ended in October 2005, so that a December 2005 document would be outside the relevant rating period.

Springer further claims that Kline's Opposition to Statement of Material Facts does not conform to LCvR 7(h).  LCvR 7(h) states,

> "An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all materials facts as to which is it contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement. Each such motion and opposition must also contain or be accompanied by a memorandum of points and authorities and proposed order as required by LCvR 7(a), (b) and (c). "

Kline submitted an Opposition to the Statement of Material Facts (DE 40-9) accompanied by a Memorandum of Point and Authorities (DE 40).  Kline also referenced parts of the record that were relied upon in support of the statement in its Amended Opposition to the Statement of Material Facts (DE 48-4).  Because it is unclear how Springer believes Kline failed to conform to the requirements of LCvR 7(h), Kline submits that her Amended Opposition to the Statement of Material Facts conforms to the rules.

For all the foregoing reasons, Springer's Motion to Stay Discovery should be denied.

Respectfully submitted,

/s/

Valerie Kline, pro se
83 E Street
Lothian, MD  20711
(301) 509-2684

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


VALERIE KLINE,                       :    Civil Action No. 07-0451
                                     :
             Plaintiff               :
                                     :
v.                                   :    March 12, 2008
                                     :
                                     :
LINDA M. SPRINGER, Director,         :    12:30 p.m.
U.S. Office of Personnel             :
Management                           :
             Defendant               :
. . . . . . . . . . . . . . . . :    . . . . . . . . . . . .


TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE JAMES ROBERTSON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

  For the Plaintiff:            VALERIE KLINE, PRO SE
                                83 E Street
                                P. O. Box 321
                                Lothian, MD 20711
                                (301) 509-2684


  For the Defendant:            CLAIRE M. WHITAKER, ESQUIRE
                                UNITED STATES ATTORNEY'S OFFICE
                                555 4th Street, NW
                                Suite E-4204
                                Washington, DC 20816
                                (202) 514-7137


  Court Reporter:              REBECCA STONESTREET, RPR, CRR
                               Official Court Reporter
                               Room 6511, U.S. Courthouse
                               Washington, D.C. 20001
                               (202) 354-3249


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

P R O C E E D I N G S

COURTROOM DEPUTY:  This is Civil Action Number 07-0451, Kline versus Springer, Director, U.S. Office of Personnel Management.  Ms. Kline is present and pro se, Ms. Whitaker is present for the defendant.

THE COURT:  Whatever is going on in this case, counsel, is not an emergency.  I don't understand the use of the word "emergency" by either side.

Basically what's happened is that the government had until a date certain to file its dispositive motion, missed the deadline and filed for leave to late file, and Ms. Kline not only objects to it but moves to strike the motion to late file.

So Ms. Kline, the first question is to you.  Come up to the podium if you will, please.

MS. KLINE:  Good afternoon.

THE COURT:  Good afternoon.  You're in the land of pleasant living here.  This is Washington, D.C.  When I was in law practice here, I used to have great fun coming up against New York lawyers who thought deadlines were sacrosanct, and would yell and scream at judges.

Now, I'm not suggesting that you are either a New York lawyer, God forbid, or that you are yelling and screaming at anybody.  But the resistance to a government motion to late file a motion is frankly a little unusual.  And in our practice here, both sides give each other usually a lot of leeway in when they

1   file motions.

2       If you have some reason why you are prejudiced,

3   damaged, rendered unable to represent yourself, or otherwise

4   disadvantaged by giving the government more time to file its

5   motion, I would like to hear it.

6       MS. KLINE:  Okay.  First of all, there's, like, four

7   factors under *Pioneer* for filing a Rule 6(b)(1)(B) motion.  One

8   of the factors is prejudice.  Is that the only factor you wish

9   for me to address?

10      THE COURT:  It's certainly the most important one.  You

11   can address all of them, if you like.

12      MS. KLINE:  Thank you.  I appreciate that, Your Honor.

13   Because I definitely think that it will cause prejudice.  I

14   briefed several ways that it would cause prejudice, but I found

15   another way that was addressed in the court.  You may be

16   familiar with it, *The Institute For Policy Studies vs. United*

17   *States CIA*, where the Court says, "Delays are a particularly

18   abhorrent feature of today's trial practice.  They increase the

19   cost of litigation, to the detriment of the parties enmeshed in

20   it.  They are one factor causing disrespect for lawyers and the

21   judicial process, and they fuel the increasing resort to means

22   of non-judicial dispute resolution.  Adherence to reasonable

23   deadlines is critical to restoring integrity in court

24   proceedings."

25      In that same case - actually, no, it's the same judge;

4

1    I'm quoting *English Speaking Union vs. Johnson* - it says that

2    this is prejudicial to the case in the government's favor,

3    because, quote, "strictly enforcing procedural rules ensures

4    both that cases are adjudicated efficiently and that litigants

5    argue their cases on a level playing field."

6             And I submit to you that allowing the government not to

7    adhere to the deadlines creates an unequal playing field.

8             THE COURT:  How?

9             MS. KLINE:  Because they're not required to abide by

10   the rules.

11            THE COURT:  Well, what is --

12            MS. KLINE:  I'm sure if I had delayed --

13            THE COURT:  What is the prejudice to you?

14            MS. KLINE:  Well, I've already expended a considerable

15   amount of time and expense in moving towards discovery, taking

16   depositions, having the subpoenas served, processed.  I've

17   issued interrogatories.  I basically -- what was it, January 9th

18   was when the motion was due.  That was, what, almost two months

19   ago.  I had stopped working on that aspect and moved forward in

20   the discovery, so that my mind has been focused on something

21   totally different than focusing on responding to a motion to

22   dismiss or summary judgment.

23            That, to me, I think puts me at a disadvantage, because

24   now I would have to stop everything, reverse gears, and go back

25   to square one.  I think that has an impact on the judicial

5

1    proceedings, too.

2          So one of the reasons is that I haven't really been

3    focused on the motion to dismiss.  I've already expended a

4    considerable amount of time and expense moving forward.  The

5    undue delays are prejudicial because Springer waited nearly a

6    month after the Court denied their motion to file out of time,

7    and then files another one under the same rule, but albeit a

8    different subparagraph, so that there was a very long delay that

9    I believe gave them prejudice in their favor, because you had

10   already granted them two extensions, plus gave them 30 days to

11   file.

12         So those are the main reasons I believe that it is

13   prejudicial in their favor, because they can go along and feel

14   that they don't have to abide by the rules.  They can get

15   extensions or file these out-of-time motions and take as long as

16   they want.

17         THE COURT:  All right.  Thank you, Ms. Kline.

18   Ms. Whitaker?

19         MS. KLINE:  And the other factors, too, maybe I can

20   address?

21         THE COURT:  You're not finished?  Go ahead.

22         MS. KLINE:  If I can mention this briefly.  The other

23   factors found in *Pioneer* are whether the delay was within the

24   reasonable control of the movant.  And I believe here that the

25   delay was not beyond the government's reasonable control,

1    because on January 9th when that motion was due, they filed a

2    motion to extend.  So it's not like they were incapacitated or

3    affected by some blizzard, so it was under reasonable control.

4    They can't claim that factor.

5            A second factor is the length of delay.  Right now

6    we're headed toward finishing up discovery for the pretrial

7    conference.  Granting this would take us back to square one.  So

8    that would impact the proceedings in that regard.

9            And finally, the fourth factor is the Court must

10   consider whether the movant acted in good faith.  And I believe

11   they did not act in good faith, because when they filed for the

12   extension out of time -- when they originally filed for an

13   extension of time on January 9th, they claimed that they needed

14   to get a statement from an OPM official.  That was their reason.

15           Now they come back with a motion after the due date and

16   claim that it was due to illness or due to being distracted.  So

17   we have two different reasons.  So that tells me that they

18   didn't file it in good faith, because the main reason they

19   missed that deadline is that the counsel did not read the

20   Court's order.  And I believe there's no excuse for an attorney

21   not reading a Court's order.  To me, that's inexcusable.

22           And lastly, I just want to say that in the *D.A.* case

23   the court talks about abuse of the Court's discretion, and it

24   says, "It is an abuse of a Court's discretion to consider an

25   untimely filing in the absence of a motion for an enlargement of

1    time demonstrating excusable neglect."  Which they haven't done.

2    "Courts routinely refuse to accept filings under those

3    circumstances, even where the delay is minor and no prejudice

4    would result."

5            THE COURT:  Give me the citation.  Is that Judge

6    Brown's opinion?

7            MS. KLINE:  Facciola.

8            THE COURT:  No, no, that's reversing Facciola.  Or

9    maybe it's Facciola ruling after he was reversed.

10           MS. KLINE:  This is a 2007 case.

11           THE COURT:  Yes, I know.  What's the name of the case?

12           MS. KLINE:  *The Institute for Policy Studies vs.*

13   *US CIA*, 246 FRD 380.  And then the *D.A.* case, I have that one in

14   my brief.

15           THE COURT:  What's the cite again?  What's the FRD

16   cite?

17           MS. KLINE:  The FRD cite, it is 246 FRD 380.

18           THE COURT:  That may be Judge Facciola chastened by a

19   recent reversal from Judge Brown on the Court of Appeals, who

20   found reversible error in entertaining a late filed motion for

21   summary judgment from the District of Columbia in an absence of

22   good cause shown.

23           And, of course, the question we're really dealing with

24   is whether good cause is shown.  I actually quite agree with you

25   that it's inexcusable for government counsel not to read an

8

1    order, and I'm sure Ms. Whitaker will -- she already has

2    something to say about that in her papers.

3            Here's my problem, Ms. Kline:  You have filed a

4    complaint that goes on for I think more than 250 paragraphs.  It

5    is in the interest of conservation of judicial resources,

6    litigation resources, and everybody that cases be at least

7    narrowed or disposed of before they get to trial.

8            If I were to deny the government's motion to late file

9    their motion, it basically would sentence all of us to take this

10   case to trial.  There would be nothing between here and trial

11   except a final pretrial conference.

12           MS. KLINE:  Unless I file a summary judgment motion

13   myself?

14           THE COURT:  Unless you move for summary judgment?

15           MS. KLINE:  Yes, Your Honor.

16           THE COURT:  Well, wait a minute.  What's your motion

17   for summary judgment based on, the fact that the government has

18   not responded to the complaint or something like that?

