UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VALERIE KLINE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-0451 (JR) |
| ) | |
| LINDA M. SPRINGER, DIRECTOR, ) | |
| U.S. Office of Personnel Management, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I. Introduction**

Defendant hereby responds to Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion) alleging that "there are no disputed issues of material fact or no evidence supporting an element essential to Springer's case in defense of the **retaliation claims**." Docket Entry # 53, at p. 1 (emphasis added). However, Plaintiff failed to provide a separate statement of material facts as required by Local Rule LCvR 7(h), and thus it is unclear as to what facts Plaintiff believes are not in dispute.[1]

Plaintiff fails to support her argument that she has satisfied her burden of showing that defendant's reasons on certain counts in her complaint were pretext for retaliation, other than to

---

[1] Plaintiff's failure to provide a statement of material facts to support her dispositive motion is of particular note as this omission has been brought to her attention during this litigation and she has previously submitted statements of facts. See, e.g., Plaintiff's Opposition to Defendant's Motion for Summary Judgment; and Plaintiff's Surreply to Defendant's Motion for Summary Judgment filing a revised statement of material facts. Docket Entries # 40 & 47.

state that defendant "has failed to present probative evidence that the proffered reasons for the retaliatory actions are not pretextual." Id.  However, other than the unsworn argument in her motion and her self-serving statements, plaintiff fails to present any evidence of pretext to counter defendant's legitimate nondiscriminatory reasons.  Thus, Plaintiff fails to establish, much less meet, her burden of proof by credible evidence of pretext.

Finally, Plaintiff has not shown, nor could she, that her sundry complaints – e.g., complaining about the size of her cubicle compared to other cubicles, not receiving staff assistance on one day, having her leave audited, etc., – constituted adverse personnel actions warranting further review.  Plaintiff thus fails to establish a *prima facie case* of retaliation.[2]

Accordingly, and as further detailed below, Plaintiff's Motion should be denied.

## II. Summary of the Claims Plaintiff believes are Subject to Summary Judgment in her Favor and Grounds for Denial.

Plaintiff lists the following "retaliation" counts that she claims are "suitable for summary judgment" (Plaintiff's Motion at pp. 2-3).

1. Count V - October 19, 2005, Performance Evaluation.

This count involves plaintiff's first claim of discrimination.  Accordingly, it could not have served as the basis of retaliation.

---

[2] Although the D.C. Circuit recently indicated that a Court need not decide whether the plaintiff has made out a *prima facie case* when the employer has asserted a legitimate, nondiscriminatory, reason for its actions, it made clear that a plaintiff must still identify an adverse action. Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 493 (D.C.Cir. 2008).

    2.  <u>Count III - December 15, 2003, Counseling Memorandum.</u>

This count involves a 2003 claim that plaintiff failed to timely pursue. Moreover, it involved alleged conduct prior to her first EEO activity and therefore could not be evidence of retaliation or pretext for retaliation.

    3.  <u>Count VII - December 12, 2005, email inquiry.</u>

There was nothing offensive in the email. <u>See</u> <u>infra</u> at p. 6. Mr. Davis wanted to know the status of the FRMS program and to insure that it was understood that only he and Mr. Benedi could authorize changes to the program. This email is not an adverse personnel action.

    4.  <u>Count XII - December 2005, denial of suitable work space.</u>

Plaintiff performed work assignments in the same area and of the same level of concentration as Ms. Carter and Mr. Coco. None of these individuals had individual offices, only cubicles, like plaintiff. Ms. Carter and Mr. Coco were higher graded employees and, to the extent that a private office had become available, they would have been given priority to occupy it. In any event, this is not an adverse personnel action.

    5.  <u>Count XIV - February 2, 2006, denial of staff support to cover the office telephones</u>.

Plaintiff has presented no evidence of pretext with respect to this singular event occurring on February 2, 2006. This is not an adverse personnel action.

    6.  <u>Count XVI - December 22, 2005, rescission of FRMS administrative rights.</u>

Mr. Davis rescinded plaintiff's administrative rights or access to making changes to the FRMS system, after Plaintiff gave herself administrative rights to the FRMS, notwithstanding the fact that Mr. Benedi specifically told her that he would be the only administrator of the FRMS. Docket Entry # 22-2, pp. 25 & 32 of 36. Thus, Plaintiff's job responsibilities did not

3

require that she have access to this system and this was a decision well within management's discretion. This was not an adverse personnel action.

