U.S. DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Valerie Kline | * | |
| Kline | * | |
| v. | * | Case No. 1:07-cv-451 (JR) |
|  | * | |
| Linda M. Springer, Director | * | |
| Defendant | * | |

**RESPONSE TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff's statement of material facts and genuine material issues to be litigated was filed on May 12, 2008 (Docket Entry (DE) 48-4). To the extent that a separate statement needs to be submitted, a *Statement of Material Facts for Which There is No Genuine Issue* is attached herewith. See Attachment 1.

Found in Springer's introduction is the statement, "other than the unsworn argument in her motion and her self-serving statements, plaintiff fails to present any evidence of pretext to counter defendant's legitimate nondiscriminatory reasons." Plaintiff is dumbfounded by the suggestion that "argument" needs to be sworn[1], and nonplussed by the patently false statement that plaintiff failed to present any evidence of pretext in view of the numerous references in the Motion for Partial Summary Judgment to the record showing the duplicity of defendant's statements.

Because defendant's stated nondiscriminatory reasons are so duplicitous, Kline submits that summary judgment is appropriate. See *Bauer v. Metz Baking Co.*, 59 F. Supp. 2d 896

---

[1] Kline submitted a sworn Affidavit (DE 40-3) in response to Defendant's Motion to Dismiss and/or for Summary Judgment and referenced the relevant parts of Kline's Affidavit in the Motion for Partial Summary Judgment.

quoting *Johnson*, 931 F.2d at 1244 , ("Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion."

Springer further contends that plaintiff has not shown that her complaints constituted adverse actions. Kline provided law from this jurisdiction in support for each claim establishing that the acts are adverse. To the contrary, Springer failed to produce any law much less from this jurisdiction refuting that the complained of acts are not adverse. Instead, Springer merely presented general case law on the subject of adverse acts.

Springer has produced no evidence in response to Kline's evidence that would enable a reasonable jury to find in her favor. See *Jack R. Hairsine, v. Bruce R. James,* 2007 U.S. Dist. LEXIS 44038, at 7-8 (D.D.C. 2007) Springer has produced no evidence in response to Kline's evidence that would support any reasonable inference for Springer. See *Crawford*, 37 F.3d at 1341 ("[B]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant.") [Emphasis added.]

Simply put, Springer's has no evidence and no law to support its position that would enable a reasonable jury to find in its favor.

**II.    Summary Judgment Claims**

Springer commented on the following retaliation counts contained in the *Motion for Partial Summary Judgment*:

2

### 1. <u>Count V – October 19, 2005, Performance Evaluation.</u>

Springer's contention that this is Kline's first claim of discrimination <u>is a mistake of fact</u>. The record shows that <u>Kline first sought EEO counseling based on the denial of telework on November 17, 2005</u>. <u>See</u> Attachment 2, pp. 1-2 (CEEO Counseling Intake Sheet, Exhibit A, p. 13-14). <u>Her performance appraisal was not issued until eleven (11) days later on November 28, 2005</u>. <u>See</u> Attachment 2, pp. 3-7 (Exhibit A, pp. 8-12). This is evidence showing that <u>William Davis issued Kline a poor performance appraisal</u> *immediately after* <u>she initiated her first EEO complaint against him</u> for denial of telework.

### 2. <u>Count III – December 15, 2003, Counseling Memorandum.</u>

Even though this claim was investigated by OPM's EEO investigator, Kline concedes that this claim occurred prior to her first EEO action and is probably not suitable for summary judgment under Title VII.

### 3. <u>Count VII – December 12, 2005, defamatory email.</u>

Kline has proffered law from this jurisdiction in support of her position that sending the email was an adverse action because it was an overbearing surveillance of Kline, i.e. contacting the supervisor of Kline's visitor to find out what is going on instead of asking Kline herself. <u>See</u> *Rogers v. McCall*, 488 F. Supp. 689 (D.D.C. 1980). Kline also furnished law from another jurisdiction showing that false accusations resulting in a denial of benefits is an adverse action. <u>See</u> *Duplessis v. Golden State Foods*, 2007 U.S. Dist. LEXIS 27851 (W.D. Wash. 2007). In contrast, <u>Springer proffers no law</u> showing that the sending of false and defamatory, i.e. offensive, email is not an adverse action.

