**U.S. DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| Valerie Kline | * | |
|         Kline | * | |
|         v. | * | Case No. 1:07-cv-451 (JR) |
| | * | |
| Linda M. Springer, Director | * | |
|         Defendant | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MOTION TO STRIKE "OIG REPORT" AND OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO FILE SURREPLY

On July 17, 2008, Defendant Springer filed a *Motion For Leave To File Surreply And Memorandum Of Points And Authorities In Support Thereof.* Although Plaintiff Kline informed Springer's counsel that she did not oppose the filing of a surreply, Kline now opposes the surreply because it is inappropriate.

Surreplies are only appropriate when a response raises <u>new</u> legal issues that were not raised in the Motion. See *United States ex rel. Pogue v. Diabetes Treatment Ctrs. Of America,* 238 F.Supp.2d 270, 276-77 (D.D.C. 2002). A surreply is also appropriate when <u>new factual matter</u> in support of the Motion has been introduced. See *Alexander v. FBI*, 186 F.R.D. 71, 74 (D.D.C. 1998).

In Kline's Response to Defendant's Opposition to Kline's Motion for Partial Summary Judgment (the "Response"), Kline submits that she <u>did not raise any *new* factual matters</u> from those raised in the Motion for Partial Summary Judgment (the "Motion"). Kline attached a Statement of Material Issues Not in Dispute (the "Statement") that was an extract of all the undisputed statements contained in Kline's

Motion. Because a surreply responding to the Statement is arguably appropriate since it was not filed with the Motion, Kline was not opposed to Springer filing a proper surreply. However, <u>Springer has attempted to introduce new evidence in its surreply unrelated to the Response</u>. This should not be allowed and Kline therefore opposes the surreply.

**FILING OF THE "OIG REPORT"**

Specifically, Springer has attached a portion of a redacted, unsworn, undated "OIG Report". <u>This report was furnished pursuant to a discovery request in a case pending before the EEOC on actions that occurred *after* the discriminatory events in this case.</u> Kline submits that the author of the report interviewed Kline in approximately May of 2006 and that the report was issued sometime in June of 2006 and pertains to a period of time in 2006. Because the Performance Appraisal period at issue in this case was from approximately October 1, 2004 through September 30, 2005, the OIG Report does not pertain to the relevant time period. It is therefore misleading and deceptive to apply it to the present case.

Furthermore, on May 28, 2008, this Court stayed discovery in this case. To allow Springer to introduce a document obtained from discovery on another case is inequitable because Kline is unable to depose the author of the report in order to clarify discrepancies contained in the report and/or to point out the errors in the report due to the stay. Kline is also unable to depose the author in the pending EEOC case because there is currently a stay on discovery in that case due to the Agency Counsel being out of the country from July 28 – August 2, 2008. Therefore, Kline will not be able to depose the author of the report in order to address the claims made in the report at the present time.

2

Because the OIG Report is irrelevant to this case, submitting the report is nothing more than an attempt to prejudice the Court against Kline. For example, the unredacted portion of the report states that Kline only performed four (4) hours of work a week but the report does not state what work it is referring to. Therefore, it could be referring to the Publications database work or the Federal Register Management System work, etc., and not necessarily to all of the work Kline performed.

Significantly, Kline claimed in the Third Amended Complaint that her duties have been materially diminished. In the action before the EEOC, Kline has claimed that her duties have now been diminished to the extent that <u>Kline presently performs no regulatory work at all</u>. As a result, Kline has a significant amount of time at work when she does not have any work to perform because her supervisor is not assigning her work. It is also noteworthy that Kline was not issued any counseling memoranda or reprimands based on the "third party allegations" against Kline, allegations that the OIG told Kline were "anonymous", because there was no "credible" evidence contained in the allegations.

No less important, a performance rating is supposed to be based on the elements contained in the Performance Standards. Kline's performance rating does not state that Kline failed to perform her work but only that Kline failed to meet deadlines, deadlines that Kline submits she was never assigned, and which the evidence supports. For this reason, the claim in the OIG Report is irrelevant.

