UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VALERIE KLINE,                          :
                                        :
        Plaintiff,                      :
                                        :
    v.                                  :  Civil Action No. 07-0451 (JR)
                                        :
LINDA M. SPRINGER, Director,            :
U.S. Office of Personnel                :
Management,                             :
                                        :
        Defendant.                      :

### MEMORANDUM

*Pro se* plaintiff Valerie Kline, a white female, sues the Director of the United States Office of Personnel Management, alleging race and sex discrimination and retaliation in her employment as an analyst in the Publications Management Group at OPM. On March 13, 2009, I granted the government's motion for summary judgment.[1] This memorandum explains that ruling, which was entered, to put it most succinctly, because most of the plaintiff's complaints are not materially adverse employment actions, and because, as to the rest, no reasonable juror could find that any of them were discriminatory or retaliatory.

### Analysis

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

---

[1]On March 17, 2009, the plaintiff moved for reconsideration. That motion has been reviewed and will be denied.

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), but the party opposing a motion for summary judgment must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal citations omitted).  "[A] mere unsubstantiated allegation . . . creates no genuine issue of fact and will not withstand summary judgment." *Ginger v. District of Columbia,* 527 F.3d 1340 (D.C. Cir. 2008) (*quoting, Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993).

**A. Legal Standards**

"Under Title VII, the ADEA, and the Rehabilitation Act, the two essential elements of a discrimination claim are that (I) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne,* 550 F.3d 1191, 1196 (D.C. 2008).  "[T]ypical adverse actions in employment discrimination cases" are being "fired or denied a job or promotion . . . [or] suffer[ing a] reduction[] in salary or benefits," *Baloch,* 550 F.3d at 1199, although other acts may

qualify, such as "withdrawing an employee's supervisory duties," *Stewart v. Ashcroft,* 352 F.3d 422, 426 (D.C. Cir. 2003), or "reassignment with significantly different responsibilities," *Forkkio v. Powell,* 306 F.3d 1127, 1131 (D.C. Cir. 2002).

"To prove retaliation, the plaintiff generally must establish that he or she suffered (I) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim." *Baloch,* 550 F.3d at 1198. "Adverse actions in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim . . . [and] are not limited to discriminatory actions that affect the terms and conditions of employment and may extend to harms that are not workplace-related or employment-related so long as a reasonable employee would have found the challenged action materially adverse," *Id.* at 1198 fn. 4 (internal citation omitted), "which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 66 (2006). Close temporal proximity to a plaintiff's EEOC activity can sometimes support an inference of retaliation, but only when "the employer knew that the plaintiff engaged in protected activity." *Moses v. Howard University Hosp.*, 474 F.Supp.2d 117 (D.D.C. 2007) (*citing Holcomb v. Powell*, 433 F.3d 889 (D.C. Cir. 2006)).

Because "there is nothing inherently suspicious about an employer's decision to promote a minority applicant instead of a white applicant . . . or to fire a white employee . . . a majority-group plaintiff alleging Title VII discrimination . . . must show additional background circumstances that support the suspicion that the defendant is that unusual employer who discriminates against the majority."  *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 851 (D.C. Cir. 2006) (internal citations and quotations omitted).  "Two general categories of evidence constitute background circumstances . . . evidence indicating [that] the particular employer has some reason or inclination to discriminate invidiously against whites . . . [and] evidence indicating that there is something fishy about the facts of the case at hand that raises an inference of discrimination."  *Mastro*, 447 F.3d at 851 (internal citation omitted).  A panel of the Court of Appeals found "evidence [such] as political pressure to promote a particular minority because of his race, pressure to promote minorities in general, and proposed affirmative action plans" sufficient to satisfy the first category.  *Id.*  (internal citation omitted).  "[E]vidence that a plaintiff was given little or no consideration for a promotion and that the supervisor never fully reviewed the qualifications of the minority promotee . . . [or] that a minority applicant was promoted over four objectively better-qualified white applicants in an unprecedented fashion"

has been found sufficient to satisfy the second.  *Id.* at 851-852 (internal citations omitted).

