## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VALERIE KLINE,** | |
| *Plaintiff,* | |
| **v.** | **Case No. 1:07-cv-451-RCL** |
| **KIRAN AHUJA,** *in her official capacity as Director of the Office of Personnel Management,* | |
| *Defendant.* | |

| | |
|---|---|
| **VALERIE KLINE,** | |
| *Plaintiff,* | |
| **v.** | **Case No. 1:10-cv-1802-RCL** |
| **KIRAN AHUJA,** *in her official capacity as Director of the Office of Personnel Management,* | |
| *Defendant.* | |

| | |
|---|---|
| **VALERIE KLINE,** | |
| *Plaintiff,* | |
| **v.** | **Case No. 1:14-cv-1498-RCL** |
| **KIRAN AHUJA,** *in her official capacity as Director of the Office of Personnel Management, et al.,* | |
| *Defendants.* | |

## MEMORANDUM OPINION

On March 8, 2007, plaintiff Valerie Kline filed a lawsuit against her employers at the U.S. Office of Personnel Management ("OPM"), alleging race and sex discrimination and retaliation during her employment as an analyst. On March 13, 2009, the court granted defendant's motion for summary judgment and the D.C. Circuit affirmed. *Kline v. Springer*, 602 F. Supp. 2d 234 (D.D.C. 2009), *aff'd sub nom.*, *Kline v. Berry*, 404 F. App'x 505 (D.C. Cir. 2010) ("*Kline I*"). But that was only the first of four actions filed by plaintiff against her employers at OPM (collectively, "OPM"). In all four actions, the Court entered judgment for OPM. *Kline v. Archuleta*, 102 F. Supp. 3d 24 (D.D.C. 2015), *amended in part*, No. 10-cv-1802 (RCL), 2015 WL 4064941 (D.D.C. July 1, 2015), *aff'd sub nom. Kline v. Cobert*, No. 15-5226, 2016 WL 1272942 (D.C. Cir. Feb. 10, 2016) ("*Kline II*"); *Kline v. Archuleta*, 99 F. Supp. 3d 1 (D.D.C.), *amended in part*, 309 F.R.D. 91 (D.D.C. 2015), *aff'd sub nom. Kline v. Cobert*, No. 15-5248, 2016 WL 1272945 (D.C. Cir. Feb. 10, 2016) ("*Kline III*"); *Kline v. Weichert*, No. 1:16-cv-262-RCL, 2020 WL 2615528 (D.D.C. May 23, 2020), *aff'd sub nom. Kline v. Ahuja*, No. 20-5220, slip op. (D.C. Cir. Nov. 23, 2021) ("*Kline IV*").

On April 14, 2021, plaintiff moved to vacate and reopen the Court's final judgments in favor of OPM in *Kline I, II,* and *III*. She argues that reopening is warranted based on new evidence discovered during *Kline IV* and because the Court's prior judgments were the result of fraud on the Court. OPM opposes. Plaintiff's motion, OPM's opposition, and plaintiff's reply in support of her motion are identical in all three cases.[1] Upon consideration of the parties' filings, including plaintiff's motion to reopen ("Pl.'s Mot."), OPM's opposition ("Def.'s Opp'n"), plaintiff's reply

---

[1] *See Kline I*, No. 07-cv-451, ECF Nos. 87, 98, 101; *Kline II*, No. 10-cv-1802, ECF Nos. 162, 172, 175; *Kline III*, No. 14-cv-1498, ECF Nos. 42, 52, 55.

in support of her motion ("Pl.'s Reply"), applicable law, and the entire record in these cases, the Court will **DENY** Ms. Kline's motion for relief from judgement in *Kline I*, *II*, and *III*.

## I.    BACKGROUND

### A. Factual Background

Plaintiff's four lawsuits (*Kline I–IV*) arise from a common factual background. In each, she sued her employers at OPM, so the Court will refer to defendants collectively as OPM.[2] The relevant facts are as follows.

In October 2002, OPM hired plaintiff as a GS-12 Management Analyst to perform regulatory duties in its Publications Management Group ("PMG"). *Kline II*, 102 F. Supp. 3d. at 26. Plaintiff's position description ("PD") described that, "under the guidance of the Regulatory Team Leader," she would be responsible for "executing the regulatory processing components of the Regulatory Issuance System," "analyz[ing] and evaluat[ing] OPM's regulatory processes," "and implement[ing] improvements to the Regulatory Issuance System." Kline 2002 Original PD at 2, *Kline III*, No. 14-cv-1498 (D.D.C.), ECF No. 23-3 Ex. 2. In plaintiff's words, she "was hired to perform regulatory work on a full-time basis for OPM's [PMG] and act as the 'backup' to [Regulatory Team Leader] Jacqueline Carter." *Kline II*, 102 F. Supp. 3d. at 26.