19           MS. KLINE:  No, my position would be that there's no

20   disputed facts and that their reason is pretextual, and try to

21   show that it's clearly pretextual.

22           THE COURT:  How can you show pretext on a summary

23   judgment motion?

24           MS. KLINE:  I've seen some cases where it's been done.

25           THE COURT:  Plaintiffs?  On plaintiff's side?

1          MS. KLINE:  I'm not sure about that.

2          THE COURT:  I'm not either.  I really doubt it.

3          MS. KLINE:  But I was going to give it a go, because I

4   feel like some of these excuses, they're contradictive (sic).

5   So it's pretty clear.

6          THE COURT:  Well, I wouldn't want to predict to an

7   absolute certainty the outcome of a plaintiff's motion for

8   summary judgment, only to tell you that in my experience, the

9   granting of summary judgment to plaintiffs in Title VII's is a

10  vanishingly rare event.

11         So assume with me for the sake of discussion that you

12  don't win that motion.  Then we go to trial, and we go to trial

13  on all of these issues.  And at the close of the plaintiff's

14  case-in-chief, the government files the same motion that they

15  would have filed way in advance of trial.  Now, the motion

16  they're making, as I understand it, is that a number of your

17  complaints are untimely filed.  That's a completely legal basis

18  for the motion.  Not factual; it's based only on the law.

19         It is my duty as a judge to streamline the judicial

20  process as much as I can.  I completely agree with you about

21  efficiency.  I don't think there are going to be too many people

22  in this courthouse who challenge the efficiency with which I

23  handle cases.  And the most efficient way to handle this case is

24  to find out what this motion for -- how this motion for summary

25  judgment is going to be decided.

1        Now, before I rule - and I think it may be obvious to

2   you where I'm coming from - but I want to talk to Ms. Whitaker.

3   So if you'll step aside and allow Ms. Whitaker to have a chance

4   to come to the podium.

5        MS. KLINE:  If I can add, I sense, like you said, the

6   direction you're heading, and if you do grant the government's

7   motion, are you going to be amenable to granting my motion to

8   amend the complaint, since we're going back to square one?

9        THE COURT:  Well, yeah.  But if you're concerned about

10  efficiency and time, amending your complaint just -- well, what

11  are you going to do, add?  I hope you're going to subtract.

12        MS. KLINE:  Actually, Ms. Whitaker had complained about

13  not so much the volume, but she wanted a more definite

14  statement.  So what I did was I just added a claim based on

15  hostile environment, and broke the counts down into rather than

16  having two issues per count, I made one count each per issue.

17        THE COURT:  Yeah, I will not only allow you to amend

18  your complaint, but I'll allow you to file your own motion for

19  summary judgment any time you want to.

20        And my quarrel, by the way, with the current state of

21  the law in the circuit on untimely motions for summary judgment

22  is that Rule 56 of the Federal Rules of Civil Procedure provides

23  that a motion for summary judgment may be filed at any time.  I

24  don't understand that the Court of Appeals, either in the -- or

25  Judge Facciola or anybody has overruled Rule 56.

1          Now, Ms. Whitaker --

2          MS. KLINE:  Also on that note I would like to get the

3    documents I've requested from the government.

4          THE COURT:  Absolutely.  Let's talk to Ms. Whitaker

5    about that.

6          Ms. Whitaker, it's your turn in the wood shed.  She's

7    right, it is inexcusable for the government to just blow it.

8    And the United States Attorney's Office does much better work

9    than that usually, and I am not pleased with the -- I'm not

10   going to make you grovel, because you've done all that in

11   writing, but I think that this is a big ball dropped, and

12   frankly, it makes it difficult for me to do what my instinct is,

13   which is to give your office a break on the grounds that you're

14   all overpaid and underworked -- no, I didn't mean it that way.

15   I meant underpaid and overworked.

16         Now, tell me why you can't -- I don't particularly like

17   the fact that you wanted to slow down all your discovery until I

18   ruled on this motion, which is why I got everybody in this.  And

19   don't tell me it's going to take another month.

20         MS. WHITAKER:  Well, Your Honor, Ms. Kline has already

21   had -- taken three depositions, and I believe the reason for the

22   emergency was that I felt that there was some abuse in the

23   discovery process, not providing subpoenas to the defendant,

24   requiring defendant to show up two days after they received

25   subpoenas, having to rearrange schedules which involved other

1    depositions.  And what I thought would be appropriate is if the

2    dispositive motion were granted, that we could -- it would be

3    appropriate to relook at what her discovery is.

4         I'm sorry, Your Honor, my nose is running and I'm a

5    mess right now.

6         Because the discovery that she's propounded is not

7    directed towards responding to the dispositive motion.  You have

8    not seen it, obviously, but the interrogatories, there are some

9    that have already been responded to because of the deposition

10   testimony; there are others that are extremely broad and really

11   have nothing to do with this particular case.

12        THE COURT:  Have you filed objections to them?

13        MS. WHITAKER:  We have not as of yet, because as I

14   said, we believe a stay should be put in place.

15        THE COURT:  Because if I stay all discovery, the only

16   thing that happens next is a Rule 56(f) response to your motion

17   for summary judgment.  If you've got objections to the

18   discovery, file them.  I'm talking about interrogatories and

19   document production requests.  And those that you don't object

20   to, comply with them.

21        Leave is granted to late file your motion to dismiss or

22   for summary judgment.  Ms. Kline, you may have -- how much time

23   are you going to want to respond to it?

24        MS. KLINE:  The Court had initially given me 30 days.

25   That should be more than adequate.  I will attempt to file it

13

1    sooner than that.

2         But I need to get these documents and look them over,

3    and in filing my response I may also file summary judgment.

4         THE COURT:  All right.  You understand what you're

5    going to get is some documents, some interrogatory answers, and

6    a lot of objections.

7         MS. KLINE:  I'm prepared.

8         THE COURT:  All right.  So when can you respond to the

9    discovery by way of objections and/or responses?

10        MS. WHITAKER:  10 days.

11        THE COURT:  All right.  The government has 10 days;

12   10 real days, 10 calendar days, not 10 Federal Rules days,

13   10 days to respond.  Ms. Kline then has 30 days after that to

14   oppose the motion to dismiss or for summary judgment.

15        Ms. Kline, it sometimes happens that attorneys will

16   respond to a motion to dismiss by filing an amended complaint

17   and make everybody start all over again.  I'm not going to make

18   the government start all over again.  If all you're going to do

19   is add a claim for hostile work environment and parse your other

20   claims, the government -- you can file that amended complaint,

21   but the government will not be required to file a complete reply

22   to the amended complaint.

23        MS. KLINE:  They've already answered.  Thank you.

24        THE COURT:  All right.  So it's 10 days and then

25   30 days, and then Ms. Whitaker, you may have 14 days after the

14

1    filing of Ms. Kline's opposition in which to reply.  And then I

2    will either have oral argument or I won't.  It depends on how

3    the documents shape up.  And then I'll rule on them and we'll

4    move on from there.  All right?

5              MS. KLINE:  Question.

6              THE COURT:  Yes.

7              MS. WHITAKER:  Thank you, Your Honor.

8              MS. KLINE:  If the government opposes my document

9    requests and I need some of these documents to support my

10   position, what should I do in that regard?

11             THE COURT:  Look at Rule 56(f) of the Federal Rules of

12   Civil Procedure and see if they apply to your case.  Then you've

13   got to respond to the motion for summary judgment.

14             Okay.  We're in recess now, Al, until 1:30.

15             (Proceedings adjourned at 12:59 p.m.)

16

17

18

19

20

21

22

23

24

25

15

1        CERTIFICATE OF OFFICIAL COURT REPORTER

2

3        I, Rebecca Stonestreet, certify that the foregoing is a

4   correct transcript from the record of proceedings in the

5   above-entitled matter.

6

7

8

9   _____              5/27/08

10  SIGNATURE OF COURT REPORTER           DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## AFFIDAVIT FOR VALERI KLINE

## OPM EEO Case No. 2006034

My full name is Valerie Kline and I am a female Caucasian. I am a Management
Analyst, GS-0343-12, Step 5 in the Publications Management Group (PMG), successor to
the Publications Management Branch with the Office of Personnel Management in
Washington, DC. I have been in this position since October 7, 2002, and I have been in
the federal government for approximately 17 ½ years. This is my fifth EEO complaint.
My prior EEO activity consists of complaints filed on December 28, 2005 – Case No.
2006008, February 21, 2006 – 2006015, March 21, 2006 – Case No. 2006019, and
May 15, 2006 – Case No. 2006024.

Prior to making the following statement Melba D. Vaughn provided me a Letter of
Authority identifying her as an EEO Investigator, assigned to the US Office of Personnel
Management, Center for Equal Employment Opportunity. I make this statement freely
and voluntarily knowing that this statement may be used in evidence. I understand that
this statement is confidential and may only be shown to any party who must have access
to this information in order to carry out his or her official duties. I do not have a
representative.

This statement is given in response to the complaint of discrimination I filed. The
accepted issues in the complaint are:

     I. Was I discriminated against on the bases of my race (Caucasian), sex (female),
or in retaliation for prior EEO activity when, on June 20, 2006, my work assignments
were changed from professional in nature to clerical, and

     II. Was I discriminated against in retaliation for prior EEO activity when, on
June 20, 2006, I was denied the return of work equipment previously in my possession?

My supervisors, William M. Davis and Claudio Benedi are aware of my prior EEO
activity because my previous complaints were against them.

I was placed on Administrative Leave on April 5, 2006. *See* Memo from Mr. Davis dated
April 5, 2006. (Tab 15) I returned to work on June 20, 2006, after I received a call from
Mr. Davis on June 19, 2006, instructing me to return to work.

For clarity, when I use the term "professional" assignments I am referring to duties that
generally require formal education and or specialized training and duties that are not
clerical in nature. When I use the term "clerical" assignments I am referring to those
duties that do not require a formal education or specialized training and constitute general
office work.