       7.  <u>Count XVII - January 31, 2006, denial of lunch break and requirement to take leave</u>.

Plaintiff has presented no evidence of pretext with respect to this singular event. This is not an adverse personnel action.

       8.  <u>Count XX - February 2, 2006, letter of reprimand.</u>

Mr. Davis' reasons for the letter of reprimand were legitimate and nonretaliatory. Plaintiff presented no evidence of why they should be considered pretext for retaliation. Moreover, this was not an adverse personnel action; and contrary to plaintiff's allegations, the letter of reprimand is not in her permanent records. Decl. of Caprice D. Miller, attached as Attachment 1 hereto.

       9.  <u>Count XXI - January 10 & 21, 2006, tampering with plaintiff's leave.</u>

There was no tampering with Plaintiff's leave. Mr. Davis was entitled to insure that Ms. Kline was not abusing her leave. No adverse personnel action resulted.

These same claims are discussed in Defendant's dispositive motion and reply. R. 22 & R. 45.

### III. ARGUMENT

At the outset, defendant notes that Ms. Kline directs her claims of retaliation, the claims for which she seeks partial summary judgment here, toward Mr. William Davis, a Caucasian male and her immediate supervisor, who in November 2002 hired her. <u>See</u> Plaintiff's Motion and Exhibit H, thereto, p. 1 of 85. Her dissatisfaction with Mr. Davis began in 2003, when she complained that she was not permitted to telework as allegedly promised at her hiring. She sought to resolve this dissatisfaction through her union. When that failed, Plaintiff commenced

4

her EEO activity in 1995. Even then she based her claims of retaliation on the filing of Fair Labor Standard Act claims and not EEO claims. R. 22-2, Att. 1, p. 54 <u>See also</u>, R. 23.

She first complained about a "fully successful" performance rating in October 2005. Then, over the next few months, she filed a series of EEO complaints. It is during this period that she now alleges that she <u>suffered adverse employment actions in the retaliation claims</u>. Plaintiff's Motion at p. 5 (emphasis in text). Plaintiff's attempts to argue that the series of complained of "personnel actions" were adverse should be rejected. Plaintiff's claims do not rise to the level of "adverse employment actions" under the laws governing this case.

Plaintiff argues that under <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742 (1998), that she has met her burden of proof because she has shown that a "<u>reasonable employee would have found the challenged action materially adverse</u>, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Plaintiff's Motion at p. 6 (*citing* <u>Burlington</u>, 118 S.Ct. at 2415) (emphasis in Plaintiff's Motion). As plaintiff also correctly noted, the <u>Burlington</u> court found that it often depends on the particular circumstances [<u>id</u>.] and believed that "this standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." <u>Id</u> (citing <u>Burlington</u>, 118 S.Ct. at 2416). This Court should reject Plaintiff's attempts to argue that her complained of perceived slights constitute adverse personnel actions.

### A.  A Reasonable Employee Would Not Have Found the Challenged Actions Materially Adverse.

First, the record shows that Plaintiff has not been dissuaded from participating in EEO activities by any of the acts she claims to be discriminatory or retaliatory. To the contrary,

5

plaintiff has filed numerous EEO claims – including three that are pending before this Court and at least three others that are pending before the EEOC. Thus, Plaintiff's level of EEO activity clearly shows that Plaintiff has not been dissuaded from seeking counseling and pursuing the EEO process.

Second, Plaintiff's conduct shows that she is not a reasonable employee as described in the context of Burlington. To the contrary, she appears to be hyper-sensitive to perceived slights. For example, a perusal of the email that she claims is offensive shows that any reasonable person would not find it offensive or "libelous" as she claims. Plaintiff's Motion at p. 2. The email is an inquiry from her supervisor, Mr. Davis, to the individual who overseas the FMRS program, and it states:

> Arlene:
>
> Good afternoon!!!
>
> I happened to notice that you were in our office twice today for a good amount of time. I then discovered that there are changes being made to [Federal Register Management System] FRMS. What changes?
>
> The FRMS is the responsibility of PMG and as such no changes, other then technical should be made without explicit authorization from Claudio or me. Please let me know what the current issue is and how it will affect this office.

Plaintiff's Opposition, R. 40-5, p. 24 of 80. Plaintiff's protestations aside, it is difficult to see what is offensive about a supervisor following up on a program area and making an appropriate inquiry. The other actions complained of are equally trivial. See infra at pp. 8-10.