### 4. Count XII – December 2005 denial of suitable work space.

Springer misstates the facts. It is undisputed that Carter teleworked so that she had a quiet environment by virtue of being able to work at home. Because undisputedly Coco does not review regulations (DE 53-4, p. 15), he does not need a quiet environment. Kline reviewed regulations and was not allowed to telework making the need for a quiet environment necessary.

### 5. Count XIV – February 2, 2006 denial of staff support.

Springer misstates the facts. Kline presented evidence of pretext by referring to record evidence where Davis concedes that he did not provide Kline with requested staff support merely because Ms. Gunter-Frye "did not know the system" and he proffered no other reason for denying Kline staff support when the evidence shows Kline urgently needed staff support because she was working on the regulatory agenda under a strict deadline.

### 6. Count XVI – December 22, 2005, rescission of FRMS Administrative rights.

Springer references "Docket Entry 22-2, pp. 25 & 32 of 36" but these pages contain no references relating to the rescission of administrative rights. See Attachment 2, pp. 8-9. Springer produced no evidence other than Davis' and Benedi's unsupported claims that Kline gave herself administrative rights to the FRMS. Kline, on the other hand, produced documentary evidence showing that her administrative rights were sanctioned by her supervisors because they did not object to having the software installed on her computer.

### 7. Count XVII – January 31, 2006, Requiring Kline to take leave in lieu of using her lunch break.

4

Springer misstates the facts. <u>Kline presented record evidence of admissions from Davis that other PMG employees are allowed to use their lunch break in lieu of taking leave whereas Kline is not.</u> Since this act *affected* a "benefit", i.e. the benefit of "leave", it is by definition an adverse action.

### 8. <u>Count XX – February 2, 2006, letter of reprimand.</u>

Springer misstates the facts. <u>There is no evidence showing where Kline improperly reported 5 hours of her leave</u>. In fact, Davis erroneously charged Kline with 4 hours of annual leave and then accused her of not reporting 4 hours of annual leave so that the error resulted in a "wash", which made the "error" in Kline's leave records undetectable on its face. The other one-hour discrepancy was an hour where <u>Coco had approved of Kline taking a late lunch</u> because Kline was under pressure by the Director's Office to complete a review of high priority regulations and therefore worked through her lunch break.

### 9. <u>Count XXI – January 10 & 21, 2006, denial of sick leave following the tampering of Kline's leave.</u>

Springer misstates the facts. The evidence shows that Davis unnecessarily tampered with Kline's leave and then <u>refused to correct</u> it until after she filed a formal complaint against him.

### III.    <u>DISCUSSION</u>

Springer claims that "Plaintiff has not been dissuaded from participating in EEO activities by any of the acts she claims to be discriminatory or retaliatory" and "Plaintiff's level of EEO activity clearly shows that Plaintiff has not been dissuaded from seeking counseling and

5

pursuing the EEO process." DE 54, pp. 5-6.  Springer misapplies the law.  The law does not hold that to be an adverse action, a plaintiff must be dissuaded but that the complained of act "might well dissuade" a reasonable employee from engaging in protected activity. *Burlington N. and Santa Fe Ry. Co. v. White,* 126 S.Ct. 2405, 165 L. Ed. 2d 345 (2006) at 2415.

Kline submits that if she was not knowledgeable in the law, Davis' and Benedi's retaliatory acts might well have dissuaded her from exercising her rights.  Significantly, these adverse acts did cause Kline to suffer mental, emotional and physical harm to the extent that the record shows that she sought counseling and treatment from numerous health care professionals due to the ill affects of the discriminatory/retaliatory treatment.  DE 40-3, ¶¶ 258-261.