The unredacted portion of the report also states that Kline "visited numerous websites for great lengths of time" but does not specify what websites Kline visited or the amount of time she visited them. <u>The redacted report does not state that Kline spends</u>

3

time "surfing the internet" as Springer claims. Much of Kline's work is internet based wherein Kline admittedly spends a lot of time on the internet. The Publications database is internet based, OPM's Organizational Directory is internet based, the Publications Inbox is internet based, the ROCIS database used in preparing the Agency's unified regulatory agenda and submitting regulations to OMB is internet based and Kline's Performance Standards even state that she is to search for publications on OPM's website, which is internet based. See Attachment 1. When Kline responds to calls from outside the Agency about Agency publications, Kline uses the internet to search for the publications in the Publications database and on OPM's website. In this respect, it is possible that Kline visited a number of websites for great lengths of time while performing her work and that the unredacted portions of the report are misleading. Accordingly, the Court should deny the surreply or at the very least strike Attachment 2 to the Surreply, or place it under seal. Note that Kline was opposed to the filing of the OIG Report and not to it being placed under seal should the Court allow the report.

### **PERFORMANCE APPRAISAL RETALIATION CLAIM**

With regard to the surreply's claim that Kline did not release her anonymity in the EEO action until November 30, 2005, so that Davis could not *know* that Kline had filed an EEO action for purposes of retaliation, this argument fails. Kline's Union representative had initiated a grievance against Davis because Davis failed to allow Kline to telework. During this grievance process, Kline's Union representative alleged that there was "disparate treatment going on" since Kline's "office allows other [minority] employees to telework several days a week". See Attachment 2. Allowing *only* minority

4

<u>employees to telework is "a unlawful employment practice based on disparate impact" on the basis of race</u> and is prohibited under 42 U.S.C. § 2000e-2(k)(1)(a).

Since Kline's participation in a grievance proceeding that was based on "disparate" treatment or impact that is prohibited under 42 U.S.C. § 2000e, a retaliation claim under 42 U.S.C. § 20003-3(a) is warranted since "it is an unlawful employment practice for an employer to discriminate against any of his employees … <u>because he has opposed any practice made an unlawful employment practice by this subchapter</u>, or <u>because he has made a charge</u>, testified, assisted, <u>or participated in any manner in</u> an investigation, <u>proceeding</u>, or hearing <u>under this subchapter</u>."

The Union representative also requested that Kline be allowed to telework after her mother became ill in August 2005 because Carter was allowed to telework when her husband took ill, which Davis ultimately denied on October 27, 2005.  When Davis denied the request, the Union representative advised Kline to file an EEO action based on discrimination rather than pursue another grievance.  Thus, Kline submits that Davis was aware of Kline's challenges to her office's unlawful employment e practices that caused a disparate impact based on race and retaliated accordingly.

For the foregoing reasons, the Court should deny the surreply and should find for Kline by granting partial summary judgment.

                                        Respectfully submitted,

                                        /S/

                                        Valerie Kline, pro se
                                        83 E Street
                                        Lothian, MD  20711
                                        (301) 509-2684

U.S. Office of Personnel Management
## Performance Standards Form for OPM Employees

| 1. Employee's Name (Last, First, MI) | 2. Effective Date of Standards | 3. |
|---|---|---|
| Kline, Valerie, NMI | May, 17, 2004 | Page 2 of 4 |
| 4. Position Title, Series, and Grade | 5. Name of Organization | |
| Management Analyst, GS-343-12 | CFAS, PMG | |

### I. PERFORMANCE STANDARDS

| 6. Performance Element | Is this a critical element? | X YES | ☐ NO | 6a. Check One |
|---|---|---|---|---|
| | | | | ☐ Proposed First Draft |
| | | | | X Final |

Assists the senior management analyst (PMG) in working with the Office of Communications and other OPM offices in managing, coordinating, reviewing, analyzing, and updating the OPM publications database, Visual Information System, Publications Inbox and FACA database.