Because the defendant in this case has "asserted a legitimate, non-discriminatory reason for" all of the allegedly adverse acts, the required analysis proceeds directly to the question of whether the contested acts were material, and whether the plaintiff has "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated [or retaliated] against the" plaintiff.  *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

**B. The Plaintiff's Evidence Regarding "Background Circumstances"**

The plaintiff first attempts to prove background circumstances of reverse discrimination by asserting that, at times relevant to the complaint, only three percent of employees at PMG (one of 32) were white women, as compared to comprising 17 percent of the population in the Washington Capital area, and 27.5 percent of the federal workforce.  Compl. ¶ 2.  She cites nothing but her complaint to support these figures, Pl. SMF at 3, but even if the numbers were properly supported with record evidence they would not be enough.  Without additional context, such as correctly defined pools, no reasonable juror could infer

a background of reverse discrimination at PMG from the bare numbers.[2]

## C. The Discrimination Claims

The plaintiff has filed a number of EEO complaints. This case involves three of them. The first was filed on December 28, 2005, and complained of an October 19, 2005, "fully successful" performance evaluation, the denial of a request to "telework" (work remotely from home), and a December 8, 2005

---

[2] *See, McReynolds v. Sodexho Marriott Services, Inc.*, 349 F.Supp.2d 1 (D.D.C. 2004) (discussing the use of statistics in disparate treatment cases and citing to various D.C. Circuit cases); *Whitener v. England,* 2006 WL 3755220 (D.D.C. 2006) ("It is well-settled that merely noting the composition of a workforce, without more, cannot sustain a discrimination action.") (*citing, Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 650 (1989) and *Koger v. Reno*, 98 F.3d 631, 639 (D.C. Cir. 1996)); *Horvath v. Thompson*, 329 F.Supp.2d 1, 11 (D.D.C. 2004) ("[E]vidence that merely indicates an underrepresentation . . . in the workforce does not itself establish pretext" and "absent a showing of their significance, [such] numbers are simply irrelevant."); *cf., Thomas v. Chao*, 65 Fed.Appx. 321 at *3 (D.C. Cir. 2003) ("The District Court was correct to exclude from evidence the list of employees identified by race and sex, and witness' observations about the race and sex of employees, in the absence of an expert who could testify that the alleged underrepresentation was statistically significant."). In any event, PMG's hiring practices are not at issue in this case. *See,* 45C Am. Jur. 2d Job Discrimination § 2410 ("statistics must pertain to the decision being challenged, and must be sufficient to raise the inference of disparate treatment discrimination with regard to the plaintiff's situation.") (*citing, Davis v. Califano*, 613 F.2d 957 (D.C. Cir. 1979). Even if the numbers were relevant, "[i]n individual disparate treatment cases . . . statistical evidence is less significant [than in pattern of practice cases] because the ultimate issue is whether the particular plaintiff was the victim of an illegitimately motivated employment decision." *Krodel v. Young*, 748 F.2d 701, 710 (D.C. Cir. 1984).

email sent to the plaintiff (and some of her colleagues) by her supervisor, Davis.  The second was filed on February 21, 2006, and complained of the denial of a private office space, the removal of the plaintiff's "administrative rights" to a software program, and coverage of the telephones.  The third was filed on March 21, 2006, and complained of a February 2, 2006 letter of reprimand about over-reported time, and of disputes over her lunch hour and her sick leave.

      The plaintiff presents no direct proof of discrimination.  As support for her discrimination claim, she asserts disparate treatment.  For her retaliation claim she asserts temporal proximity and permissible inference.

**1. Denial of telework (race discrimination)[3]**

      After repeated denials of her requests, Pl. Aff. ¶¶ 6-34; Opp. ex. 5, the plaintiff was given a trial period of telework in the spring of 2005.  The trial was terminated when it was determined that she needed to be onsite to better complete her day-to-day assignments and, among other things, to be available to customers and because of a lack of coverage in her absence.  Opp. ex. 20.  In October 2005 another request was denied, this one made by her union representative after the plaintiff's mother became ill.  Opp. at 2-3.  She argues that an

---

[3]Unless indicated, all of the other claims are for both race and sex discrimination, and for retaliation.

inference of discrimination can be drawn from the fact that Carter, a black female whose husband suffered several strokes, was allowed to telework, as was another minority woman.  Opp. 26-30.