In May 2003, however, plaintiff's PD was changed to include nonregulatory duties because there were not enough regulatory duties to support both her and Carter. *Id.* (citing Kline 2003 PD at 2, *Kline II*, No. 10-cv-1802 (D.D.C.) ECF No. 134-1 Ex. 4). Plaintiff's new PD "consist[ed] primarily of publications duties," and "clearly reassigned her into a new, non-regulatory position." *Kline III*, 99 F. Supp. 3d at 4. The new PD listed four major duties, only one of which involved regulatory work: plaintiff was to "[a]ssist[ ] the Regulatory Team by performing activities related

---

[2] The Court recognizes that, in *Kline III*, not all of the parties are necessarily directly associated with OPM.

to Regulatory Issuance by providing editorial review and interpretation of policy." *Kline II*, 102 F. Supp. 3d. at 26–27 (citing Kline 2003 PD at 2).

Notwithstanding that plaintiff agreed to her new position description, plaintiff's claims in *Kline I–IV* all originate in part from her "dissatisfaction with her job requirements following her reassignment." *Kline III*, 99 F. Supp. 3d at 1–2, 4. In particular, plaintiff's lawsuits stem from her "obstinate—and unsupported—insistence that her new position was still categorized as a regulatory position or gave her primary responsibility of regulatory duties." *Kline II*, 102 F. Supp. 3d. at 32.

### 1. *Kline I*

In *Kline I*, plaintiff sued OPM for discrimination and hostile work environment based on three primary theories. *See Kline I*, 602 F. Supp. 2d at 238–39, 242–43. The court rejected each theory and granted summary judgment to OPM. First, plaintiff argued that OPM had a demonstrated track record of reverse race discrimination because white women employees were allegedly underrepresented at OPM. *Id.* at 238–39. However, the court found that the statistics introduced by plaintiff, "even if . . . properly supported with record evidence," were insufficient to sustain her discrimination action. *Id.* at 239 & n.2.

Next, plaintiff asserted that OPM created a hostile work environment and discriminated against her when, "several years before she filed suit, [her supervisor] was 'flirty' with her, felt spurned, and retaliated against her when she ignored him." *Id.* at 243. Again, the court rejected plaintiff's claims because her "unsubstantiated allegations and assumptions" were generally "unsupported by record evidence, [we]re completely unconnected to impermissible motive, [we]re not objectively offensive, or [we]re simply employee grievances completely untied to discriminatory animus." *Id.*

Finally, plaintiff argued that OPM discriminated and retaliated against her through several "adverse employment actions" after her PD changed in 2003. These alleged "adverse actions" included OPM denying plaintiff's request to telework and a "bad" performance evaluation for duties assigned to her under her new position. *Id.* at 239–40, 239 n.3; *see Kline III*, 99 F. Supp. 3d at 2 (discussing the same). The court rejected plaintiff's contention that the telework denial resulted from illicit race discrimination. *Kline I*, 602 F. Supp. 2d at 239–40.[3] Instead, the court determined that the denial was consistent with plaintiff's 2003 PD change and the business needs of the office—plaintiff "needed to be onsite to better complete her day-to-day assignments and, among other things, to be available to customers and because of a lack of coverage in her absence." *Id.* The court likewise held that plaintiff's "fully successful"[4] annual performance appraisal was neither discriminatory nor retaliatory. *Id.* Besides finding that "plaintiff's assertions about her own performance [we]re self-serving[, ]unsupported[,] and . . . [did] not give rise to an inference of impermissible motive," OPM had introduced "significant undisputed evidence in the record . . . that the plaintiff had been warned about her performance long before the issuance of the evaluation," and deserved her evaluation. *Id.* at 240.

The D.C. Circuit affirmed in an unpublished opinion. *Kline v. Berry*, 404 Fed. App'x. 505 (D.C. Cir. 2010). The D.C. Circuit held that most of the alleged injuries were not actionable under Title VII, that they did not result from illicit discrimination, and that OPM offered legitimate, nondiscriminatory reasons for plaintiff's mediocre performance evaluation. *Id.* at 505.

---

[3] For example, the court found unconvincing plaintiff's assertion that "an inference of [race] discrimination c[ould] be drawn from the fact that Carter, a black female whose husband suffered several strokes, was allowed to telework." *Kline I*, 602 F. Supp. 2d at 240. Carter was not similarly situated to plaintiff because Carter "was an employment grade higher than the plaintiff and had different responsibilities, including review of the plaintiff's work." *Id.*

[4] Plaintiff argued she should have received an "Outstanding" evaluation. *Kline I*, 602 F. Supp. 2d at 240.

### 2.  *Kline II*

In October 2010, plaintiff initiated her second action against OPM. In *Kline II*, plaintiff argued that OPM retaliated against her by diminishing her substantive regulatory duties after she returned from administrative leave in June 2006.[5] *Kline II*, 102 F. Supp. 3d at 28, 31–32. She alleged that she was "constructively reassigned into a new non-regulatory and unclassified position." *Id.* at 31 (internal quotation marks omitted).