EXHIBIT _H_
PAGE_/_OF_ _142_

Prior to June 20, 2006, I performed regulatory work as well as Office of the Federal Register (FR) and Office of Management and Budget (OMB) liaison functions on a daily basis. Since June 20, 2006, most of the FR and OMB regulatory functions I was responsible for have been assigned to Robert Coco. *See* Memorandum for Mr. Davis from me dated June 21, 2006. (Tab 1) Below is a list of the professional assignments I was performing prior to June 20, 2006:

1. FR liaison duties – I was authorized to submit regulatory packages to the FR, communicated with the FR office in resolving any publication issues or questions related to OPM's regulatory issuances, etc. I submitted approximately 150 documents to the FR under my name since being hired by OPM. I have not sent any regulatory packages under my name to the FR since June 20, 2006. (*See* examples under Tab 17)

2. I reviewed regulatory packages for approval by the Director but have not been given any regulatory packages for review since June 20, 2006, even though my Performance Standards and Position Description still has regulatory work as one of my duties and evaluating factors. (*See* Tab 2) Mr. Coco does not review and does not know how to review regulatory packages for compliance with the FR Document Drafting Handbook required for publishing items in the FR.

3. I shared responsibility for reviewing, tracking and coordinating correspondence and emails from OMB to OPM program offices pertaining to regulatory packages with Jackie Carter. I have not reviewed, tracked and or coordinated any correspondence or emails from OMB since June 20, 2006.

4. I was responsible for ensuring that 'Notice and Posting' (N&P) announcements were distributed. Since June 20, 2006, Mr. Coco has been responsible for ensuring that they are distributed. Instead of me issuing these independently, Mr. Coco now gives me the documents to prepare for distribution, which is for the most part clerical work except for a small graphics function associated with preparing the N&P announcements.

5. I used to be assigned projects related to designing, creating, and preparing visual information and graphic projects such as brochures, posters, signs, invitations, etc. Since June 20, 2006, I have not been assigned any visual information projects even though my Performance Standards and Position Description still have this function listed as one of my evaluating factors and duties. (*See* Tab 3) I believe that I am as competent as Issac Evans in performing these duties. In fact, I was able to remove a watermark from a publication that neither he nor anyone else in the office was able to remove. *See* EEO Report No. 2006008, Exhibit G, p.4-5 of Kline's affidavit. (Tab 4) Moreover, one of my works of visual art is on display in the Director's Executive Conference room and a copy of it was made for the Captain of the U.S.S. Theodore Roosevelt.

6. I had primary responsibility for the Federal Register Management System (FRMS), which is a system that I initiated and developed utilizing the services of the Office of Information Services within the Management Services Division, who simply did the mechanics of the FRMS based on the input I gave to them. Since my return on June 20, 2006, Mr. Coco has been assigned the team leader for

EXHIBIT
PAGE _____ OF _____

        projects related to FRMS even though he had no working knowledge of the
FRMS.

7. Prior to June 20, 2006, I was a driver for OPM's Document Management System
(DMS). When I returned from AL, I was no longer a driver for the DMS but
Mr. Coco had assumed the responsibility and that responsibility was not restored
to me until after I filed this EEO complaint. On August 10, 2006, after I filed this
complaint, I was sent to training again for the DMS and obtained access. The
impact this action had was that it related to the elimination of my regulatory
duties since regulatory packages now flow through the DMS system. Even
although I have access to the DMS, I do not retrieve packages from the DMS for
review since I am no longer working with Ms. Carter with the FR items because
all the FR work I perform now goes through Mr. Coco.  Mr. Coco is now the FR
Liaison in my stead.  This was an essential function I performed since as I stated I
sent approximately 150 regulatory packages to the FR under my signature but
now I am not authorized to send regulatory packages to the FR.

Mr. Davis said he gave Mr. Coco the above responsibilities because Mr. Coco now
functions as a "team leader." Prior to June 20, 2006, Mr. Coco did not perform 'team
leader' duties. He is not the team leader over Jackie Carter (Black female), GS-13,
Management Analyst, who still performs regulatory work on an independent basis,
though Mr. Coco now assists her in my stead. Mr. Coco is not the team leader over Issac
Evans (Black male), GS-13, Visual Information Specialist who performs visual and
graphics work on an independent basis, though Mr. Coco assists him when needed. He is
only a team leader over me. Therefore, I believe Mr. Davis made Mr. Coco a team leader
over me in order to remove my professional responsibilities and give me the clerical
ones, including assigning me primary responsibility for (1) answering the PMG telephone
lines and (2) responding to the Publications Inbox. Prior to June 20, 2006, I merely
assisted Mr. Coco with these two duties.

Not being able to perform the professional duties listed above and being assigned menial
tasks has had a negative psychological impact on me and my moral. I feel like I am
treated as if I am incompetent and inferior. This is demeaning and degrading to me as a
professional because I am an educated, trained professional who is highly competent,
highly skilled and more qualified to perform the regulatory work than Mr. Coco and at
least as competent to perform the visual information work as Mr. Evans.

Prior to June 20, 2006, I shared the following clerical responsibilities with other members
of the PMG:

1. I backed up Mr. Coco in answering the PMG telephone lines. Since June 20,
2006, I have been assigned full responsibility for answering the PMG telephone
lines, which include answering and screening telephone calls for Mr. Benedi, Mr.
Davis, and Mr. Coco, who all have the Publications telephone number listed in
Outlook under their name as their main number.

2. I backed up Mr. Coco in responding to the Publications email inbox. Since June
20, 2006, I have been assigned full responsibility for responding to the

EXHIBIT
PAGE _____ 3 _____ OF _____ 142

Publications email inbox. I am required to cc: Mr. Davis in all of the email responses whereas Mr. Coco was not required to do this. Mr. Davis is highly critical of my responses even when I respond according to the way Mr. Coco instructs me to respond.

3. I used to prepare and send regulatory packages to the FR under my signature. Since June 20, 2006, if a regulatory package needs to go to the FR, Mr. Coco will assign me the task of preparing the regulatory packages under his signature for submission to the FR. In this regard, I am expected to perform secretarial/clerical duties on his behalf.

4. Since June 20, 2006, I am asked to perform clerical duties on behalf of Mr. Coco, Mr. Davis, and Mr. Benedi, such as updating employees' telephone listing information (for Mr. Benedi on June 21, 2006), delivering jobs to the print shop (for Mr. Davis on August 15, 2006), obtaining form numbers from the form's officer (for Mr. Coco on August 15, 2006), delivering OPM form 4150 to the forms' officer for the purpose of having them sign off on the 4150 printing requests (for Mr. Davis on August 15, 2006), preparing packages under Mr. Coco's signature and approval for submitting items to the FR (two packages on June 22, 2006 per Mr. Coco, one package on June 28, 2006 per Mr. Coco and three packages on August 24 per Mr. Davis under Mr. Coco's signature, *See* Tab 5); and monitoring the fax machine and other types of clerical duties.

Having to perform the above clerical assignments has had a negative psychological impact on me and my moral since I am an educated, trained professional but expected to perform menial duties below my competence level. It is highly degrading, and I feel as if Mr. Davis and Mr. Benedi are retaliating against me for my prior EEO activity.

Since I am not privy to the work assignments of other employees, I don't know if other employees work assignments have changed. Mr. Benedi, Mr. Davis, Ms. Carter, and Mr. Coco are witnesses to the reassignment of my duties and responsibilities.

I believe my race and sex were factors in Mr. Davis and Mr. Benedi's decision to change my professional work assignments to clerical work assignments since the professional duties I was responsible for are now assigned to Mr. Coco, even though I believe I am more qualified than Mr. Coco is to perform these duties. I have been performing these duties for the past three and half years, I am a certified paralegal with a 4-year college degree from a state university and I have had to train Mr. Coco how to perform some areas of the regulatory work that he didn't know how to do. I also believe my race and sex were factors in eliminating visual information responsibilities from me since I believe that I am qualified to perform visual information responsibilities yet I am no longer assigned these responsibilities. Instead, Mr. Evans, who was a GS-12 was promoted to a GS-13 after just one year of civilian service (Tab 6), even though I was doing the same work that he is currently doing. Instead of promoting me, they stripped me of the visual information responsibilities and promoted Mr. Evans though I was also performing the same duties he was performing, as well as the same duties as Ms. Carter (a GS-13), and many of the same duties as Mr. Coco (a GS-13). Since June 20, 2006, those

EXHIBIT _____ H

PAGE ____ 4 OF 142

4

responsibilities have been stripped from me and I am now only assigned secretarial/clerical ones.

By stripping me of my responsibilities for no valid reason, I believe management is retaliating against me for my prior EEO activity as well as discriminating against me since they have given responsibilities that I was doing to those who are less competent, less skilled, less experienced and, in some cases, possibly less educated than me and have diminished my responsibilities from professional to menial tasks.

For issue number one, I am seeking to have my professional duties restored, a promotion to a GS-13 level, and $300,000 in damages for discrimination and retaliation against me.

I would like to add the following Information as it relates to issue number one:

1. When I performed visual information and graphic duties, I never made any mistakes that required a job to be redone or reprinted at a cost to OPM or PMG. However, in the past few months, Mr. Evans created a graphic for a banner that had a typographical error in it. It wasn't discovered until after the banner had been made and hung. It had to be taken down and redone by a contractor. There was also a poster that may have been made by Mr. Evans that had typos in it. Mr. Davis and Mr. Benedi may be a witnesses.

2. There was also a recent print job that may have been created by Mr. Evans and approved by Mr. Benedi that had an error in it and had to be reprinted by OPM's print shop. Cassandra Thompson and or Philip Watson may be witnesses as well as Mr. Davis and Mr. Benedi.

3. When I was responsible for the regulatory work, I did not make any mistakes in sending packages to the FR that resulted in a cost to OPM.[1] However, Mr. Coco sent a regulation to the FR for publication that had not been approved by OMB and should not have been sent to the FR. As a result, it not only cost the agency money in issuing a retraction, it also caused the Director a great deal of embarrassment that prompted a formal explanation to OMB from OPM. (*See* Tab 7)

4. Mr. Coco also instructed me to prepare a N&P that he sent out on the Publications Listserv for a regulation that had not been published in the FR that had to be recalled. (*See* Tab 8)

5. I also prevented regulations from being erroneously published in the FR that Ms. Carter instructed me to send to the FR even though they had not been approved by OMB. *See* EEO Complaint No. 2006008, Ex. G, pp. 7&8. (Tab 9)

6. Ms. Carter also approved and sent a regulatory package to the FR that was incorrect and had to be reprinted at a cost to PMG. *See* 70 FR 75745. (Tab 10)

7. On August 24, 2006, Ms. Carter called and said she needed to speak to Mr. Davis about a package that needed to go to the FR on an emergency basis. She said she

---

[1] There was one instance when I called a courier to take a package to the *FR* but the envelope I obtained from Ms. Carter's FR envelope folder had the wrong address on it. Since I had instructed the courier to take the package to the FR, the courier detected the address discrepancy and the label was corrected. Therefore, no undue expense was incurred.