Finally, plaintiff was clearly recalcitrant toward doing the work that her supervisor requested. Plaintiff's recalcitrance and refusal to work cooperatively is likewise reflected in the emails that she attached to her motion. For instance, at Exhibit H, p. 68 of 127 [Docket Entry

#53-3, p. 4 of 44], in the email from her to Mr. Davis in response to an inquiry about the status of the salaries for 2005 update, plaintiff stated:

> I wish you wouldn't exhibit such a poor attitude. I am right next door. I really feel that you are looking for things to complain about, especially when it's something petty like this.". . . I actually don't even see a need to respond to your email since I told you 'I am available any time it's convenient for you.' . .

Id. In another email, attached to Plaintiff's Motion [id. at p. 29 of 44], where plaintiff sent an email concerning someone holding on the phone, plaintiff stated:

> Why don't you cut me some slack. She wanted to hold. You were on the phone. . . . You need to get off my case. Answering the phone is not one of my main duties. . . . If you find my help is inadequate, perhaps we need to hire a secretary.

Thus, plaintiff finds offense at every turn with her supervisor. Plaintiff obviously subjectively believed that almost any conduct by her supervisor was harmful to her, but an objectively reasonable person would not.

### B. **Plaintiff Fails to Show She Suffered Objectively Tangible Harm.**

Suffice it to say, by the actions she lists and the arguments she makes, Plaintiff has failed to show that she has suffered objectively tangible harm warranting further judicial review. As the case law in this jurisdiction makes clear, "mere idiosyncrasies," such as an assignment, or a change of assignment, are not sufficient to state an injury under Title VII of the Civil Rights Act, as amended. Stewart v. Ashcroft, 352 F.3d 422, 426 (D.C. Cir. 2003) (*citing* Brown v. Brody, 199 F.3d 446, 457) (D.C. Cir. 1999); cf. Jones v. District of Columbia Dept. Of Corrects., 429 F.3d 276, 281 (D.C.Cir.2005) (noting that, in connection with a claim of retaliation discrimination, "[t]he clear trend of authority .... is to hold that a . . , that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action") (*citing* Brown 199 F.3d at 455-56)). The question to ask is whether the

plaintiff is negatively affected, not the type of action taken by the employer. See id.; see also Tsehaye v. William C. Smith & Co., Inc., 402 F.Supp.2d 185, 193 (D.D.C.2005) (*quoting* Stewart v. Evans, 275 F.3d at1126, 1134 (D.C.Cir. 2002)); cf. Holcomb v. Powell, 433 F.3d 889, 902 (D.C.Cir.2006) (stating that, in connection with a claim for retaliation discrimination, " 'purely subjective injuries,' such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions, [but] the threshold is met when an employee 'experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm' ") (internal citations omitted).  Here, Plaintiff is alleging the type of subjective injuries that are described in Holcomb, nothing more.

  Plaintiff has not identified anything objective or tangible to support her contention that she suffered an adverse employment action and therefore her motion for summary judgment should be denied.

  With regard to her first claim, *i.e.,* the fully successful evaluation, this was her initial EEO complaint and could not be the basis for an EEO claim.  In addition, Plaintiff alleged that bonuses to those who received higher than "fully successful" were automatic.  However, that fact is not supported by the record.  See R.22, Exhibit 4 (Declaration of Janet Smith).  With regard to her rating, there was obviously a difference of opinion between herself and Mr. Davis [See R. 40-5, pp. 19-25, 20-80], however, as noted above, the rating was given to Plaintiff before she engaged in EEO activity and, therefore, could not have been an act of retaliation based on her prior EEO activity.

  Similarly, the 2003 counseling memorandum for circulating an email outside of the office containing nudity was given to Plaintiff in 2003, long before she engaged in EEO activity

and therefore could not have been an act of retaliation.  See R. 40-6, p. 71 of 81.  Moreover, it is not in Plaintiff's personnel file.  See Attachment 1, hereto, at ¶¶ 5, 6.  Of additional note is that Plaintiff does not deny that the email was inappropriate, she only believes that Mr. Coco, who allegedly circulated the same email, was not counseled.  Plaintiff presents no evidence that Mr. Coco circulated the memo outside of the office.

The so-called "rescission" of Plaintiff's administrative rights to the FRMS was within Mr. Davis' authority as her supervisor and there is no evidence presented that it had an objective impact on her position or that she had authority to make changes to the system.  The record reflects she did not have the authority. R. 22-2, p. 32 of 36. Plaintiff simply did not like the way Mr. Davis wrote the email and handled the matter.  Plaintiff's Motion at p. 34.