If Springer *honestly* believes that Kline has suffered no objectively tangible harm amounting to an adverse action, then Springer must believe that this Court has *erred* in ruling that a denial of benefits is an adverse action (*Saunders v. White*, 191 F. Supp. 2d 95 (D.D.C. 2002)); that reductions in job responsibilities is an adverse action (*Logan v. Denny's, Inc*., 259 F.3d 558, 569 (6th Cir. 2001) *cf. Patterson v. Johnson*, 391 F. Supp. 2d 140 (D.D.C. 2005)); that significantly diminished material responsibilities is an adverse action (*Brown v. Brody*, 339 U.S. App. D.C. 233 (D.C. Cir.1999)); that a performance rating resulting in a denial of monetary benefits is an adverse action (*Douglas v. Jackson*, 2007 U.S. Dist. LEXIS 20412 (D.D.C. 2007), *Russell v. Principi*, 347 U.S. App. D.C. 222, 257 F.3d 815, 818, (D.C. Cir. 2001)); that an unwarranted negative job evaluation is an adverse action (*Johnson v. Dimario*, 14 F.Supp. 2d 107 (D.D.C. 1998)); that harassment, disciplinary action, overbearing surveillance of the protesting employee's work performance, deprivation in participatory activities or denial of benefits is an adverse action (*Rogers v. McCall*, 488 F. Supp. 689 (D.D.C. 1980)); and/or that a formal reprimand is an adverse action (*Mylett v. City of Corpus Christi*, 97 Fed. Appx. 473 (5th

Cir. May 4, 2004), *Weigold v. ABC Appliance Co.*, 105 Fed. Appx. 702 (6th Cir. 2004), *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453 (11th Cir.1998) cited by *Rochon v. Gonzales*, 370 U.S. App. D.C. 74, 438 F.3d 1211 (D.C. Cir. 2006) and *Baloch v. Norton*, 355 F. Supp. 2d 246 (D.D.C. 2005)).

      Springer's arguments and proffered reasons for the retaliatory acts do not stand up to scrutiny, such as the argument that the office space was only "temporary" even though PMG has had possession of it for four (4) years and counting; the argument that denying Kline the benefit of taking a lunch break outside the core hours was generated by her superior's desire to have the office covered at all times when there were others in the office covering the office when Kline was required to use leave instead of using her lunch break in lieu of leave; the argument that Kline's leave was not timely amended because Davis was "waiting on Employee Relations" when the evidence shows that Employee Relations does not have any authority to make decisions as it relates to employees; the argument that the formal reprimand and counseling memorandum are not currently in Kline's personnel file when this is irrelevant since they were in her file for approximately two (2) years and the unwarranted negative performance appraisal will be kept in Kline's file for as long as four (4) years, as attested by Springer's witness, Caprice Miller. (DE 55-2, p. 1, ¶ 3.)

      Springer's proffered reasons fail time and time again because they are pretextual. Accordingly, they should be rejected and summary judgment granted in favor of Kline.

                              Respectfully Submitted,

                                /s/

                              Valerie Kline, p*ro se*
                              83 E Street
                              Lothian, MD  20711
                              (301) 509-2684

U.S. DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

|  |  |  |  |
|---|---|---|---|
| Valerie Kline | * |  |  |
|  | Kline | * |  |
| v. | * | Case No. 1:07-cv-451 (JR) |
|  | * |  |
| Linda M. Springer, Director | * |  |
|  | Defendant | * |  |
|  | * |  |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**STATEMENT OF MATERIAL FACTS FOR
WHICH THERE IS NO GENUINE ISSUE**

1. Kline engaged in protected activity.

2. A causal connection exists between the adverse actions and the protected activity.

3. Jacquline Carter was allowed to telework approximately 2-3 days per week. Kline and Carter are the only ones in PMG who know the full requirements for the regulatory work.  DE 53-4, p. 15.

4. Kline received a "Fully Successful" rating on her Performance Appraisal and that the appraisal contained derogatory comments.  DE 40-4, pp. 70-74. When Kline received a "Fully Successful" performance rating, she was precluded from receiving a monetary bonus.  Kline initiated and recommended using LEXIS/NEXIS over Westlaw, which was implemented in PMG and resulted in a savings of $9,400+/- per year to PMG.  DE 40-5, p. 20. Robert Coco had responsibility for the annual survey for updating the Publications Database.  DE 40-5, p. 21, DE 40-3, ¶ 71.  The annual survey of the Publications database was not performed.  DE 40-5, p. 21. Coco received an "Outstanding" rating even though the survey was not performed. DE 40-3, ¶ 71.  On her own initiative, Kline found some items on OPM's website that could have potentially been added to the Publications database. She asked Coco to review the items to let her know if he agreed that they should be added to the database but the evidence shows that Coco failed to respond to Kline's request. DE 40-5, p. 21.  Kline regularly performed this function and it is undisputed that she identified numerous items on OPM's website that were added to the Publications Database.  DE 40-5, p. 21. Kline assisted Coco whenever he requested her assistance.  DE 40-5, p. 20, DE 40-3, ¶ 128, DE 40-6, p. 6.