**STANDARDS** — 12. RATING

7. Unacceptable — ☐ Unacceptable

8. Minimally Successful — ☐ Minimally Successful
In most instances systems are kept up-to-date and complaints about incorrect information being provided to the customer are rarely received.

9. Fully Successful — ☒ Fully Successful
Systems are kept up-to-date. Correct information is provided to the customer.

10. Exceeds Fully Successful — ☐ Exceeds Fully Successful
In addition to the above, assist in annual survey (publications database) and works with OPM offices to make [th]at publication information is correct and is proactive in maintaining.

11. Outstanding — ☐ Outstanding
In addition to the above, continuously searches through the OPM Web site to find links to OPM publications and then works with OPM offices to add, revise, or delete publication information, as appropriate.

| 13. Supervisor's Signature and Date Signed (Month, Day, Year) | 14. Employee's Signature and Date Signed (Month, Day, Year) |
|---|---|
| William M. Davis  11-28-2005 | Employee refused to sign  12-7-2005 |

### II. SUPERVISORY COMMENTS

15. Supervisory Comments On Performance

Publications in box not kept up it was necessary to remind Valerie on several occasions. Publications database was not kept up except for a brief period.

| 16. Supervisor's Signature and Date Signed (Month, Day, Year) | 17. Employee's Signature and Date Signed (Month, Day, Year) |
|---|---|
| William M. Davis  11-4-2004 | Employee refused to sign  11-4-2004 |

EXHIBIT G  11-5-04
PAGE 51 OF 85

OPM Form 1460-B(WD) (Rev. 11-5-04)

2/88) Page 1 of 2

ATTACHMENT 2

## Kline, Valerie

**From:** Benton, Sherman W
**Sent:** Monday, June 27, 2005 8:02 PM
**To:** Bero, Christine D
**Cc:** Kline, Valerie; 'Michael Snider'; Benton, Sherman W; Miller, Caprice D
**Subject:** Valerie Kline Telework Agreement

Chris,

I am in receipt of a decision memo dated June 23, 2005 ( we received 06/24/05) From Ronald Flom Deputy Associate Director, Center for Contracting, Facilities, & Administrative Services. Discontinuing the 90 day agreement to allow Ms. Valerie Kline to participate in the Agency's Telework Program. AFGE Local 32 disagrees with this decision and will continue this grievance through the negotiated process at the second step.

During this ninety day period, we were never informed of this lack of coverage in the office concerns nor were we ever notified of a problem with the day to day coordination of work and assistance with other staff, and availability to customers. AFGE has concerns that this office allows other employees to telework several days a week and these problems don't arise, and Ms. Kline telework's one day a pay period and it's a problem. We agreed that Ms. Kline could only telework on days the other employees were scheduled to be in the office. Am I to believe that these problems only arise when Ms. Kline is teleworking and out of the office? I don't think so. I can clearly see we have a disparate treatment situation going on here. AFGE Local 32 request an extension of ten work days to file second step grievance. (July 12, 2005)

Sherman Benton
Chief Steward,
AFGE Local 32

7/21/2008

Page 1 of 1

ATTACHMENT 3

Ex. 22

## Kline, Valerie

**From:** Benton, Sherman W
**Sent:** Thursday, October 27, 2005 7:47 PM
**To:** Kline, Valerie
**Cc:** Brathwaite, Carlos G; Lowery, Patrick A
**Subject:** Valerie Kline

Valerie,

Attached is Bill Davis's decision to the meeting I had with him yesterday.


Sherman Benton
Chief Steward,
AFGE Local 32

-----Original Message-----
**From:** Davis, William M
**Sent:** Thursday, October 27, 2005 1:58 PM
**To:** Benton, Sherman W
**Subject:** Valerie Kline

Sherman:

I have put great thought into your request. Telework is not appropriate in this situation.

Bill Davis

12/4/2007