Carter, however, was not similarly situated.  She was an employment grade higher than the plaintiff and had different responsibilities, including review of the plaintiff's work.  MSJ at 27-28; Reply at 5-6, 9-10.  Plaintiff's other comparator was not a PMG employee, but a temporary detailee who had been allowed to telework before her assignment to PMG.  Reply at 6, 9-10.  The plaintiff cannot "demonstrate that all of the relevant aspects of her employment situation were nearly identical to" those employees.  *Holbrook v. Reno,* 196 F.3d 255, 261 (D.C. Cir. 1999) (internal quotation omitted).  Nor does she respond to the government's showing that other minority women were refused telework for the same reasons as in the plaintiff's case, Reply at 10, or offer evidence of pretext on this point.

**2. Performance evaluation**

Plaintiff complains that a "fully successful" annual performance appraisal was both discriminatory and retaliatory.  "[P]erformance reviews typically constitute adverse actions only when attached to financial harms."  *Baloch*, 550 F.3d at 1199.  Here, there is evidence that PMG's appraisals are related to monetary rewards.  *See, Weber v. Battista*, 494 F.3d 179 (D.C.


Cir. 2007). The defendant's affiant testified that "to be considered for a Sustained Superior Performance award, the employee must have been rated at 'Exceeds Fully Successful' or 'Outstanding' on all important job elements," Smith Aff. ¶ 5, and that "no employee may receive a career ladder promotion who has a rating below 'Fully Successful' on a critical element," *id.* ¶ 7. There is also some anecdotal evidence of such a relation. *See*, SurReply at 9; Reply at 11.

But the defendant argues that the plaintiff deserved her evaluation, and points to an affidavit by Davis -- who gave her the rating -- detailing his reasoning; an affidavit by Benedi -- the director of the group -- concurring; and significant undisputed evidence in the record supportive of the proposition that the plaintiff had been warned about her performance long before the issuance of the evaluation, and that the rating and its criticisms, which were not insulting or disparaging, were not inspired by retaliatory or discriminatory animus. *See generally*, MSJ; Reply at 10-13; Dkt. #23 attchs. 1-2. No reasonable juror could find these reasons pretextual.

The plaintiff's assertions about her own performance are self-serving and unsupported, and they will not give rise to an inference of impermissible motive. Plaintiff seeks to compare herself with Carter, and with a white man named Coco, both of whom received "Outstanding" evaluations. Opp. ex. 35. As

discussed above, however, Carter is not a similarly situated comparator, and neither is Coco, whom the plaintiff assisted, and who was a grade higher than the plaintiff and had different responsibilities, including procurement and purchasing work. Reply at 6.  Moreover, whether Carter and Coco are valid comparators or not, the plaintiff failed to show that her performance was similar to theirs, merely asserting, mostly without support, that Carter made a few mistakes too over the course of a year, and noting that Coco once failed to respond to an email she sent.  Pl. Aff. ¶¶ 81, 131, 132.

Nor is there evidence from which a juror could find that the plaintiff's "fully successful" performance review was retaliatory.  The plaintiff has neither adduced evidence nor pointed to anything in the record indicating that Davis knew about her EEO activity when he gave her the appraisal.  Indeed, there is significant evidence in the record that the plaintiff knew about her performance appraisal long before she commenced her EEO activity.  *See*, Opp. attch. 1; Opp. ex. 37.  The plaintiff was at some pains to make sure that the EEOC correctly recorded the date of discrimination regarding her performance appraisal as October 19, 2005 instead of November 28, 2005.  Dkt. #23 attch. 1 pgs. 8-9.  Then, in her answer to interrogatories by the EEOC, the plaintiff placed the issuance of her performance ratings at November 7, 2005.  Dkt. #23 attch. 1 pg. 41.  A copy

of the appraisal was provided to the plaintiff on November 22, 2005.  Opp. ex. 37.  The latest date on which Davis signed the document was November 28, 2005.  Opp ex. 28.  And the plaintiff's EEO action was not initiated until her November 30, 2005 interview.[4]  Opp. at 6; Dkt. #23 attch. 2 pg. 73-74.  Moreover, the plaintiff's appraisal for the previous year was "fully successful."  Dkt. #23 attch. 1 pg. 10.  So was her mid-year review.  Dkt. # 23 attch. 2 pg. 92.