This Court rejected plaintiff's claims and granted OPM's motion for summary judgment. *Id.* First, the "allegations that [plaintiff's] work assignments were significantly changed after her return from Administrative Leave [we]re unsupported by the record." *Id.* at 32. The Court reasoned that:

> "[e]ven before going on Administrative Leave, Ms. Kline did not have primary responsibility over any regulatory work. While Ms. Kline was initially hired as a GS-12 Management Analyst on the Regulatory Team . . . in October 2002, her updated PD from 2003 was very different. . . . [The] updated PD clearly state[d] that she was to perform mostly publications duties and assist the Regulatory Team.

*Id.* at 32 (internal citations omitted). Even if plaintiff *had* suffered a diminution in duties, plaintiff's "own testimony suggest[ed that] it was minor and therefore could not have been a materially adverse consequence affecting the terms, conditions, or privileges of her employment." *Id.* at 33. For example, plaintiff reported that "in the months before she was placed on Leave there were very few regulations to process" and that "she had only four hours of work per week to perform." *Id.* at 33. In any event, OPM offered a "legitimate, non-discriminatory reason for any minor changes in Ms. Kline's duties." *Id.* at 33–34.

---

[5] Plaintiff was placed on administrative leave in April 2006 pending an investigation by the Inspector General's Office into allegations that plaintiff was "using her work computer inappropriately and was attempting to procure weapons and ammunition from someone she knew online." *Kline II*, 102 F. Supp. 3d at 27.

Plaintiff also made several allegations about the hiring of Stephen Hickman, including that "her regulatory duties were 'stripped from her' once Mr. Hickman came on board." *Id.* at 33. In August 2006, PMG advertised a new, full-time GS-12 Management Analyst position focused on regulatory work. *Id.* at 28. This position's PD was "virtually identical" to plaintiff's original PD. *Id.* Hickman was hired into this position in October 2006. *Id.* The Court recognized in *Kline II* that Hickman was hired "to take over Ms. Carter's duties when she retired," and that after he was hired, Hickman took over from Carter the primary responsibility for the regulatory issuances program. *Id.* at 32–33.

But the Court concluded that Hickman's hiring was "irrelevant" to the lawsuit. *Id.* at 33. "Despite plaintiff's repeated assertions that her duties were transferred to . . . Mr. Hickman, it is an inescapable fact that Ms. Kline was not performing significant regulatory work even before she went on Administrative Leave." *Id.* In light of that "inescapable fact" and because plaintiff "herself admitted she did very little regulatory work even before her Administrative Leave," the Court held that plaintiff "did not suffer an adverse employment action upon her return from [a]dministrative [l]eave" and no reasonable jury could infer that she had been retaliated against. *Id.* at 35.

The D.C. Circuit summarily affirmed. *Kline*, 2016 WL 1272942, at *1. The D.C. Circuit concluded that plaintiff "ha[d] not shown that she suffered an adverse employment action based on the lack of regulatory assignments when she returned from administrative leave." *Id.* And even if plaintiff *had* suffered an adverse employment action, the D.C. Circuit reasoned that "she ha[d] not produced sufficient evidence for a reasonable jury to find that the [OPM's] asserted non-retaliatory reason for not giving her regulatory assignments was pretextual and that [OPM] retaliated against her." *Id.*

### 3. *Kline III*

Meanwhile, in August 2014, plaintiff initiated yet another employment discrimination action against OPM.  This case, like her earlier two actions, stemmed from plaintiff's dissatisfaction with her reassignment to a position consisting primarily of nonregulatory duties. *See Kline III*, 99 F. Supp. 3d at 1–2. In *Kline III*, plaintiff brought a "failure to promote" claim and alleged that OPM discriminated or retaliated against her "by giving responsibility for the regulatory issuances system" to Hickman instead of to her. *Id.* at 1.

As mentioned above, in August 2006—and in anticipation of Carter's upcoming retirement—OPM advertised a full-time regulatory, "GS-12-classified position nearly identical to the one plaintiff applied for and was hired to fill in 2002." *Id.* The advertised position described "full-time, substantive regulatory duties." *Id.* at 4. While plaintiff had agreed in 2003 to reassignment to a revised PD consisting primarily of nonregulatory publication duties, plaintiff failed to apply for the new position. *Id.* at 1. And in October 2006, OPM hired Hickman into the GS-12 regulatory position. *Id.* at 2.

In 2008, OPM advertised a GS-13-level position, like that vacated by Carter upon her retirement, with responsibility for managing the regulatory issuances system in USAJOBS. *See id.* at 2. Hickman was ultimately promoted to this position. *Id.*[6]

The Court granted summary judgment to OPM.  Plaintiff's failure to promote claim was based on her erroneous belief that the GS-12 regulatory position advertised in 2006 (to which Hickman was hired) was "a kind of promotion rather than a different position," and that OPM was obligated to "reassign" or "promote" plaintiff into that position without her having to apply. *Id.*

---

[6] OPM's decision to hire Hickman instead of plaintiff for the GS-13 position forms the basis of plaintiff's fourth lawsuit. *See Kline IV*, 2020 WL 2615528, at *1.