EXHIBIT H
PAGE 5 OF 142
nk

could not assign me the work and so she needed to talk to Mr. Davis. After she spoke to Mr. Davis, he went into Ms. Carter's office and shortly thereafter, he gave me three FR packages and instructed me to prepare them to send to the FR. I did as he instructed. He also informed Mr. Coco that I was preparing packages to go to the FR because Mr. Coco needed to sign off on them for transmitting to the FR. After I prepared the packages, I gave them to Mr. Coco for approval. Mr. Coco signed off on the packages and then the program offices picked them up for sending to the FR. On Tuesday, August 29, 2006, I learned that one of the packages that Mr. Davis instructed me to send to the FR was a final rule titled, *Suspension of Enrollment in the Federal Employees Health Benefits (FEHB) Program for Peace Corp Volunteers*, that had not been cleared by OMB and should not have been sent to the FR. (*See* Tab 11) Both Mr. Davis and Mr. Coco reviewed the packages for sending the rule to the FR but did not question whether they had been approved by OMB. I was not asked to review the packages but simply told to prepare them for submission to the FR. On Tuesday, August 29, 2006, Mr. Davis called me in his office and told me that my performance was unsatisfactory and would be reflected on my upcoming performance appraisal. When asked why, he said I did not follow the proper procedures for sending a rule to the FR because it had not been approved by OMB even though I did exactly what he instructed me to do. (*See* Tab 12)

8.  While I was on Administrative Leave from April 5, 2006 through June 20, 2006 (10 weeks), only three N&P announcements were issued. *See* April 17, 2006, May 18, 2006, and May 25, 2006 notices. (*See* Tab 13) During this time, the format for the announcements was changed to insert a graphic of the N&P form into the email itself. While I was on leave, the graphics for the announcements were not generated correctly and therefore did not print properly. (*See* pp. 2&3 of Tab 13) I was told by Mr. Coco that no one in PMG was able to generate the cover page to look correct. Subsequently, the postings backed up. When I returned to work, I was given six announcements to prepare. I was able to generate the graphics in the emails to appear properly in the email text box. (*See* Tab 14)

In light of these errors, I believe that I am as qualified (if not more competent) to perform the professional regulatory and visual information duties as Ms. Carter, Mr. Coco, Mr. Evans, and Mr. Davis. I believe the reason I am not given the professional duties or promoted to the same level as those presently performing professional duties is due to race, sex, and in retaliation.

Prior to June 20, 2006, the following equipment was in my possession:

1.  Cell phone – I was issued this equipment when I began working for OPM in October 2002. I used the cell phone regularly to page Mr. Benedi, Mr. Coco, and Mr. Davis when they were out of the office and callers and or visitors were looking for them. Just recently, someone was looking for Mr. Coco and it was necessary for me to interrupt Mr. Benedi, who had someone in his office, to ask

him to page Mr. Coco because the visitor was waiting form him. It's ironic that I
would be assigned primary responsibility for answering the telephone for PMG
and yet not be given a cell phone in order to page people that I might need to get
in touch with. Mr. Davis said that if I needed to reach him or Mr. Benedi, I could
email them because they each have a Blackberry. However, Mr. Coco doesn't
have a Blackberry and it is sometimes necessary to reach Mr. Coco. I believe that
Mr. Davis and Mr. Benedi are responsible for not returning the equipment to me
in retaliation for my prior EEO activity against them.

2. Adobe Photoshop Software – I was issued this software shortly after I began
working for OPM in October 2002. I used the software regularly when
performing visual information and graphics work. Not having the software has
made it more difficult to do my job when creating N&P for the OPM Publications
Listserv, which requires me to generate an image of the N&P form and drop it
into an email. Having the software would enable me to more easily make
adjustments to the graphic, generate a better quality graphic and to clean up some
of the marks left from scanning. (*See* Tab 16) I also used this software when I
performed Visual Information System duties. Visual Information responsibilities
are still contained in my Position Description and Performance Standards. (*See*
Tab 3) Since PMG acquired this software license and gave it to me to use, I do
not see any reason why I can't presently use it since no one else in PMG is using
this particular license. There is a computer that has this software in an empty
cubicle behind me that no one is using yet I am not allowed to have it.

3. Web cam – I was issued this equipment shortly after I began working for OPM in
October 2002. I used the web cam regularly to monitor people entering the office
because I cannot see who is entering the office from my cubicle. In that Mr.
Davis has stated that I am supposed to greet visitors, having the web cam enabled
me to see if it is a visitor is entering the office as opposed to a PMG staff member.

4. DVD/CD Burner – I had a CD burner when I first started working for OPM in
October 2002. Approximately two years ago, Mr. Coco ordered DVD/CD
burners for several of us in the office. While I was on Administrative leave, OPM
did a 'roll out' of their computers and I was issued a new computer. Following
the 'roll out', my DVD/CD burner was not transferred to my new computer. I
asked the Help Desk if they could obtain the DVD/CD burner from my old
computer but they informed me that it was in the possession of the Inspector
General's office (OIG). I contacted the OIG and they said that I needed approval
from my supervisor. I spoke with Mr. Davis about it and he said that I did not
need it. I told him that PMG purchased it and therefore we are entitled to the
equipment but he shrugged it off and said "it's only a couple hundred dollars." I
used the burner occasionally when customers needed copies of CDs or DVDs. I
am sometimes asked to scan copies of documents and save them to a CD for a
customer. On August 17, 2006, at approximately 4:45pm a customer, Doris
Lollie, came into PMG wanting a copy made of a CD. Ms. Carter and I were the
only ones in the office at the time. I was unable to help Ms. Lollie because I did
not have a CD burner and had to advise her to come back to PMG on Friday
because everyone had left for the day. I also used the burner to back up my files

7

as we are instructed to do per the IT security training. There is a computer in an empty cubicle behind me that has this equipment but I am not allowed to have it.

5. IPAQ – Is a type of palm pilot or hand held computer. I was issued this equipment shortly after I began working for OPM in October 2002. I used the IPAQ regularly for various purposes such as document & spreadsheet generation, calendar, calculator and other features that a hand held computer offers. When I was issued this equipment, I was not told that it was for purposes of doing OPM work. Instead, I considered it a job perk. I have either misplaced the IPAQ or it may have been stolen from my office but management has not provided me with another one. I considered the IPAQ as a perk and not something that was issued to me for doing my job.

When I asked for the above listed equipment back, Mr. Davis told me that I did not need any of it. I tried to explain why I thought it would be helpful to my job but he did not agree.

I am not aware of any other employees who were placed on administrative leave whereupon their equipment was removed from them. I cannot think of any other witnesses at the moment pertaining to this issue other than the ones presently named in these interrogatories, i.e. Ms. Lollie, Ms. Carter, Mr. Coco, Mr. Evans, Mr. Davis and Mr. Benedi.

I believe that Mr. Davis and Mr. Benedi are discriminating against me because other minority and/or male employees have equipment, such as cell phones, software, and CD burners to make their work easier but deny me the same benefit or privilege. I believe that Issac Evans was recently issued an IPOD. I believe Mr. Evans also has a cell phone and a DVD/CD burner.

I believe that the reason Mr. Davis and Mr. Benedi refuse to return the equipment to me following being cleared by the OIG is to retaliate against me for my prior EEO activity.

My work responsibilities should not have been changed since I was cleared by the OIG. There is no valid reason why they were changed and my equipment should have been returned to me upon my returning to work after being cleared by the OIG.

I would like to have the equipment reissued to me and punitive damages of $300,000 for retaliation and discrimination. The acts of discrimination have caused me a great deal of stress, anxiety, consternation, worry, and mental/emotional pain and suffering. I feel that my rights have been violated. I feel that OPM through its agents Mr. Davis and Mr. Benedi have knowingly and willfully engaged in conduct that constitutes bad faith, mismanagement, negligence, malfeasance, and abuse of authority and the public trust. Mr. Davis and Mr. Benedi have subjected me to a hostile work environment. Their inequitable treatment and belligerent behavior towards me has lowered my resistance to disease as I came down with the flu several months ago and still have some symptoms. Prior to this, I have not had the flu for a number of years. I believe Mr. Davis and Mr. Benedi's treatment of me has been psychologically damaging and I am receiving

EXHIBIT _H_
PAGE _8_ OF _142_

8

counseling as a result of their treatment. Prior to working at OPM, I have never had the need to seek counseling. I am being treated for Lyme disease that I believe was dormant but triggered as a result of the office environment I am subjected to. I believe $50,000 in compensatory damages is reasonable. A copy of my medical report is attached at Tab 17.

I have read the above statement consisting of nine pages, and I hereby swear/affirm under penalty of perjury that it is true, complete and correct to the best of my knowledge and belief. For identification purposes, I have signed or initialed each page. I have also been given an opportunity to make any corrections or additions, which I have initialed.

_Valerie Kline_
Signature of Complainant

_Sept 12, 2006_
Date

**EXHIBIT** _H_
**PAGE** ___9___ **OF** _142_

9

Attachment J

[Federal Register: December 21, 2005 (Volume 70, Number 244)]
[Proposed Rules]
[Page 75745-75752]
From the Federal Register Online via GPO Access [wais.access.gpo.gov]
[DOCID:fr21de05-18]

=======================================================================

Proposed Rules

                                        Federal Register

_____

This section of the FEDERAL REGISTER contains notices to the public of
the proposed issuance of rules and regulations. The purpose of these
notices is to give interested persons an opportunity to participate in
the rule making prior to the adoption of the final rules.

=======================================================================

[[Page 75745]]


OFFICE OF **PERSONNEL MANAGEMENT**

5 CFR Parts 337 and 930

RIN 3206-AK86


Examining System and Programs for Specific Positions and
Examinations (Miscellaneous)

AGENCY: Office of **Personnel Management**.