The office space that Plaintiff alleges she was retaliatorily denied was across the hall and outside of the PMG area where employees doing similar work were housed in cubicles, including Plaintiff (GS-12), Ms. Carter (GS-13) and Mr. Coco (GS-13).  Ms. Carter did regulatory work, but a higher level of responsibility.  R. 40-5, p. 17.  Mr. Coco was assisted by Plaintiff and thus he too would have benefitted from a private office.  See R. 40-5, p. 17, p. 22; R. 45, Attachment B at 20-21.  It cannot be disputed that all three employees would have benefitted from a quiet, private environment to do their job and that Ms. Carter or Mr. Coco would have had entitlement to the space were any of them to move.  In any event, it was temporary space that did not belong to PMG, and thus plaintiff's complaints regarding its non-assignment are without merit.  Plaintiff's Motion, Exhibit H at p. 2 of 8.

Plaintiff's complaint that she had an urgent need for staff to cover the telephones on February 2, 2006, was a singular event.  Plaintiff makes no reference to any objectively tangible harm resulting from not receiving this staff support.

Plaintiff's complaint "that she was required to take leave instead of being able to take a lunch break falling outside the 'core hours'" [Plaintiff's Motion at p. 15], suggests that she was treated differently than other employees. However, plaintiff's argument is not supported by the contemporaneous documents. Indeed, as the email attached to Plaintiff's Motion at Docket Entry 53-3, p. 43 of 44, evidences, Mr. Davis sent an email to the four individuals who had assigned lunch hours and asked them all to abide by their assigned time. See also Id., p. 44 of 44. This concern was generated by her superior's desire to have the office covered at all times. See Plaintiff's Motion at Exhibit I, p. 1 of 6, see also id., p. 6 of 6. Thus plaintiff's arguments to the contrary are without any merit.

The written reprimand concerning the failure to properly report leave does not appear in Plaintiff's personnel file. See Attachment 1, ¶ 6. Further, the records reflect that Plaintiff's leave was not being accurately recorded. See Plaintiff's Motion, Docket Entry 53-6 at p. 3 of 13. Thus, an audit was warranted.

Plaintiff claims that her leave was tampered with when the audit of her leave was done. She asserts that she was denied the right to use her sick leave on January 10, 2006, and January 21, 2006. Plaintiff's Motion at p. 18. She also complains that her leave was not corrected until she sought EEO counseling. As the record reflects, the delay resulted because the matter was awaiting action by employee relations. Plaintiff's Motion, Email dated 2/15/06. Plaintiff has not identified any evidence to the contrary.

In sum, these isolated instances do not constitute the sort of adverse actions that can support a retaliation claim. See Jones v. District of Columbia Dept. of Corrections, 429 F.3d 276 (D.C. Cir. 2005) (citing Faragher, 524 U.S. at 787-88; Cones v. Shalala, 199 F.3d 512, 521

(D.C.Cir.2000); see also Washington v. Ill. Dep't of Revenue, 420 F.3d 658, 661 (7th Cir.2005)

(stating that the adverse employment action supporting a retaliation claim must be material)).

## CONCLUSION

For the reasons set forth herein, Plaintiff's Motion for Partial Summary Judgment based on her retaliation claims should be denied.

                Respectfully submitted,

                /s/
                JEFFREY A. TAYLOR , D.C. Bar # 498610
                United States Attorney

                /s/
                RUDOLPH CONTRERAS, D.C. Bar # 434122
                Assistant United States Attorney

                /s/
                CLAIRE WHITAKER, D.C. Bar # 354530
                Assistant United States Attorney
                United States Attorneys Office
                Civil Division
                555 4th Street, N.W., Room E-4204
                Washington, D.C. 20530
                (202) 514-7137

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VALERIE KLINE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case Number:** |
| v. ) | **1:07-CV-451 (JR)** |
| ) | |
| **LINDA M. SPRINGER, DIRECTOR** ) | |
| **United States Office of Personnel** ) | |
| **Management,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## **ORDER**

Upon consideration of Plaintiff's Motion for Partial Summary Judgment, the opposition and reply thereto, and after a review of the entire record, it is this

_____day of _____, 2008

ORDERED, that said motion is denied.

_____
UNITED STATES DISTRICT COURT