5. Kline was issued a Counseling Memorandum on December 15, 2003, for sending out an e-mail about seven (7) months earlier that had been sent to various PMG employees by Robert Coco. The Counseling Memorandum was placed in Kline's official personnel file. DE 17, ¶ 78. Coco did not receive a counseling memo.

6. On December 8, 2005, Davis sent an e-mail to Taylor and her supervisor, Margaret McElrath, about Taylor's visit to Kline. Davis' proffered reason for sending the e-mail was that he was unaware of changes being made to the FRMS. Davis sent the e-mail *immediately after* Taylor had visited Kline on official business pertaining to the FRMS; the email implied that Davis had not been kept informed of the changes being made to the FRMS; the email implied that Kline had authorized changes to the FRMS but did not have authority to authorize the changes. DE 40-5, p. 24.

7. Kline had administrative rights to the FRMS for approximately two (2) years. On December 22, 2005, Davis sent an e-mail instructing Taylor to rescind Kline's administrative rights to the FRMS. DE 16, ¶94.

8. Kline performed regulatory work at least 50% of the time. DE 40-5, p. 22. PMG acquired possession of office space across the hall from its main location that was larger and quieter because it was a private office, which would have been ideal for reviewing regulations. DE 17, ¶113, DE 40-5, p. 69, DE 40-7, p. 26. The newly hired, Issac Evans, a GS-12/1, black male, was given the space (DE 17, ¶¶114-115) even though Kline had requested the space. DE 40-7, p. 25-26. Kline had seniority over Evans. DE 17, ¶120.

9. On February 2, 2006, Kline was working on the Unified Agenda under a strict deadline; she requested assistance in covering PMG telephones so that she could work solely on the Unified Agenda; she was told by Davis that there was no one available to assist with the telephones; Davis refused to have a new visual (graphics) detailee, Annette Gunter-Frye, provide assistance to Kline in covering PMG telephones; Gunter-Frey's computer was broken on February 2, 2006 so that she had no work to perform. DE 16, ¶130; DE 17, ¶131.

10. PMG white males and minority females *are* allowed to take lunch breaks outside the core hours without using their leave. DE 40-3, ¶213, DE 40-7, pp. 35-36. DE 16, ¶¶ 66-71

11. Kline was issued a Letter of Reprimand based on the alleged failure to properly report her leave. DE 40-3, ¶ 222, DE 17, ¶ 151. The formal reprimand was placed in Kline's personnel folder for at least two (2) years. DE 40-3, ¶ 237, DE 40-7, pp. 43-44, 64-65. Davis erroneously charged Kline with 4 hours of Annual Leave she did not use. DE 40-7, pp. 51, 54. Davis was on leave during August 10, 2005, to October 1, 2005. DE 17, 153. Davis obtained <u>only</u> Kline's "swipe" records during the time he was on leave and did not obtain the "swipe" records of any other employees for the time that he had been on leave. DE 17 ¶¶152,158.

     Davis did not complain about Kline's arrival and departure times prior to obtaining her swipe records.  DE 17, ¶159.  No white male or minority employees' in PMG had their "swipe" records scrutinized during the time Davis was on leave recovering from surgery; Davis only scrutinized Kline's "swipe" records.  DE 40-7, p. 33-34.

12. Davis amended Kline's leave records on February 2, 2006, and March 16, 2006, but did not correct all of the alterations that had been previously made.  DE 40-7, p. 33. Davis has ultimate authority for signing Kline's timecard authorizing the changes and it was his ultimate responsibility for making the amendments to Kline's leave.  DE 40-7, p. 33.  Davis did not finally amend Kline's leave until after she initiated an EEO action against him.