### 3. Offensive email

The plaintiff complains about an email that Davis sent on or about December 12, 2005.  The email concerned a visit paid to the plaintiff by a co-worker during which some changes were made to the Federal Register Management System.[5]  Opp. ex. 37.  This was not an material adverse act under any standard.  The email was work-related, contained no disparaging or antagonistic

---

[4] The plaintiff produced a document stating that she had called an EEOC counselor on November 17, 2005 to complain about the telework denial.  Dkt. #56.  But given the EEOC's emphasis on anonymity, see, 29 C.F.R. § 1614; EEOC Management Directive-110, and the fact that the plaintiff's EEO interview was November 30, 2005, the hypothetical possibility Davis could have known about the call (unaccompanied by even a theory of how he might have known) is insufficient for a reasonable juror to infer that he did.

[5] The email stated: "Arlene: Good afternoon!!!  I happened to notice that you were in our office twice today for a good amount of time. I then discovered that there are changes being made to [Federal Register Management System]. What changes?  The FRMS is the responsibility of PMG and as such no changes, other then technical should be made without explicit authorization from Claudio or me. Please let me know what the current issue is and how it will affect this office."

language, *see Baloch,* 550 F.3d at 1198, 1200, and the plaintiff has done nothing to undermine the accuracy of its factual assertions.

**4. Removal of administrative rights**

Around December 22, 2005, the plaintiff's "administrative rights" to the FRMS system were removed. Opp. at 6. "Administrative rights" apparently give an individual the ability to allow members of other offices access to the FRMS system, and to make major changes to the system. Dkt. 23 attch. 1 pg. 11, 25; Reply at 15-16. The plaintiff points to no evidence that such administrative rights were part of her job, offers no explanation about how she actually used them, and does not explain how, if at all, the rescission affected her. Neither the generalized phrases in her job description that she cites (that her position involves "state of the art publishing systems"), nor her *ipse dixit* assertions that the rights were important to her, make out a genuine issue of material fact. Opp. at 35-36; *Compare*, *Czekalski v. Peters,* 475 F.3d 360 (D.C. Cir. 2007) (adverse act where employee overseeing 260 federal employees, 700 contractors, 50 programs, and a $400 million budget was reduced to overseeing fewer than 10 employees and one program with a minimal budget.); *Burlington*, 548 U.S. at 68 ("We speak of material adversity because we believe it is important to separate significant from trivial harms.") (quotations omitted).

**5. Staff help**

The plaintiff alleges that she was trying to meet a deadline and was refused help answering the phones. SurReply. at 17-18. The allegation is taken as true, but this was not a material adverse action. At most it was a petty slight. "Title VII . . . does not set forth a general civility code for the American workplace." *Burlington*, 548 U.S. at 68 (internal quotation omitted).

**6. Office space**

On December 21, 2005 plaintiff's request for an office was denied. The office had been assigned to a minority male graphics designer for over a year. Opp. at 37; Pl. Aff. at ¶¶ 200-201. The plaintiff has neither produced nor cited to evidence that she was in any way entitled to this space or that the reason given for the denial of the request was pretextual. It is undisputed that the space was "on loan" from another department and already assigned. Opp. ex. 100; MSJ. attch 1. pgs. 24-25. Indeed, the plaintiff concedes that at least two other employees had priority over her claim to the space, and they did not receive it either. Pl. SurReply at 11-12. Similar requests by the plaintiff had been rejected long before she engaged in any EEO activity. Pl. aff. ¶¶ 199, 200.