But even if the GS-12 position *was* properly considered a promotion, the record demonstrated that plaintiff was currently at the "full performance level" for her position, so she would only have been eligible for promotion after applying and competing for the position. *Id.* at 3–4. She did not.

The Court also rejected plaintiff's "unsupported and unavailing" allegations that plaintiff's supervisors verbally expressed that her position reassignment was "temporary" and that plaintiff would "still assume responsibility for managing the regulatory issuances after Ms. Carter retired." *Id.* at 3–4. The Court reasoned that plaintiff's PD, "which [wa]s undisputed, clearly reassigned her into a new, non-regulatory position" and therefore, "despite her unsupported and subjective belief to the contrary, [plaintiff] had no 'right' to be assigned primary responsibility of regulatory duties." *Id.* at 3.

Finally, the Court rejected plaintiff's assertion that "a GS-12 employee could not take over Ms. Carter's duties, which were GS-13-level responsibilities." *Id.* at 4. Besides plaintiff's failure to cite any law prohibiting such a practice, OPM introduced testimony that it was "normal practice for Federal agencies to fill a position at a lower grade level than the previous incumbent." *Id.* Indeed, plaintiff herself alleged that "when she was originally hired as a GS-12 employee—with a nearly identical PD—it was with the intent that she take over Ms. Carter's duties when she retired." *Id.* Because plaintiff failed to apply for the GS-12 regulatory position, "apparently still misunderstanding the contours of her own, different, position," the Court determined that plaintiff did not suffer any adverse action in this case. *Id.*

The D.C. Circuit summarily affirmed. *Kline*, 2016 WL 1272945, at *1. The D.C. Circuit found that no "reasonable jury could infer discrimination or retaliation from [OPM's] decision to assign another employee the responsibility of managing the Regulatory Issuances System." *Id.* (citations omitted). To the extent that plaintiff's claim of relation was based on OPM's failure to

advertise a GS-13 position in 2006, the D.C. Circuit found that plaintiff "offer[ed] no evidence that suggests this decision was made to retaliate against her for engaging in protected activity." *Id.*

### 4. *Kline IV*

On February 16, 2016, plaintiff filed her fourth action against OPM, alleging age discrimination, sex discrimination, and retaliation. *Kline IV*, 2020 WL 2615528, at *1. In *Kline IV*, plaintiff first alleged that she "was not selected for the GS-13 position"—Carter's former position for which Hickman was hired—"due to age and sex discrimination." *Id.* at *5.

On November 25, 2008, OPM advertised availability for a GS-13 Management Analyst position. *Id.* at *2. Plaintiff and Hickman were the only two applicants. *Id.* Although plaintiff "had believed that she would be assuming this position once the previous employee in that position, Jacqueline Carter, retired," Hickman was ultimately selected for the position. *Id.* Plaintiff argued that OPM's failure to select her for the GS-13 position was based on age and sex discrimination because Hickman is "a male in his twenties." *Id.* at *6.

The Court granted OPM's motion for summary judgment. First, OPM provided "a legitimate, non-discriminatory reason" for its choice—"Hickman had more experience with the Federal Register and was highly recommended by his previous supervisor at the Federal Register." *Id.* at *5. And plaintiff failed to establish that OPM's rationale was pretextual: her only evidence linking the adverse action to her age and sex other was Hickman's age and sex, which was not enough. *Id.* at *6–7. The Court also rejected plaintiff's arguments that the failure to fill the GS-13 position two years earlier—when it first became vacant—violated the Administrative Procedure Act ("APA"). *Id.* at *6. Because plaintiff's complaint did not assert an APA claim, the Court reasoned that these allegations would only be relevant in the instant action if plaintiff showed that "the delay was specifically engineered to deny her the position based on her age and/or sex." *Id.*

But plaintiff "ha[d] not brought forth even a shred of evidence that this was the case." *Id.* Similarly, the Court found "even if Mr. Hickman's GS-12 responsibilities did constitute an APA violation," plaintiff could not establish that OPM gave Hickman "this responsibility in order to prevent [plaintiff] from ultimately getting the GS-13 position based on her sex and age." *Id.*[7]

The D.C. Circuit affirmed in an unpublished opinion. *Kline v. Ahuja*, No. 20-5220, slip op. at 1 (D.C. Cir. Nov. 23, 2021). The D.C. Circuit concluded that Kline did not provide "even a shred of evidence" to support a reasonable inference that any of OPM's actions were "motivated by discriminatory or retaliatory intent." *Id.* at 4 (citation omitted).