ACTION: Proposed rule.

-----------------------------------------------------------------------

SUMMARY: The Office of **Personnel Management** (OPM) is republishing the
proposed rule published on December 13, 2005, due to information that
was **inadvertently** omitted. The purpose of these regulations is to
revise the Administrative Law Judge Program. The purpose of these
revisions is to remove procedures that appear in other parts of this
chapter, update outdated information, and remove the internal examining
processes from the regulations. Additionally, these revisions describe
OPM and agency responsibilities concerning the Administrative Law Judge
Program. This proposed regulation continues the basic intent of making
administrative law judges independent in matters of tenure and
compensation.

DATES: Comments must be received on or before February 21, 2006.

ADDRESSES: Send, deliver, or fax written comments to: Mr. Mark Doboga,
Deputy Associate Director for Talent and Capacity Policy, U.S. Office
of **Personnel Management**, Room 6551, 1900 E Street NW., Washington, DC
20415-9700; e-mail: employ@opm.gov; fax: (202) 606-2329.
    Comments may also be sent through the Federal eRulemaking Portal
at: http://www.regulations.gov. All submissions received through the

Portal must include the agency name and docket number or Regulation Identifier Number (RIN) for this rulemaking.

FOR FURTHER INFORMATION CONTACT: Ms. Linda Watson by telephone at (202) 606-0830; by fax at (202) 606-2329; by TTY at (202) 418-3134; or by e-mail at linda.watson@opm.gov.

SUPPLEMENTARY INFORMATION: The Office of **Personnel Management** (OPM) is republishing the proposed rule published on December 13, 2005, (70 FR 73646) due to information that was **inadvertently** omitted. The administrative law judge function was established by the Administrative Procedure Act (APA) (Act of June 11, 1946, 60 Stat. 237, as amended) and codified in title 5, United States Code (U.S.C.), sections 556, 557, 1305, 3105, 3344, 4301(2)(D), 5372, and 7521. Administrative law judges preside at formal hearings and make or recommend decisions on the basis of the record. The APA requires that this function be carried out in an impartial manner. To assure objectivity of administrative law judges and to insulate them from improper pressure, the law made these positions independent of the employing agencies in matters of tenure and compensation.

  The goal of this revision is to streamline the current administrative law judge regulations as prescribed in 5 CFR part 930, subpart B. Therefore, OPM is proposing a substantive rewrite of the administrative law judge regulations to eliminate procedures that appear in other parts of this chapter, remove the internal examination process, and remove obsolete instructions for implementing the current pay system authorized by the Federal Employees Pay Comparability Act of 1990; to add clarifying language; to include OPM and agency responsibilities under the program; to emphasize components of the Administrative Law Judge Program; to organize information into new sections for emphasis and clarity; and to revise the language to improve readability.

  We propose in Sec. 930.201, ``Coverage,'' to clarify that administrative law judge positions are in the competitive service, and competitive examining procedures apply. In addition, we propose to move Sec. Sec. 930.203b, ``Title of administrative law judge,'' and 930.212, ``Rotation of administrative law judges,'' to Sec. 930.201 because this information applies to the general coverage of the Administrative Law Judge Program.

  We also propose to add the authorities and responsibilities of OPM and agencies that employ administrative law judges in Sec. 930.201. Currently, the regulations do not identify these authorities and responsibilities. Although OPM does not employ administrative law judges for the Federal Government, OPM does administer the Administrative Law Judge Program. In Sec. 930.201, we describe OPM's authority and responsibility, according to the APA, as assuring that administrative law judges are independent in matters of appointment, pay, and tenure.

  Proposed Sec. 930.201(e)(3) states that OPM has the authority to establish classification and qualification standards for administrative law judge positions. OPM's authority to establish classification standards for administrative law judge positions is 5 U.S.C. 5372(b)(2). Section 104 of Public Law 101-509 removed administrative law judge positions from coverage under 5 U.S.C. 5104 and amended 5 U.S.C. 5372(b)(2) to authorize OPM to classify administrative law judge positions outside the General Schedule. Under 5 U.S.C. 1305, OPM may use its rulemaking authority to implement this classification authority for administrative law judge positions.

  OPM's authority to establish administrative law judge

EXHIBIT ___H Tab 10
PAGE___64_ OF _142_

qualifications as an adjunct to competitive examination is Civil Service Rule II, 5 CFR 2.1(a), which authorizes OPM ``to establish standards with respect to citizenship, age, education, training and experience, suitability, and physical and mental fitness, and for residence or other requirements which applicants must meet to be admitted to or rated in examinations.''

The legislative history of 5 U.S.C. 3105, formerly section 11 (1st sentence) of the APA, governing administrative law judge appointments, confirms the clear intent of Congress to give OPM the authority to establish qualification standards for administrative law judges as an adjunct to competitive examination. OPM may utilize its rulemaking authority in 5 U.S.C. 1305 to authorize qualification standards for administrative law judges.

An agency employing administrative law judges is responsible for appointing as many administrative law judges as needed and to assign cases to administrative law judges on a rotational basis so far as practicable.

We propose to move paragraph (c) of the current Sec. 930.201, ``Coverage,'' to

[[Page 75746]]

Sec. 930.203, ``Cost of competitive examination.'' Paragraph (c) discusses the financial responsibility for the Administrative Law Judge Program. By adding paragraph (c) to Sec. 930.203, we are highlighting agencies' responsibility for the cost of the examination. Currently, under 5 U.S.C. 1104(a)(2), agencies employing administrative law judges are required to reimburse OPM for its examining services. Reimbursement is currently based on the agency's relative number of administrative law judge positions as of March 31 of the preceding fiscal year. To ensure an accurate count of administrative law judges, we also propose to change the time period from March 31 of the preceding fiscal year to the current fiscal year. The cost is calculated by OPM and each employing agency is notified of its share.

We propose to remove the definition of ``Promotion'' from Sec. 930.202, ``Definitions.'' This term uses a common definition throughout the Federal Government and is defined in 5 CFR part 210.102(b)(11). Standardizing definitions of common terms ensures their consistent application. We propose to add and define two significant terms to the regulations and clarify their specific use in this subpart: senior administrative law judge and superior qualifications.

We propose to change the title of Sec. 930.203, ``Examination,'' to ``Cost of competitive examination.'' OPM has great discretion to design and administer competitive examinations (See 5 U.S.C. 1104, 1302, 3301, 3304.) OPM must be able to incorporate advances in the state of the art of examination methodology in the design of each administrative law judge examination. Consequently, OPM proposes to remove the examination scoring process currently published in section 930.203, and to state in Sec. 930.201(e)(1) that use of the examination scoring process published in 5 CFR 337.101(a) is not required in scoring administrative law judge examinations. OPM is proposing a conforming revision in part 337. The current examination covered by OPM Examination Announcement No. 318 is closed and will be replaced by a new administrative law judge examination; therefore, we propose to remove all references to Announcement No. 318 from this subpart. When the new examination is available, OPM will announce the examinations as prescribed in 5 U.S.C. 3330.

A lengthy description of the administrative law judge examination and its procedures is contained in the existing Sec. 930.203 of this subpart. The method by which examinations are conducted and

EXHIBIT _H, Tab 10_
PAGE _65 g 142_

administered is subject to periodic changes; therefore, removing these procedures from the regulations will provide OPM with the flexibility to adopt such changes, as appropriate. We propose to remove the detailed language describing internal examining and program processes and procedures from the regulations, such as the language concerning periodic open competition, minimum qualifications, supplemental qualifications, participation in examination procedures, final rating, preparation of certificates, and appeal of rating. The appropriate mechanism to address this type of information is the vacancy announcement. This information is prescribed in 5 U.S.C. 3330 and 5 CFR 300.104(b), 330.102(b) and 330.707, and is required in all vacancy announcements. As appropriate, OPM will continue to work with employing agencies to review the Administrative Law Judge Program for effectiveness and efficiency consistent with statutory requirements.

     We propose to redesignate Sec.  930.203a, ``Appointment,'' as Sec. 930.204, ``Appointments and conditions of employment.'' We also propose to move paragraphs (b), (c), and (e) of Sec.  930.203a, ``Appointment,'' and Sec. Sec.  930.204, ``Promotion,'' 930.205, ``Reassignment,'' 930.206, ``Transfer,'' and 930.207, ``Reinstatement,'' to section 930.204. The purpose is to highlight the prohibition of a probationary period for administrative law judges and to consolidate the various types of appointments under one section. With the consolidation, we propose to remove the internal examining processes and procedures involved in appointing an individual to an administrative law judge position; revise the language to clarify that agencies must obtain OPM's approval before making any promotion, transfer, reinstatement, reassignment, pay adjustments or senior administrative law judge appointments to an administrative law judge position; and include information related to the type of appointment and tenure group. Because provisions of the Ramspeck Act formerly codified at 5 U.S.C. 3304(c) were repealed by Public Law 104-65 on December 19, 1997, we are removing paragraph (d) of section 930.203a which involves the appointment of legislative and judicial employees to an administrative law judge position. These individuals now must compete with other outside candidates and meet the qualification and examination requirements for an administrative law judge position.

     We propose to remove Sec.  930.208, ``Restoration'' from this regulation. Part 353 of title 5, Code of Federal Regulations, governs the restoration of an employee to duty after military service or recovering from compensable injury, also applies to restoration to an administrative law judge position.

     Currently, the administrative law judge regulations contain two terms, ``absolute status'' and ``career absolute appointment,'' that are not defined in either the United States Code or Code of Federal Regulations. We propose to remove these terms from the regulations and replace them with terms used in the competitive service, ``competitive status'' and ``career appointment.'' To be a career employee in the competitive service, an employee must serve 3 years of substantially continuous creditable service and is subject to a 1-year probationary period. However, Sec.  315.201(c), ``Exceptions from service requirement,'' includes an exception from the 3-year service requirement when an appointment to a position is required by law to be filled on a permanent basis. The APA provides administrative law judges protection from improper influences and ensures independence when carrying out their duties by conferring competitive status at the time of appointment. Therefore, the requirements for probationary and career-conditional periods do not apply to administrative law judges. An administrative law judge appointment confers competitive status, places the employee in tenure group I, and does not require a probationary period.