                          Respectfully submitted,

                          /s/

                          Valerie Kline, *Pro Se*
                          83 E Street
                          Lothian, MD  20711
                          (301) 509-2684

# CEEO COUNSELING INTAKE SHEET

1. DATE OF REQUEST: <mark>Nov 17, 2005</mark>
2. REQUEST TAKEN BY: LaShonn Woodland
3. TYPE OF REQUEST: (X) PHONE ( ) LETTER ( ) OTHER: _____
4. REQUESTER'S Name/Title/Pay Grade: Valerie Kline Mgmt Analyst GS-12
5. REQUESTER'S Work Location: Publications Mgmt. Group Rm 5H35
6. REQUESTER'S HOME PHONE: 301 574 4326
7. REQUESTER'S WORK PHONE: 606 1411
8. REQUESTER'S FAX NUMBER: 606 0909
9. REQUESTER'S Email Address: _____
10. REQUESTER'S ADDRESS: 83 E Street, Lothian, MD 20711

11. PRELIMINARY DATA:

    ISSUE: <mark>Telework (Denied) on Oct. 27, 2005</mark>
    Disparate Treatment
    She is using FMLA 2 days a pay period LWOP and she has a ill mom. 2 hours to get to work. A co-worker is allowed to Telework. Mgmt hired her to fill the co-worker's shoes because she is eligible to retire. When she interviewed she was told she would be able to telework once she learned the position.
    "2003" they had a detailee + allowed her to Telework (Hispanic)

EXHIBIT A
PAGE 13 OF 14

DATE OF INCIDENT: Oct. 27, 2005 denied to telework

BASIS: Race (Caucasian) Sex Retaliation

PG-13, Black female is allowed to Telework Jackie Carter 2 days a week because her husband turned ill. started 2002 - present

RMO: Claudio Beradi (Hispanic)

HAVE YOU FILED A GRIEVANCE OR MSPB APPEAL?  (✓) YES   ( ) NO
(IF YES, PLEASE PROVIDE DATE AND STATUS) 2004
July 10, 2005 trial period for 90 days when she filed her grievance. 1 day a Pay period was suppose to make a decision.

ANONYMITY:        ( ) YES       (✓) NO
REPRESENTATION:  ( ) YES   ( ) SEEKING   (✓) NO
If YES, PLEASE PROVIDE:
        NAME: _____
        TITLE: _____
        PHONE #: _____
        ADDRESS: _____

ADD'L INFO. _____

12. ASSIGNED COUNSELOR: _____
13. DATE COUNSELOR ASSIGNED: _____

EXHIBIT A
PAGE 14 OF 14

U.S. OFFICE OF PERSONNEL MANAGEMENT

## PERFORMANCE APPRAISAL FORM FOR OPM EMPLOYEES

| 1. Employee's Name (Last, First, MI) | 2. Social Security No. | 3. Purpose of Rating | 4. Appraisal Period | |
|---|---|---|---|---|
| Kline, Valerie, NMN | 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 | [X] Annual  [ ] WGI  [ ] Interim  [ ] Other | From 11/4/2004 | To 9/30/2005 |

| 5. Position Title, Series and Grade | 6. Position Description Number | 7. Name of Organization (Group/Office, Division, Branch) and Location |
|---|---|---|
| Management Analyst, GS-343 | | CCFAS, PMG |

### I  COMMUNICATION AND REVIEW OF PERFORMANCE PLAN

| 8. Supervisor's Signature and Date Signed (Month, Day, Year) | 9. Employee's Signature and Date (Month, Day, Year) |
|---|---|
| [signed] William M Davi  11-4-2004 | Employee refused to sign  11-4-2004 |

10. Signature of Higher Level Supervisor and Date Signed (Month, Day, Year)
[signed] 11/9/04

### II  PROGRESS REVIEW CERTIFICATION

| 11. Supervisor's Signature and Date Signed (Month, Day, Year) | 12. Employee's Signature and Date (Month, Day, Year) |
|---|---|
| [signed] | Employee refused to sign  5-12-2005 |

### III  RATING

13. Summary Rating (See instructions)

[ ] Outstanding   [ ] Exceeds Fully Successful   [X] Fully Successful   [ ] Minimally Successful   [ ] Unacceptable   [ ] Not Rated

14. Supervisory Comments

Valerie's performance in Federal Register work & in assisting our senior analyst is acceptable. She needs to be more self-starting & to direct more attention to her duties assisting the senior analyst & supporting this office's mission.