**7. Lunch break**

Around January 31, 2005, the plaintiff went to an appointment in the morning.  Upon her return, she requested of Davis that the time be considered her lunch break.  Pl. aff. ¶ 213.  After checking with human resources, and being told that the plaintiff could not do this, Davis advised the plaintiff that she would have to take leave or make up the time she missed at the end of the day.  Pl. aff. ¶¶ 213, 214.  This single incident does not have the "requisite level of regularity or severity to constitute material adversity for purposes of . . . retaliation" or any other Title VII claim.  *Balloch*, 550 F.3d at 1199.

**8. Audit of time records and reprimand for over-reported time**

The plaintiff complains that, around January 2006, after he noticed the plaintiff come in late one day, Davis reviewed her time records for the dates that on which Davis himself had been on sick leave, recovering from surgery.  Opp. ex. 104; SurReply. at 15-16.  The review itself, of course, was not an adverse action.  Nor was a letter of reprimand that Davis sent about five hours and five minutes of over-reported time.  Opp. ex. 109.  The letter did not affect the terms of the plaintiff's employment, it "contained no abusive language," and its content was based on records provided by human resources.  *See, Baloch v. Kempthorne,* 550 F.3d at 1199 (letters of reprimand not materially adverse acts in context of retaliation when they

"contained no abusive language, but rather job-related constructive criticism, which can prompt an employee to improve her performance.") (internal quotation omitted); Opp. exs. 104, 109.  The reasons for the review and the issuance of the reprimand are facially valid.  Opp. exs. 103, 104, 109.

**9. Leave tampering (retaliation)**

The plaintiff theorizes that Davis, or someone at his direction, tampered with her sick leave records sometime around November 25, 2005, with the result that she was later denied sick leave on January 10 and 21, 2006.  Opp. at 23-24; SurReply at 17; PL. SMF ¶ 43.  Davis denies any tempering.  MSJ ex. 3 pg. 26. The plaintiff has provided no evidence that Davis was responsible for any changes or for delay in correcting any errors.  *See generally,* Pl. SOMF; Opp.; SurReply.  Nor were the changes materially adverse, as the only consequence was that the plaintiff had to use annual leave instead of sick leave on, at most, two occasions.[6]

**B. Hostile work environment**

To prevail on a discrimination and/or retaliation hostile work environment claim a plaintiff must show that her employer subjected her to "discriminatory intimidation, ridicule,

---

[6]At 3:50 P.M. on January 9th, the plaintiff called to tell Davis that she had a doctor's appointment the next day.  Opp. ex. 124. She did not provide him with a full accounting of her time records before January 11th.  *Id.*  January 21, 2006 was a Saturday.

and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baloch,* 550 F.3d at 1201; *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006).  "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance."  *Id*. "[T]o be actionable . . . a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

None "of the comments or actions directed at [the plaintiff] expressly focused on [her] race." *Baloch,* 550 F.3d at 1201.  She has provided no evidence from which a reasonable juror could reach an inference of any reverse racial discrimination.

Similarly, few of her contentions have any direct connection to her sex.  Those that do are based on unsubstantiated allegations and assumptions which she makes no effort to connect with any alleged harassment.  For example, the plaintiff speculates that several years before she filed suit, Davis was "flirty" with her, felt spurned, and retaliated against her when she ignored him.  Pl. aff. ¶ 138.  She provides no

examples of this "flirty" behavior, nothing to substantiate the allegation, and no connection between the supposed rejection and anything that happened after.  She asserts that Davis looked at her breasts when giving her the performance evaluation, and that she inferred from this that a *quid pro quo* was being offered, but she fails to provide the slightest explanation for why she made this assumption, let alone any direct or other circumstantial evidence to corroborate its validity.

   Her other hostile environment claims and arguments are unsupported by record evidence, are completely unconnected to impermissible motive, are not objectively offensive, or are simply employee grievances completely untied to discriminatory animus.  "[T]he totality of circumstances presented in this record does not rise to the level necessary to support a hostile work environment claim."  *Baloch,* 550 F.3d at 1201.


                                        JAMES ROBERTSON
                                   United States District Judge