## B. Kline's Present Motion

Plaintiff, invoking Federal Rules of Civil Procedure 60(b)(6) and 60(d)(3), now asks this Court to set aside the more than five-year-old judgments in *Kline I*, *II*, and *III* and reopen these cases for a trial on the merits. *See* Pl.'s Mot. 35. Her motion invokes three main theories. First, plaintiff argues that *Kline I* should be reopened based on the "totality of the circumstances." *Id.* at 12. In her view, the totality of the circumstances includes "the allegations and outcomes of *Kline II*, *III*, and *IV*," and "the current lens with which sexual harassment cases are viewed," which stems from "the awareness brought on by the Me Too movement, of the prevalence of sexual and other forms of harassment and discrimination and retaliation in the workplace." *Id.* at 12.

Next, plaintiff argues that *Kline II* and *III* should be reopened because the Court's prior rulings against her were a product of misrepresentations and "fraud on the court" perpetrated by OPM's attorneys. *Id.* at 12–25. OPM's alleged misrepresentations in *Kline II* and *III* all relate to Hickman's hiring in 2006. *Id.* at 10–11. While her allegations are sometimes unclear (and often

---

[7] The Court also granted summary judgment to OPM on plaintiff's other counts, which are not relevant to the present motion.

repetitive), plaintiff contends that OPM or its counsel misrepresented: (1) that Hickman "was not hired as a GS-12 in 2006 to take over for Carter," *id.*; (2) that Hickman neither took over nor was "promoted" to Carter's position in 2006, *id.* at 10–11, 15; and (3) that Carter's "Team Leader position was not filled until 2008 and that Hickman did not take over for Carter until 2008," *id.* at 14–15. Plaintiff also claims that OPM's false representations led the Court to wrongfully adopt OPM's characterizations of her claims in *Kline II* and *III*. *Id.* at 19–24.

Plaintiff's third theory builds on her second—she argues that OPM allegedly "admitted" the falsity of its prior representations during the *Kline IV* litigation and that OPM's admissions constitute an "extraordinary circumstance" warranting reopening. *Id.* at 26–30. The first alleged admission is found in OPM's motion for summary judgment, which states that Hickman "was in charge of managing the Regulatory System" in his role GS-12 Management Analyst. *Id.* The second is found in OPM's statement of undisputed material facts, which states that "Hickman's position was a full-time regulatory position on the Regulatory Team of the PMG, and his responsibilities included managing the Regulatory Issuance System [RIS], analyzing legislation and processing documents to upload to the system." *Id.* at 26–28. These statements apparently contradict OPM's representations in *Kline II* and *III* that "Carter's Team Leader position was not filled until 2008," "that Hickman did not take over for Carter until 2008," and that "Hickman did not assume [Carter's] position [in 2006]." *Id.* at 28. Plaintiff argues that these statements amount to an "extraordinary circumstance" that justifies relief under Rule 60(b)(6), and evidence that OPM committed fraud on the court in *Kline II* and *III*. *Id.*

OPM opposes plaintiff's request. *See* Def.'s Opp'n. First, OPM contends that there are no extraordinary circumstances warranting relief in *Kline I*. *Id.* at 5–6. Next, OPM argues that plaintiff's motion is time-barred. *See, e.g., id.* at 7–9. Finally, OPM argues that plaintiff fails to

show any fraud or misrepresentations, which in any event, are not valid grounds for relief under Rule 60(b)(6). *See id.* at 9–14. Plaintiff filed a reply in support of her request and responding to OPM's arguments. *See* Pl.'s Reply.

Plaintiff's arguments are meritless. Her "new" evidence has already been thoroughly considered and rejected by the Court. And plaintiff fails to establish the falsity of OPM's representations in *Kline II* and *III*, let alone demonstrate that the representations rise to the level of "fraud on the court" or an "extraordinary circumstance." Her motion must be denied.

## II.  LEGAL STANDARD

### A.  Rule 60(b)(6)

Federal Rule of Civil Procedure 60(b) authorizes a court to relieve a party from a previous judgment or order for six enumerated reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct by an opposing party; (4) a void judgment; (5) a satisfied, released, or discharged judgment; or (6) "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b). Relief under Rule 60(b)(6) is available only if the motion "is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988).

A motion brought under any clause of Rule 60(b) "must be made within a reasonable time, which, for reasons (1), (2), and (3) [means] no more than a year after the entry of the judgment or order." *Austin v. Donahoe*, 307 F.R.D. 264, 266 (D.D.C. 2014) (citing Fed. R. Civ. P. 60(c)(1)) (internal quotation marks omitted). Motions invoking any of the latter three grounds for Rule 60(b) relief have no specific time limit but must be brought within a "reasonable time," which depends on the facts and circumstances of the case. *See Salazar ex rel. Salazar v. District of Columbia*, 633 F.3d 1110, 1116, 1118 n.5 (D.C. Cir. 2011). The D.C. Circuit will consider prejudice to the

nonmoving party as a factor in determining whether a Rule 60(b) motion was timely filed. *See id.* at 1120. But lack of prejudice does not make a motion timely. *See Carvajal v. Drug Enf't Admin.*, 286 F.R.D. 23, 27–28 (D.D.C. 2012) (citing *In re Sealed Case (Bowles)*, 624 F.3d 482, 487 (D.C. Cir. 2010)). And because the provisions of Rule 60(b) are "mutually exclusive," Rule 60(b)(6) cannot be used to avoid the one-year limitation applicable to subsections (1)–(3). *Salazar*, 633 F.3d at 1116 (citations omitted); *see Liljeberg*, 486 U.S. at 863 & n.11.