EXHIBIT
PAGE_ 66 _OF 142 H Tab 10

Currently Sec. 930.203a(c)(3), ``Appointment of incumbents of newly classified administrative law judge positions,'' addresses the appointment of employees whose positions are classified as an administrative law judge position on the basis of legislation, Executive order, or decision of the court. An agency has 6 months after the classification to recommend to OPM the appointment of an administrative law judge. We propose to delete the 6-month requirement and rely on the terms of the legislation, Executive order, or court decision for any time frames for appointments. Paragraph (c)(4) of the current regulations states that in an emergency situation OPM may authorize a conditional appointment of an employee to an administrative law judge position pending final decision on the employee's eligibility for career appointment. We propose to delete this provision because it is inconsistent with the intent of the APA that administrative law judges serve without condition.

The function of an administrative law judge is to prepare for and preside at formal hearings in accordance with the

[[Page 75747]]

APA. Administrative law judges must be held to a high standard of conduct so that the integrity and independence of the administrative judiciary can be maintained. Similar to the attorneys employed by the Federal Government who are required to maintain an ``active'' status to practice law, administrative law judges are expected to meet professional licensing requirements as attorneys. Presently, an applicant who wishes to be an administrative law judge must have been duly licensed and authorized to practice law as an attorney under the laws of a State, the District of Columbia, the Commonwealth of Puerto Rico, or any territorial court established under the United States Constitution. We propose to clarify that a professional license requirement continues as a condition of employment for any individual serving as an administrative law judge. A professional license to practice law is required while serving as an administrative law judge. This requirement applies to eligibles on the Administrative Law Judge register, incumbent administrative law judges, former administrative law judges applying for reinstatement or reemployment, and retired administrative law judges applying under the Senior Administrative Law Judge Program. An administrative law judge must maintain an ``active'' status to practice law under the laws of a State, the District of Columbia, the Commonwealth of Puerto Rico, or any territorial court established under the United States Constitution. In lieu of maintaining an ``active'' status to practice law, judicial status is acceptable in States that prohibit sitting judges from maintaining ``active'' status to practice law. Being in ``good standing'' is also acceptable in lieu of ``active'' status in States where the licensing authority considers ``good standing'' as having a current license to practice law.

For clarity, we propose to redesignate Sec. 930.210, ``Pay'' as section 930.205, ``Administrative law judge pay system.''

We propose to delete paragraphs (j) through (m) of current Sec. 930.210, which contain instructions for converting GS employees to the administrative law judge pay system on the first day of the first pay period beginning on or after February 10, 1991. Because all administrative law judges have been converted to the current pay system, these paragraphs are obsolete.

Currently, with OPM approval, an agency may pay a higher minimum rate to a candidate with superior qualifications who is appointed from an OPM certificate of eligibles to an administrative law judge position at level AL-3. Under Sec. 930.205(f)(2), we propose to expand coverage

EXHIBIT
PAGE ___ 67 OF __

H, Tab I
OF 148

under this authority to include an administrative law judge applicant with superior qualifications as well as a former administrative law judge with superior qualifications who is eligible for reinstatement.

We propose to add a new paragraph (i) to Sec. 930.205 (as redesignated) to clarify that an agency may reduce the pay level or rate of basic pay of an administrative law judge for good cause either after the Merit Systems Protection Board orders the action, as provided in Sec. 930.211 (as redesignated), or if agreed upon by the administrative law judge and with OPM's approval.

We propose to redesignate the existing Sec. 930.211 as Sec. 930.206, ``Performance rating and awards,'' and to move paragraph (b) of existing Sec. 930.210, ``Pay,'' to Sec. 930.206. This change consolidates the information on performance rating and awards into one section.

We propose to redesignate Sec. 930.209 as Sec. 930.207, and to change its title from ``Detail and assignment to other duties'' to ``Details and assignments to other duties within the same agency.'' The new title emphasizes the movement of an administrative law judge within the agency.

We propose to redesignate Sec. 930.213, ``Use of administrative law judges on detail from other agencies,'' and to Sec. 930.208, ``Administrative law judge loan program--detail to other agencies.'' The title change echoes the term commonly used by the administrative law judge community for the process of detailing administrative law judges to other agencies. We also propose to clarify OPM's current practice of detailing an administrative law judge for a period within the current fiscal year with the possibility of an extension into the next fiscal year. OPM approves extensions on a case-by-case basis. Section 930.208 gives agencies the flexibility to meet unusual work circumstances requiring an administrative law judge to stay beyond the initial 1-year period.

We propose to redesignate Sec. 930.216, ``Temporary reemployment: senior administrative law judges,'' as Sec. 930.209, ``Senior administrative law judge program,'' to echo the term commonly used by the administrative law judge community for the process of employing retired administrative law judges. The title distinguishes this program from the loan program described in Sec. 930.208 (as redesignated). We also are clarifying the employment limitation for reemployed administrative law judges to be either a specified period not to exceed 1 year or such periods as may be necessary to conduct and complete the hearing of one or more specified cases.

We propose to redesignate Sec. 930.215, ``Reduction in force,'' as Sec. 930.210. At the present time, agencies are allowed to fill vacant positions only through the OPM priority referral list. We propose to add a hiring flexibility allowing agencies to fill their vacant administrative law judge positions by reassigning administrative law judges within their workforce. This flexibility allows agencies to manage their administrative law judge workforce by providing the flexibility to make reassignments within their agency and will assure that adversely affected administrative law judges retain priority when the agency seeks to fill from outside its workforce. OPM will continue to retain the authority to grant exceptions to the order of selection.

We propose to redesignate Sec. 930.214, ``Actions against administrative law judges,'' as Sec. 930.211. We also propose to revise this section to improve clarity and readability. This section continues to recognize that administrative law judge applicants and appointees, like other applicants and appointees to the competitive service, are subject to suitability investigations and determinations.

Derivative Table Comparing New Section Numbers in Part 930, Subpart B

EXHIBIT
PAGE ___  H - Tab 1C
68 OF 142

With Old Section Numbers.

To assist readers in comparing OPM's proposed rule to 5 CFR part 930, subpart B with the regulation as it is currently published, we have prepared the following derivation table.

Derivation Table for 5 CFR 930 Subpart B

| New section | Old section |
|---|---|
| 930.201.................................. | 930.201. |
| 930.201(a)............................... | 930.201(a). |
| 930.201(b)............................... | 930.201(b). |
| 930.201(c)............................... | 930.203b. |
| 930.201(d)............................... | New. |
| 930.201(e)(1) through (9)................ | New. |
| 930.201(f)(1) and (2).................... | New. |
| 930.201(f)(2)-(5)........................ | 930.212. |
| 930.202.................................. | 930.202. |
| Administrative Law Judge Position........ | 930.202(c). |
| Agency................................... | 930.202(a). |
| Detail................................... | 930.202(b). |
| | 930.202(d) (Removed). |
| | 930.202(e) (Removed). |
| Removal.................................. | 930.202(f). |

[[Page 75748]]

| | |
|---|---|
| Senior Administrative Law Judge.......... | 930.216(a)(2). |
| Superior Qualifications.................. | 930.210(g)(2). |
| 930.203.................................. | 930.201(c). |
| 930.204.................................. | 930.203a. |
| 930.204(a)............................... | 930.203a(a) and (b). |
| 930.204(b)............................... | New. |
| 930.204(c)............................... | 930.203a(c). |
| 930.204(c)(1)............................ | 930.203a(c)(1). |
| 930.204(c)(2)............................ | 930.203a(c)(2). |
| 930.204(c)(3)............................ | 930.203a(c)(3) (Revised). |
| 930.204(c)(4)............................ | 930.203a(c)(4) (Revised). |
| | 930.203a(d) (Removed). |
| 930.204(d)............................... | 930.203a(e). |
| 930.204(e)............................... | 930.204 (Revised). |
| 930.204(f)............................... | 930.205 (Revised). |
| 930.204(g)............................... | 930.207 (Revised). |
| 930.204(h)............................... | 930.206 (Revised). |
| | 930.208 (Removed). |
| 930.205.................................. | 930.210. |
| 930.205(f)(2)............................ | 930.210(g)(2). |
| 930.205(i)............................... | New. |
| | 930.210(j) through (m) (Removed). |
| 930.206.................................. | New title. |
| 930.206(a)............................... | 930.211. |
| 930.206(b)............................... | 930.210(b). |
| 930.207.................................. | 930.209. |
| 930.208.................................. | 930.213. |
| 930.209.................................. | 930.216. |
| 930.210.................................. | 930.215. |
| 930.211.................................. | 930.214. |

--------------------------------------------------------------------------

Executive Order 12866, Regulatory Review

This proposed rule has been reviewed by the Office of **Management** and Budget in accordance with Executive Order 12866.

Regulatory Flexibility Act

I certify that these regulations would not have a significant economic impact on a substantial number of small entities (including small businesses, small organizational units, and small governmental jurisdictions) because they would affect only some Federal agencies and employees.

List of Subjects in 5 CFR Parts 337 and 930

Administrative practice and procedure, Computer technology, Government employees, Motor vehicles.

U.S. Office of **Personnel Management**.
Linda M. Springer,
Director.
Accordingly, OPM is proposing to amend 5 CFR parts 337 and 930 as follows:

PART 337--EXAMINING SYSTEM

1. The authority citation for part 337 continues to read as follows:

Authority: 5 U.S.C. 1104(a)(2), 1302, 2302, 3301, 3302, 3304, 3319, 5364, E.O. 10577, 3 CFR 1954-1958 Comp., p. 218; 33 FR 12423, Sept. 4, 1968; and 45 FR 18365, Mar. 21, 1980.

Subpart A--General Provisions

2. Revise Sec. 337.101(a) to read as follows:

Sec. 337.101  Rating applicants.

(a) OPM shall prescribe the relative weights to be given subjects in an examination, and shall assign numerical ratings on a scale of 100. Except as otherwise provided in this chapter, each applicant who meets the minimum requirements for entrance to an examination and is rated 70 or more in the examination is eligible for appointment.
* * * * *

PART 930--PROGRAMS FOR SPECIFIC POSITIONS AND EXAMINATIONS (MISCELLANEOUS)

3. Revise subpart B to read as follows:

Subpart B--Administrative Law Judge Program

Sec.
930.201 Coverage.
930.202 Definitions.
930.203 Cost of competitive examination.