15. Supervisor's Signature
[signed] William M Davi

Date Signed (Month, Day, Year)

16. Higher Management Level Review (Comments)

17. Signature of Higher Level Supervisor

Date Signed (Month, Day, Year)

18. Employee's Comments

19. Employee's Signature

Date Signed (Month, Day, Year)

*For GS employees, a summary rating of Fully Successful is required to meet the acceptable level of competence for within-grade increases.

OPM Form 1459-B

EXHIBIT 1
PAGE 8 OF 14

U.S. Office of Personnel Management

## Performance Standards Form for OPM Employees

| 1. Employee's Name (Last, First, MI) | 2. Effective Date of Standards | 3. |
|---|---|---|
| Kline, Valerie, NMI | May 17, 2004 | Page 1 of 4 |
| 4. Position Title, Series, and Grade | 5. Name of Organization | |
| Management Analyst, GS-343-12 | CFAS, PMG | |

### I. PERFORMANCE STANDARDS

**6. Performance Element** — Is this a critical element? [X] YES [ ] NO

Performs a variety of special purpose studies/staff reviews in support of the Publications Management Group.

**6a. Check One:** [ ] Proposed First Draft  [X] Final

**STANDARDS** | **12. RATING**

7. [redacted] — Unacceptable

**8. Minimally Successful** — Minimally Successful

Assignments are performed in a routine manner with appropriate fact gathering. Conclusions/recommendations occasionally need review by supervisor. Work generally performed in a timely manner.

**9. Fully Successful** — [X] Fully Successful

Studies and reviews are performed in a fully professional manner with careful research, prper documentation and appropriate conclusions. Incumbent works closely with staff office personnel in presenting analysis/recommendations and completes assignments in a timely manner.

**10. Exceeds Fully Successful** — Exceeds Fully Successful

Incumbent takes initiative to perform staff studies/analysis of group procedures/operation. Makes recommendations, after careful analysis, to supervisor for improvement in areas where incumbent has no direct responsibility.

**11. Outstanding** — Outstanding

As stated above and recommendations support major changes which are implemented within the Group..

| 13. Supervisor's Signature and Date Signed (Month, Day, Year) | 14. Employee's Signature and Date Signed (Month, Day, Year) |
|---|---|
| William M. Davis 11-28-2005 | |

### II. SUPERVISORY COMMENTS

**15. Supervisory Comments On Performance**

| 16. Supervisor's Signature and Date Signed (Month, Day, Year) | 17. Employee's Signature and Date Signed (Month, Day, Year) |
|---|---|
| William M. Davis 11-4-2004 | Employee refused to sign 11-4-2004 |

2/88) Page 1 of 2                                OPM Form 1460-B(W) (Rev. 5-04)

EXHIBIT PAGE 9 OF 14

U.S. Office of Personnel Management

## Performance Standards Form for OPM Employees

| 1. Employee's Name (Last, First, MI) | 2. Effective Date of Standards | 3. |
|---|---|---|
| Kline, Valerie, NMI | May, 17, 2004 | Page 2 of 4 |

| 4. Position Title, Series, and Grade | 5. Name of Organization |
|---|---|
| Management Analyst, GS-343-12 | CFAS, PMG |

### I. PERFORMANCE STANDARDS

| 6. Performance Element | Is this a critical element? | X YES | NO | 6a. Check One |
|---|---|---|---|---|
| Assists the senior management analyst (PMG) in working with the Office of Communications and other OPM offices in managing, coordinating, reviewing, analyzing, and updating the OPM publications database, Visual Information System, Publications Inbox and FACA database. | | | | Proposed First Draft / X Final |

**STANDARDS** — **12. RATING**

7. [redacted] — Unacceptable

8. Minimally Successful — Minimally Successful

In most instances systems are kept up-to-date and complaints about incorrect information being provided to the customer are rarely received.

9. Fully Successful — ☒ Fully Successful

Systems are kept up-to-date. Correct information is provided to the customer.

10. Exceeds Fully Successful — Exceeds Fully Successful

In addition to the above, assist in annual survey (publications database) and works with OPM offices to make sure that publication information is correct and is proactive in maintaining.