A movant seeking relief under Rule 60(b)(6) bears the additional burden of demonstrating "extraordinary circumstances" that justify the reopening of a final judgment. *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). This requirement imposes a "very high bar." *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007). Indeed, while "a district court enjoys significant discretion in deciding whether to grant or deny a Rule 60(b) motion," *Comput. Pros. for Soc. Resp. v. U.S. Secret Serv.*, 72 F.3d 897, 903 (D.C. Cir. 1996); the D.C. Circuit has cautioned that Rule 60(b)(6) "should be only sparingly used," *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1140 (D.C. Cir. 1988). A motion brought under Rule 60(b)(6) "is not an opportunity for unsuccessful litigants to take a mulligan." *Kramer*, 481 F.3d at 792. Instead, the movant must make a sufficiently "compelling showing of inequity or hardship." *Twelve John Does*, 841 F.2d at 1140. The Court may consider a "wide range of factors," including "the risk of injustice to the parties," the "risk of undermining the public's confidence in the judicial process," *Buck v. Davis*, 137 S. Ct. 759, 778 (2017) (quoting *Liljeberg*, 486 U.S. at 863–64); and the "litigant's diligence in pursuing review of a decision," *Salazar*, 633 F.3d at 1118–19 (citing *Gonzalez*, 545 U.S. at 537).

## B. Rule 60(d)(3)

Plaintiff has also moved for relief pursuant to Rule 60(d)(3), which acknowledges the Court's authority "to set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3).

Although the "reasonable time" requirement imposed by Rule 60(c)(1) is not applicable to Rule 60(d)(3), Rule 60(d)(3) is much more limited in scope than Rule 60(b)(3) and only applies in "very unusual cases." *Jordan v. U.S. Dep't of Lab.*, 331 F.R.D. 444, 451 (D.D.C. 2019), *aff'd*, No. 19-5201, 2020 WL 283003 (D.C. Cir. Jan. 16, 2020). "Although the requirements for a successful claim of fraud on the court elude precise definition, several guiding principles emerge from the case law." *Bowie v. Maddox*, 677 F. Supp. 2d 276, 278 (D.D.C. 2010).

First, the fraud must be "egregious." *More v. Lew*, 34 F. Supp. 3d 23, 28 (D.D.C. 2014) (citation omitted). In *Baltia Air Lines, Inc. v. Transaction Management., Inc.,* the D.C. Circuit explained that

> [f]raud on the court . . . is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. Fraud upon the court refers only to very unusual cases involving far more than an injury to a single litigant. Examples include the bribery of a judge or the knowing participation of an attorney in the presentation of perjured testimony.

98 F.3d 640, 642–43 (D.C. Cir. 1996). Stated differently, the inquiry asks whether the alleged fraud constitutes a "deliberate scheme to directly subvert the judicial process." *Great Coastal Express, Inc. v. Int'l Bhd. Of Teamsters*, 675 F.2d 1349, 1356 (4th Cir. 1982). Second, "[a]n indispensable element is that the fraud prevented a party from presenting his case." *Bowie*, 677 F. Supp. 2d at 279 (citation omitted). Finally, "the extraordinary step of setting aside a judgment requires 'clear and convincing' evidence of fraud on the court." *Id.* (citing *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1476–77 (D.C. Cir. 1995)).

With these lofty requirements in mind, it may be obvious that "[a] plaintiff cannot assert fraud or fraud on the court simply because [s]he disagrees with the rulings of this Court and of the D.C. Circuit." *Jordan*, 331 F.R.D. at 452.

### III.   ANALYSIS

The motion before the Court presents nothing more than an attempt to relitigate claims and arguments that this Court has already rejected. Plaintiff's motion falls well short of the high bar imposed by Rule 60(b)(6) for "extraordinary circumstances" and 60(d)(3) for "fraud on the court." As explained in the following analysis, the Court will deny her request for relief from judgment in *Kline I, II,* and *III.*

### A.   Plaintiff Is Not Entitled To Relief From The Judgment In *Kline I*

Plaintiff argues that *Kline I* "should be reopened and consolidated with the other Kline cases" to "incorporate by reference the allegations and outcomes of *Kline II, III,* and *IV*" and to consider both "the pertinent record and evidence as a whole" and "the current lens with which sexual harassment cases are viewed." Pl.'s Mot. 12. Plaintiff believes that consideration of the "totality of circumstances" justifies this Court's undoing the judgment in *Kline I* "on at least the hostile work environment claim, that the complained of actions were not severe or pervasive enough." *Id.*

Plaintiff has not met her burden to establish that the Court's judgment in *Kline I* should be set aside. Plaintiff fails to explain, and the Court does not see, how either Rule 60(b)(6) or Rule 60(d)(3) provide a basis for plaintiff's requested relief. The essence of plaintiff's claim is that the Court made a legal error when it "found the numerous complained of issues to be trivial or unsupported by the record, without holding any evidentiary hearing to resolve disputed facts." *Id.* at 12. However, plaintiff's mere discontent with this Court's ruling is not a valid basis for relief under Rule 60(b)(6) or Rule 60(d)(3). *See Jordan*, 331 F.R.D. at 452.