EXHIBIT
PAGE

930.204 Appointments and conditions of employment.
930.205 Administrative law judge pay system.
930.206 Performance rating and awards.
930.207 Details and assignments to other duties within the same
agency.
930.208 Administrative Law Judge Loan Program--detail to other
agencies.
930.209 Senior Administrative Law Judge Program.
930.210 Reduction in force.
930.211 Actions against administrative law judges.

Authority: 5 U.S.C. 1104(a)(2), 1302(a), 1305, 3105, 3323(b),
3344, 4301(2)(D), 5372, 7521, and E.O. 10577, 3 CFR, 1954-1958
Comp., p. 219.

Subpart B--Administrative Law Judge Program

Sec.  930.201  Coverage.

(a) This subpart applies to individuals appointed under 5 U.S.C.
3105 for proceedings required to be conducted in accordance with 5
U.S.C. 556 and 557 and to administrative law judge positions.
(b) Administrative law judge positions are in the competitive
service. Except as otherwise stated in this subpart, the rules and
regulations applicable to positions in the competitive service apply to
administrative law judge positions.
(c) The title ``administrative law judge'' is the official title
for an administrative law judge position. Each agency must use only
this title for **personnel**, budget, and fiscal purposes.
(d)The Director of OPM, or designee, shall prescribe the
examination methodology in the design of each administrative law judge
examination.
(e) OPM does not hire administrative law judges for other agencies
but has authority to:
(1) Recruit and examine applicants for administrative law judge
positions, including developing and administering the administrative
law judge examinations under 5 U.S.C. 1104(a)(2), except OPM is not
required to use the examination scoring process in 5 CFR 337.101(a);
(2) Assure that decisions concerning the appointment, pay, and
tenure of administrative law judges in Federal agencies are consistent
with applicable laws and regulations;
(3) Establish classification and qualification standards for
administrative law judge positions in Federal agencies;
(4) Approve noncompetitive **personnel** actions for administrative law
judges, including but not limited to promotions, transfers,
reinstatements, restorations, reassignments, and pay adjustments;
(5) Approve an intra-agency detail or assignment of an
administrative law judge to a non-administrative law judge position
that lasts more than 120 days or when an administrative law judge
cumulates a total of more than 120 days for more than one detail or
assignment within the preceding 12 months;
(6) Arrange the temporary detail (loan) of an administrative law
judge from one agency to another under the provisions of the
administrative law judge loan program in Sec. 930.208;
(7) Arrange temporary reemployment of retired administrative law
judges to meet changing agency workloads under the provisions of the
senior administrative law judge program in Sec. 930.209;
(8) Maintain and administer the administrative law judge priority
referral program; and

EXHIBIT
PAGE H Tab 10
F 142

(9) Comply with 5 U.S.C. 1305 for purposes of sections 3105, 3344, 4301(2)(D) and 5372 of title 5 U.S.C. and the provisions of section 5335(a)(B) of 5 U.S.C. that relate to administrative law judges.

[[Page 75749]]

(f) An agency employing administrative law judges under 5 U.S.C. 3105 has:
(1) Authority to appoint as many administrative law judges as necessary for proceedings conducted under 5 U.S.C. 556 and 557; and
(2) Responsibility for:
(i) Assigning an administrative law judge to cases in rotation so far as is practicable;
(ii) Obtaining OPM's approval before making any promotion, transfer, detail in excess of 120 days, reinstatement, reassignment, or restoration appointments to an administrative law judge position, employment of senior administrative law judges, or pay adjustments as required under Sec. 930.205; and
(iii) Ensuring the independence of the administrative law judge.


Sec. 930.202  Definitions.

In this subpart:
Administrative law judge position means a position in which any portion of the duties requires the appointment of an administrative law judge under 5 U.S.C. 3105.
Agency has the same meaning given in 5 U.S.C. 551(1).
Detail means the temporary assignment of an administrative law judge from one position to another administrative law judge position without change in civil service or pay status.
Removal means the involuntary separation of an administrative law judge from employment as an administrative law judge or employment with an agency.
Senior administrative law judge means a retired administrative law judge who is reemployed under a temporary appointment under 5 U.S.C. 3323(b)(2) and Sec. 930.209.
Superior qualifications means an appointment made at a rate above the minimum rate based on such qualifications that may include, but are not restricted to, experience practicing law before the hiring agency; experience practicing before another forum in a field of law relevant to the hiring agency; outstanding reputation among others in a field of law relevant to the hiring agency; or special skills that will meet a demonstrated need of the hiring agency.


Sec. 930.203  Cost of competitive examination.

Each agency employing administrative law judges must reimburse OPM for the cost of developing, examining, and administering the administrative law judge examinations. Each agency is charged a pro rata share of the examination cost, based on the actual number of administrative law judges the agency employs. OPM computes the cost of the examination program on an annual basis and notifies the employing agencies of their respective shares after the calculations are made.


Sec. 930.204  Appointments and conditions of employment.

(a) Appointment. An agency may appoint an individual to an

EXHIBIT
PAGE____
H, Tab 10
72 F. 142

administrative law judge position only with prior approval of OPM, except when it makes its selection from the list of eligibles provided by OPM. An administrative law judge receives a career appointment and is exempt from the probationary period requirements.

(b) Licensure. At the time of application and any new appointment and while serving as an administrative law judge, the individual must possess a professional license to practice law under the laws of a State, the District of Columbia, the Commonwealth of Puerto Rico, or any territorial court established under the United States Constitution. Judicial status is acceptable in lieu of ``active'' status in States that prohibit sitting judges from maintaining ``active'' status to practice law. Being in ``good standing'' is also acceptable in lieu of ``active'' status in States where the licensing authority considers ``good standing'' as having a current license to practice law.

(c) Appointment of incumbents of newly classified administrative law judge positions. An agency may give an incumbent employee an administrative law judge career appointment if that employee is serving in the position when it is classified as an administrative law judge position on the basis of legislation, Executive order, or a decision of a court and if:

(1) The employee has competitive status or is serving in an excepted position under a permanent appointment;

(2) The employee is serving in an administrative law judge position on the day the legislation, Executive order, or decision of the court on which the classification of the position is based becomes effective;

(3) OPM receives a recommendation for the employee's appointment from the agency concerned; and

(4) OPM determines the employee meets the qualification requirements and has passed the current examination for an administrative law judge position.

(d) Appointment of an employee of non-administrative law judge positions. Except as provided for in paragraphs (a) and (c) of this section, an agency may not appoint an employee who is serving in a position other than an administrative law judge position to an administrative law judge position.

(e) Promotion. (1) Except as otherwise stated in this subpart, 5 CFR part 335 applies in the promotion of administrative law judges.

(2) To reclassify an administrative law judge position at a higher level, the agency must submit a request to OPM. When OPM approves the higher level classification, OPM will direct the promotion of the administrative law judge occupying the position prior to the reclassification.

(f) Reassignment. Prior to OPM's approval, the agency must provide a bona fide **management** reason for the reassignment.

(g) Reinstatement. An agency may reinstate a former administrative law judge who has served under 5 U.S.C. 3105, meets the qualification requirements, and has passed either the current or immediately preceding administrative law judge examination.

(h) Transfer. An agency may not transfer an individual from one administrative law judge position to another administrative law judge position sooner than 1 year after the individual's last appointment, unless the gaining and losing agencies agree to the transfer.


Sec.  930.205  Administrative law judge pay system.

(a) OPM assigns each administrative law judge position in one of the three grades or levels of basic pay, AL-3, AL-2 or AL-1, of the administrative law judge pay system established under 5 U.S.C. 5372 in accordance with this section. Pay level AL-3 has six rates of basic

EXHIBIT ___ H Tab 10
PAGE___ 73 of 142

pay, A, B, C, D, E, and F.

(1) The rate of basic pay for AL-3, rate A, may not be less than 65 percent of the rate of basic pay for level IV of the Executive Schedule. The rate of basic pay for AL-1 may not exceed the rate for level IV of the Executive Schedule.

(2) The President determines the appropriate adjustment for each level in the administrative law judge pay system, subject to paragraph (a)(1) of this section. Such adjustments take effect on the first day of the first pay period beginning on or after the first day of the month in which adjustments in the General Schedule rates of basic pay under 5 U.S.C. 5303 take effect.

(3) An agency must use the following procedures to convert an administrative law judge's annual rate of basic pay to an hourly, daily, weekly, or biweekly rate:

(i) To derive an hourly rate, divide the annual rate of pay by 2,087 and round

[[Page 75750]]

to the nearest cent, counting one-half cent and over as the next higher cent.

(ii) To derive a daily rate, multiply the hourly rate by the number of daily hours of service required by the administrative law judge's basic daily tour of duty.

(iii) To derive a weekly or biweekly rate, multiply the hourly rate by 40 or 80, respectively.

(b) Pay level AL-3 is the basic pay level for administrative law judge positions filled through a competitive examination.

(c) Subject to OPM approval, agencies may establish administrative law judge positions in pay levels AL-2 and AL-1. Administrative law judge positions are placed at these levels when they involve significant administrative and managerial responsibilities.

(d) Administrative law judges must serve at least 1 year in each AL pay level, or in an equivalent or higher level in positions in the Federal service, before advancing to the next higher level and may advance only one level at a time.

(e) Except as provided in paragraph (f) of this section, upon appointment to an administrative law judge position placed in level AL-3, an administrative law judge is paid at the minimum rate A of AL-3. He or she is automatically advanced successively to rates B, C, and D of that level upon completion of 52 weeks of service in the next lower rate, and to rates E and F of that level upon completion of 104 weeks of service in the next lower rate. Time in a non-pay status is generally creditable service when computing the 52-week period as long as it does not exceed 2 weeks per year for each 52 weeks of service. However, absence due to uniformed service or compensable injury is fully creditable upon reemployment as provided in part 353 of this chapter.

(f) Upon appointment to a position at AL-3, an administrative law judge may be paid at the minimum rate A, unless the administrative law judge is eligible for a higher rate B, C, D, E, or F because of prior service or superior qualifications, as provided in paragraphs (f)(1) and (f)(2) of this section.