11. Outstanding — Outstanding

In addition to the above, continuously searches through the OPM Web site to find links to OPM publications and then works with OPM offices to add, revise, or delete publication information, as appropriate.

| 13. Supervisor's Signature and Date Signed | 14. Employee's Signature and Date Signed |
|---|---|
| William M. Davis  11-28-2005 | |

### II. SUPERVISORY COMMENTS

**15. Supervisory Comments On Performance**

Publications in box not kept up it was necessary to remind Valerie on several occassions. Publications database was not kept up except for a brief period.

| 16. Supervisor's Signature and Date Signed | 17. Employee's Signature and Date Signed |
|---|---|
| William M. Davis  11-4-2004 | Employee refused to sign  11-4-2004  WD 11-5-04 |

OPM Form 1460-B(WP) (Rev.  11-5-04)

2/88) Page 1 of 2

EXHIBIT PAGE 10 OF 14

U.S. Office of Personnel Management

## Performance Standards Form for OPM Employees

| 1. Employee's Name (Last, First, MI) | 2. Effective Date of Standards | 3. |
|---|---|---|
| Kline, Valerie, NMI | May 17, 2004 | Page 3 of 4 |
| [Pos]ition Title, Series, and Grade | 5. Name of Organization | |
| [Ma]nagement Analyst, GS-343-12 | CFAS, PMG | |

### I. PERFORMANCE STANDARDS

| 6. Performance Element | Is this a critical element? | X YES | NO | 6a. Check One |
|---|---|---|---|---|
| Develops and maintains responsible working relationships with supervisors, managers, fellow employees, customers, peers and the general public. | | | | ☐ Proposed First Draft<br>X Final |

| STANDARDS | 12. RATING |
|---|---|
| [7. Unacceptable — redacted/blacked out] | ☐ Unacceptable |
| **8. Minimally Successful**<br>Generally maintains good working relationships with OPM offices, co-workers, supervisors, managers, and the public. | ☒ Minimally Successful |
| **9. Fully Successful**<br>Establishes and maintains good working relationships with OPM offices, co-workers, supervisors, managers, and the public. Contributes to positive working environment. Works cooperatively in group situations. Exhibits openness and objectivity to others' views. Treats co-workers with tact. Offers assistance and support to co-workers. Solicits peer feedback to improve service to the office and to improve own job performance. | ☐ Fully Successful |
| **10. Exceeds Fully Successful**<br>In addition to Fully Successful, has effective working relations within and outside office that enhance the office's ability to achieve its goal. | ☐ Exceeds Fully Successful |
| **11. Outstanding**<br>In addition to Exceeds Fully Successful, has highly effective working relations within and outside office that enhance the office's ability to achieve its goal. Often goes the extra mile in support of staff members or outside staff to help achieve organizational goals. Is highly effective in dealing with and helping to resolve conflict within office, and as needed outside of office to help accomplish necessary work. Deals very effectively with external stakeholders, in particular those who are very difficult to deal with. Is pro-active in sharing information with others inside and outside of office to enhance mutual understanding of work progress and goals. | ☐ Outstanding |

| 13. Supervisor's Signature and Date Signed (Month, Day, Year) | 14. Employee's Signature and Date Signed (Month, Day, Year) |
|---|---|
| [signed] William M. [Davis] 11-28-2005 | |

### II. SUPERVISORY COMMENTS

**15. Supervisory Comments On Performance**

*Working relationship within our office has deteriorated with co-workers & supervisors.*

| 16. Supervisor's Signature and Date Signed (Month, Day, Year) | 17. Employee's Signature and Date Signed (Month, Day, Year) |
|---|---|
| [signed] William M. [Davis] 11-4-2004 | Employee refused to sign  11-4-2004 |

OPM Form 1460-B(V) (Rev. 2/88) Page 1 of 2

EXHIBIT
PAGE 11 OF 13/14

U.S. Office of Personnel Management

## Performance Standards Form for OPM Employees

| 1. Employee's Name (Last, First, MI) <br> Kline, Valerie, NMI | 2. Effective Date of Standards <br> May 17, 2004 | 3. Page 4 of 4 |
|---|---|---|
| Position Title, Series, and Grade <br> Management Analyst, GS343-12 | 5. Name of Organization <br> CFAS, PMG | |

### I. PERFORMANCE STANDARDS

**6. Performance Element** — Is this a critical element? [X] YES [ ] NO

Assists in coordinating and preparing OPM's regulatory actions.