### B.   Plaintiff Is Not Entitled To Relief From The Judgments In *Kline II* And *III*

The Court will also deny plaintiff's motion for relief from the judgments in *Kline II* and *III.* Plaintiff argues that OPM and its counsel perpetrated a fraud on the court by misleading the

Court about the circumstances surrounding Hickman's hiring, the nature of the position at issue, and plaintiff's overall claims in the earlier actions. Pl.'s Mot. 10–11. Her arguments fail.

### 1. Plaintiff's motion fails under Rule 60(b)(6)

Though the basis of plaintiff's motion is clearly fraud and misrepresentation by OPM and OPM's attorneys, she relies on Fed. R. Civ. P. 60(b)(6) and 60(d)(3), rather than 60(b)(3), which provides for relief on the basis of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Unlike motions invoking Rule 60(b)(6), which must be filed within a "reasonable time," a Rule 60(b)(3) motion must be filed no more than a year after the entry of judgment. Fed. R. Civ. P. 60(c)(1). A motion cannot be filed pursuant to Rule 60(b)(6) if it is premised on one of the other enumerated bases for relief. *See Liljeberg*, 486 U.S. at 863.

Here, plaintiff invokes OPM's alleged "fraud," which would be encompassed by Rule 60(b)(3). But the provisions of Rule 60(b) are "mutually exclusive," *Salazar ex rel. Salazar*, 633 F.3d at 1116, and the Court can think of no reason why plaintiff would file a motion pursuant to Rule 60(b)(6)'s residual clause other than to circumvent the timing requirements of Rule 60(c). That alone is sufficient to deny plaintiff's motion. Plaintiff's allegations of false representations and fraud by OPM and OPM's counsel fall squarely under Rule 60(b)(3), and thus cannot provide a basis for relief under Rule 60(b)(6) now that the one-year limitation has passed. *See, e.g.*, Fed. R. Civ. P. 60(b)(3); 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2864 (3d ed.) (distinguishing fraud that may be cognizable under Rule 60(b)(6) with fraud cognizable under Rule 60(b)(3)).

Even if the Court were to consider plaintiff's motion, she has not met her burden to demonstrate the "extraordinary circumstances" required for relief under Rule 60(b)(6). Indeed,

plaintiff has failed to show *any* false representations of the type required to support a claim of fraud. Plaintiff argues that OPM's statements in *Kline IV* regarding Hickman's hiring in 2006 as a GS-12 Management Analyst and the position he occupied until he was promoted to a GS-13 role in December 2008 contradict OPM's prior representations in the *Kline II* and *III* litigation. Pl.'s Mot. 27. Plaintiff correctly observes that, in *Kline IV*, OPM stated that at the time Hickman was hired in 2006, his "position was a full-time regulatory position on the Regulatory Team of the PMG, and his responsibilities included managing the Regulatory Issuance System [RIS]." *Id.* Plaintiff is mistaken that these statements contradict OPM's representations in *Kline II* and *Kline III* "that Hickman had not assumed Carter's position for managing the RIS." Indeed, in *Kline II* and *III*, OPM represented, and this Court found, exactly that: Hickman took over Carter's responsibility for managing the regulatory issuances program when he was hired in October 2006. *See Kline II*, 102 F. Supp. 3d at 32 ("Ms. Carter . . . had primary responsibility for the regulatory issuances program in the PMG. After Mr. Hickman was hired, he had primary responsibility of the regulatory issuance." (internal citation omitted)); *Kline III*, 99 F. Supp. 3d at 2–4 (explaining that "[i]n 2006, in preparation for Ms. Carter's retirement, OPM advertised a GS-12-classified position" which was a "full-time regulatory position" that "focused almost exclusively on the regulatory issuances program of the PMG" (internal quotation marks omitted))

Plaintiff fails now, as she did when this Court decided *Kline III*, to demonstrate that when Hickman assumed responsibility for managing the regulatory issuances he necessarily "filled Carter's Team Leader position in 2006 upon her retirement." Pl.'s Mot. 28; *Kline III*, 99 F. Supp. 3d at 4 (rejecting plaintiff's argument "that a GS-12 employee could not take over Ms. Carter's duties, which were GS-13-level responsibilities"). OPM's so-called "admission" in *Kline IV* that "Hickman assumed Carter's duties immediately after she retired," Pl.'s Mot. 10, does not establish

that "Hickman was de facto promoted to the Team Leader position in 2006 and de facto assumed Carter's position in 2006 immediately after she retired." *Id.* at 28. Plaintiff erroneously conflates Hickman's regulatory duties with Carter's leadership role.