(1) An agency may offer an administrative law judge applicant with prior Federal service a higher than minimum rate up to the lowest rate of basic pay that equals or exceeds the applicant's highest previous Federal rate of basic pay, not to exceed the maximum rate F.

(2) With prior OPM approval, an agency may pay the rate of pay that is next above the applicant's existing pay or earnings up to the maximum rate F. The agency may offer a higher than minimum rate to:

EXHIBIT __H, Tab 10
PAGE __74__ OF __142__

(i) An administrative law judge applicant with superior qualifications (as defined in Sec. 930.202) who is within reach for appointment from an administrative law judge certificate of eligibles; or

(ii) A former administrative law judge with superior qualifications who is eligible for reinstatement.

(g) With prior OPM approval, an agency, on a one-time basis, may advance an administrative law judge in an AL-3 position with added administrative and managerial duties and responsibilities one rate above the administrative law judge's current AL-3 pay rate, up to the maximum rate F.

(h) Upon appointment to an administrative law judge position placed at AL-2 or AL-1, an administrative law judge is paid at the established rates for those levels.

(i) An employing agency may reduce the level or rate of basic pay of an administrative law judge under Sec. 930.211 or if the administrative law judge voluntarily consents in writing to the reduction and with prior OPM approval.

Sec. 930.206   Performance rating and awards.

(a) An agency may not rate the job performance of an administrative law judge.

(b) An agency may not grant any award or financial incentives under 5 U.S.C. 4502, 4503, or 4504 to an administrative law judge.

Sec. 930.207   Details and assignments to other duties within the same agency.

(a) An agency may detail an administrative law judge from one administrative law judge position to another administrative law judge position within the same agency in accordance with 5 U.S.C. 3341.

(b) An agency may not detail an employee who is not an administrative law judge to an administrative law judge position.

(c) An agency may assign an administrative law judge to perform non-administrative law judge duties only when:

(1) The other duties are consistent with administrative law judge duties and responsibilities;

(2) The assignment is to last no longer than 120 days; and

(3) The administrative law judge has not had a total of more than 120 days of such assignments or details within the preceding 12 months.

(d) OPM may authorize a waiver of paragraphs (c)(2) and (c)(3) of this section if an agency shows that it is in the public interest to do so. In determining whether a waiver is justified, OPM may consider, but is not restricted to considering, such factors as unusual case load or special expertise of the detailee.

Sec. 930.208   Administrative Law Judge Loan Program--detail to other agencies.

(a) In accordance with 5 U.S.C. 3344, OPM administers an Administrative Law Judge Loan Program that coordinates the loan/detail of an administrative law judge from one agency to another. An agency may request from OPM the services of an administrative law judge if the agency is occasionally or temporarily insufficiently staffed with administrative law judges, or an agency may loan the services of its administrative law judges to other agencies if there is insufficient

work to fully occupy the administrative law judges' work schedule.
  (b) An agency's request to OPM for the services of an administrative law judge must:
    (1) Identify and briefly describe the nature of the cases(s) to be heard;
    (2) Specify the legal authority for which the use of an administrative law judge is required; and
    (3) Demonstrate, as appropriate, that the agency has no administrative law judge available to hear the case(s).
  (c) The services of an administrative law judge under this program are made from the starting date of the detail until the end of the current fiscal year, but may be extended into the next fiscal year with OPM's approval. Decisions for an extension are made by OPM on a case-by-case basis.
  (d) The agency requesting the services of an administrative law judge under this program is responsible for reimbursing the agency that employs the administrative law judge for the cost of the service.


Sec. 930.209  Senior Administrative Law Judge Program.

  (a) OPM administers a Senior Administrative Law Judge Program in accordance with 5 U.S.C. 3323(b)(2). The Senior Administrative Law Judge Program is subject to the requirements and limitations in this section.
  (b) A senior administrative law judge must meet the:
  (1) Annuitant requirements under 5 U.S.C. 3323;
  (2) Professional license requirement in Sec. 930.204(b); and
  (3) Suitability requirements in 5 CFR parts 5 and 731.
  (c) Under the Senior Administrative Law Judge Program, OPM authorizes

[[Page 75751]]

agencies that have temporary, irregular workload requirements for conducting proceedings in accordance with 5 U.S.C. 556 and 557 to temporarily reemploy administrative law judge annuitants. If OPM is unable to identify an administrative law judge under Sec. 930.208 who meets the agency's qualification requirements, OPM will approve the agency's request.
  (d) An agency wishing to temporarily reemploy an administrative law judge must submit a written request to OPM. The request must:
    (1) Identify the statutory authority under which the administrative law judge is expected to conduct proceedings;
    (2) Demonstrate the agency's temporary or irregular workload requirements for conducting proceedings;
    (3) Specify the tour of duty, location, period of time, or particular cases(s) for the requested reemployment; and
    (4) Describe any special qualifications the retired administrative law judge possesses that are required of the position, such as experience in a particular field, agency, or substantive area of law.
  (e) OPM establishes the terms of the appointment for a senior administrative law judge. The senior administrative law judge may be reemployed either for a specified period not to exceed 1 year or for such time as may be necessary for the senior administrative law judge to conduct and complete the hearing and issue decisions for one or more specified cases. Upon agency request, OPM may reduce or extend such period of reemployment, as necessary, to coincide with changing staffing requirements.
  (f) A senior administrative law judge serves subject to the same

http://frwebgate2.access.gpo.gov/cgi-bin/waisgate.cgi?WAISdocID=250815402546|5|0|    8/22/2006

limitations as any other administrative law judge employed under this
subpart and 5 U.S.C. 3105.
   (g) A senior law judge is paid the rate of basic pay for the pay
level at which the position has been classified. If the position is
classified at pay level AL-3, the senior administrative law judge is
paid the lowest rate of basic pay in AL-3 that equals or exceeds the
highest previous rate of basic pay attained by the individual as an
administrative law judge immediately before retirement, up to the
maximum rate F.


Sec.  930.210  Reduction in force.

   (a) Retention preference regulations. Except as modified by this
section, the reduction in force regulations in part 351 of this chapter
apply to administrative law judges.
   (b) Determination of retention standing. In determining retention
standing in a reduction in force, each agency lists its administrative
law judges by group and subgroups according to tenure of employment,
veterans' preference, and service date as outlined in part 351 of this
chapter. Because administrative law judges are not given performance
ratings (see Sec.  930.206), the provisions in part 351 of this chapter
referring to the effect of performance ratings on retention standing
are not applicable to administrative law judges.
   (c) Placement assistance. (1) An administrative law judge who is
reached in an agency's reduction in force and receives a notification
of separation is eligible for placement assistance under the agency's
reemployment priority list established and maintained in accordance
with subpart B of part 330 of this chapter.
   (2) An administrative law judge who is reached by an agency in a
reduction in force and who is notified of being separated, furloughed
for more than 30 days, or demoted, is entitled to have his or her name
placed on OPM's administrative law judge priority referral list for the
level in which last served and for all lower levels.
   (i) To have his or her name placed on the OPM priority referral
list, a displaced administrative law judge must provide OPM with a
request for priority referral placement, a resume or equivalent, and a
copy of the reduction in force notice at any time after the receipt of
the specific reduction in force notice, but not later than 90 days
after the date of separation, furlough for more than 30 days, or
demotion.
   (ii) Eligibility on the OPM priority referral list expires 2 years
after the effective date of the reduction in force action.
   (iii) Referral and selection of administrative law judges are made
without regard to selective certification or special qualification
procedures.
   (iv) Termination of eligibility on the OPM priority referral list
takes place when an administrative law judge submits a written request
to terminate eligibility, accepts a permanent full-time administrative
law judge position, or declines one full-time employment offer as an
administrative law judge at or above the level held when reached for
reduction in force at geographic locations previously indicated as
acceptable.
   (3) With OPM's prior approval, when there is no administrative law
judge available on the agency's reemployment priority list, an agency
may fill a vacant administrative law judge position through any of the
following methods:
   (i) OPM's administrative law judge priority referral list;
   (ii) Reassignment from within the agency; or
   (iii) Competitive examining, promotion, transfer, or reinstatement

EXHIBIT
PAGE

http://frwebgate2.access.gpo.gov/cgi-bin/waisgate.cgi?WAISdocID=25981540354645+0+  8/22/2006

procedures; provided that the proposed candidate possesses experience and qualifications superior to an available displaced administrative law judge(s) on OPM's priority referral list.

Sec. 930.211  Actions against administrative law judges.

   (a) Procedures. An agency may remove, suspend, reduce in level, reduce in pay, or furlough for 30 days or less an administrative law judge only for good cause established and determined by the Merit Systems Protection Board on the record and after opportunity for a hearing before the Board as prescribed in 5 U.S.C. 7521 and 5 CFR part 1201. Procedures for adverse actions by agencies under part 752 of this chapter do not apply to actions against administrative law judges.
   (b) Status during removal proceedings. In exceptional cases when there are circumstances in which the retention of an administrative law judge in his or her position, pending adjudication of the existence of good cause for his or her removal, is detrimental to the interests of the Federal Government, the agency may:
   (1) Assign the administrative law judge to duties consistent with his or her normal duties in which these conditions would not exist;
   (2) Place the administrative law judge on leave with his or her consent;
   (3) Carry the administrative law judge on annual leave, sick leave, leave without pay, or absence without leave, as appropriate, if he or she is voluntarily absent for reasons not originating with the agency; or
   (4) If the alternatives in paragraphs (b)(1) through (b)(3) of this section are not available, the agency may consider placing the administrative law judge in a paid non-duty or administrative leave status.
   (c) Exceptions from procedures. The procedures in paragraphs (a) and (b) of this section do not apply:
   (1) In making dismissals or taking other actions under 5 CFR parts 5 and 731;
   (2) In making dismissals or other actions made by agencies in the interest of national security under 5 U.S.C. 7532;
   (3) To reduction in force actions taken by agencies under 5 U.S.C. 3502; or

   [[Page 75752]]

   (4) In any action initiated by the Office of Special Counsel under 5 U.S.C. 1215.

   [FR Doc. 05-24286 Filed 12-16-05; 9:42 am]
   BILLING CODE 6325-39-P

EXHIBIT
PAGE __78__ OF __142__    H/ Tab 10