**6a. Check One:** [ ] Proposed First Draft  [X] Final

**STANDARDS** | **12. RATING**

7. [redacted] — [ ] Unacceptable

**8. Minimally Successful** — [ ] Minimally Successful
In most instances, reviews draft and final regulatory actions in a timely manner

**9. Fully Successful** — [ ] Fully Successful
In accordance with due dates reviews draft and final regulatory actions for compliance to GSA, OMB, and Federal Register requirements. Recommends appropriate actions to ensure completion by due dates.

**10. Exceeds Fully Successful** — [X] Exceeds Fully Successful
As stated above with no complaints. Additionally, regulatory actions are prepared and submitted prior to the required time.

**11. Outstanding** — [ ] Outstanding
As stated above with commendations received from OPM offices and other agencies.

13. Supervisor's Signature and Date Signed: *William M. Davis* 11-28-2005
14. Employee's Signature and Date Signed:

### II. SUPERVISORY COMMENTS

**15. Supervisory Comments On Performance**

Still learning — progress has been made but errors are still occurring

16. Supervisor's Signature and Date Signed: *William M. Davis* 11-4-2004
17. Employee's Signature and Date Signed: Employee refused to sign 11-4-2004

OPM Form 1460-B(P) (Rev. 2/88) Page 1 of 2

EXHIBIT A
PAGE 12 OF 14

Mr. Davis testified that with regard to one of the areas in which she was rated—"Systems kept up-to-date"—he would have to remind the plaintiff about applications in the in-box. He also stated that she failed to keep the publications database current. Attachment 1 (Davis Aff.) at p. 77. With regard to another element on which she was rated, "Develops and maintains responsible working relationships with supervisors, managers, fellow employees, customers, peers, and the general public," he rated her "Fully Successful" because he continually received calls from offices within the Publications Management Group asking that he keep the plaintiff out of their work areas. Id. This included a telephone call from the Office of the Director at OPM. Id. Further, some of plaintiff's co-workers from the mail room, the print shop, and the printing procurement section asked that she be kept out of their respective sections. Id.

Mr. Davis did not rate the plaintiff as "Outstanding" for the element of "Assists in coordinating and preparing OPM's regulatory actions" because of input that he received from OPM's expert on the Federal Register and because of errors that he personally found in her regulatory package preparation. Attachment 1 (Davis Aff.) at p. 78.

      b.    **Supervisor Sent Email Expressing Displeasure over a Visitor.**

Plaintiff alleges that Mr. Davis' action of sending an email to Arlene Taylor, Program Office Support Branch, Center for Information Services and Chief Information Officer, OPM was sexually and racially discriminatory. See Attachment 1 (Kline Aff.) at p. 38. As proof of her contention, plaintiff alleges that Mr. Coco receives personal visitors but Mr. Davis does not issue emails to others expressing his disapproval. Id. Mr. Davis explained that all of his employees are allowed to have personal and professional visitors with no restrictions. See Attachment 1 (Davis Aff.) at p. 79. Mr. Davis further

Wright & Miller, Federal Practice and Procedure, § 1217). "Beyond this, the rule serves to sharpen the issues to be litigated . . . ." Brown, 75 F.R.D. at 498 (dismissing pro se plaintiff's complaint because it failed to reasonably inform the adverse party of the cause of action). Because plaintiff's complaint fails to comply with the Rule 8, it should be dismissed.

Alternatively, the Court should enter an order pursuant to Fed. R. Civ. P. 12(e) requiring Plaintiff to amend the Complaint in order to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Fed. R. Civ. P. 12(e) provides that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."

Because plaintiff's complaint is so lengthy and incoherent, defendant has grappled with the extent of the claims against her agency. Defendant has been required to guess as to the claims plaintiff intends to raise. By her complaint, it is anticipated that plaintiff will attempt to litigate every aspect of her job that has displeased her during the entire tenure of her employment. This open-ended approach is particularly prejudicial to defendant as plaintiff is raising claims of retaliation and hostile work environment. Apart from whether the Court dismisses any portion of the complaint outright, it will be exceedingly difficult for defendant to proceed with discovery without a more definite statement of the specific alleged wrongful acts that serve as the bases of Plaintiff's claims for relief.