Even if plaintiff could have sought relief under Rule 60(b)(6) based on OPM's alleged misrepresentations, plaintiff fails to establish that OPM's prior representations are false. Thus, plaintiff cannot demonstrate the necessary "extraordinary circumstances" and her motion under Rule 60(b)(6) shall be denied.

### 2. Plaintiff's motion fails under Rule 60(d)(3)

Plaintiff's request for relief under Rule 60(d)(3) must also be denied. None of plaintiff's allegations meet the high bar required to demonstrate fraud on the court, which is "rarely warranted and is typically confined to the most egregious cases . . . in which the integrity of the court and its ability to function impartially is directly impinged." *More*, 34 F. Supp. 3d at 28 (internal quotation marks omitted). Plaintiff not only fails to provide clear and convincing evidence that OPM's conduct rises to the level of fraud on the court, she provides no evidence of fraud at all.

First, plaintiff argues that OPM perpetrated fraud on the court by failing to admit "that it hired Hickman to do the duties associated with taking over for Carter immediately after she retired in 2006." Pl.'s Mot. 10. But plaintiff provides no evidence that OPM's earlier representations were false. Indeed, in *Kline II* and *Kline III*, this Court recognized that "Mr. Hickman was hired to take over Ms. Carter's duties when she retired." *Kline II*, 102 F.Supp.3d at 32; *see Kline III*, 99 F. Supp. 3d at 2; *see also supra*.

Next, plaintiff asserts that OPM committed fraud on the Court in *Kline II* and *III* by "represent[ing], albeit falsely, that Carter's Team Leader position was not filled until 2008 and that Hickman did not take over for Carter until 2008." Pl.'s Mot. 27. As support for this allegation

plaintiff points to the alleged "truth" that OPM admitted in *Kline IV*: "that Hickman did in fact take over Carter's Team Leader 'managing' responsibilities immediately after Carter's retirement in 2006." Pl.'s Mot. 10. Plaintiff's semantic games are unavailing. OPM's so-called "admission" in *Kline IV* refers to Mr. Hickman's responsibility for "managing" the Regulatory Issuances System—which does not contradict OPM's prior statements. *See Kline II*, 102 F. Supp. 3d at 32 ("After Mr. Hickman was hired, he had primary responsibility of these regulatory issuances."). And despite plaintiff's insistence to the contrary, assigning Hickman responsibility for "managing the RIS as a GS-12 in 2006" is not clear and convincing evidence that OPM promoted Hickman into Carter's GS-13 Team Leader "management" position in 2006. *See* Pl.'s Mot. 13–16. Plaintiff's bare allegations and word games do not establish that OPM perpetrated fraud on the court. Yet again, plaintiff erroneously conflates Hickman's regulatory duties with Carter's leadership role.

Plaintiff next argues that OPM mischaracterized the nature and substance of her argument in *Kline III*. *See id.* at 23 (alleging that OPM "omitted the word 'primary' in order to fraudulently represent that Kline[] was complaining about not being hired into the GS-12 position that Hickman was hired to fill rather than Kline's actual claim that she was not given Carter's Team Leader position for 'primary [lead] responsibility for regulatory assignments' after she retired"). This too falls far short of proving "fraud on the court." Beyond her speculative assertions as to the OPM's bad faith, plaintiff offers no proof that OPM's alleged "misrepresentations" were backed by fraud. *See Jordan*, 331 F.R.D. at 452. At most, plaintiff has demonstrated that she disputes OPM's position on a substantive issue in *Kline III*. However, plaintiff cannot relitigate the merits of those issues now by claiming that OPM committed "fraud on the court" in merely arguing its case. *Id.* ("It has long been the rule in this Circuit that 'a motion for relief from judgment on the ground of

misrepresentation will be denied if it is merely an attempt to relitigate the case[.]'" (quoting *Am. Cetacean Soc. v. Smart*, 673 F. Supp. 1102, 1105 (D.D.C. 1987))).

Finally, even if there was some perjured testimony offered or misrepresentation in this case—and there is not—plaintiff has failed to show such egregious fraud that the Court could conclude that OPM's misconduct was a "deliberate scheme to directly subvert the judicial process" affecting more than just her. *Great Coastal Express*, 675 F.2d at 1356. And plaintiff has been disputing these same arguments for years, so the Court is not convinced that the alleged fraud here prevented her from presenting her case. *See Bowie*, 677 F. Supp. 2d at 279.

Plaintiff fails to prove even the falsity of OPM's representations in *Kline II* and *III*, let alone clearly and convincingly show that any intentional misconduct occurred. Accordingly, plaintiff's allegations do not establish a fraud on the court and her motion under Rule 60(d)(3) shall be denied.

## IV.    CONCLUSION

Based on the foregoing, the Court will **DENY** Ms. Kline's motion to reopen by separate order.

Date: November 24, 2021

Royce C. Lamberth
United States District Judge

21